1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   PETER H. KLEE, Cal. Bar No. 111707
2  pklee@sheppardmullin.com
   501 West Broadway, 19th Floor
3  San Diego, California 92101
   Telephone:  619.338.6500
4  Facsimile:  619.234.3815

5  THEONA ZHORDANIA, Cal. Bar No. 254428
   tzhordania@sheppardmullin.com
6  333 South Hope Street, 43rd Floor
   Los Angeles, California 90071-1422
7  Telephone:  213.620.1780
   Facsimile:  213.620.1398

8
   Attorneys for Defendant
9  ALLSTATE INDEMNITY COMPANY
   (erroneously sued as Allstate Insurance Company)

10              UNITED STATES DISTRICT COURT

11    CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

12

13

14  CARLOS MADRIGAL, RICHARD        Case No.
    TANG, and ANNA TANG,
15                                  **DEFENDANT ALLSTATE**
              Plaintiffs,           **INDEMNITY COMPANY'S**
16                                  **NOTICE OF REMOVAL**
         v.                         **PURSUANT TO 28 U.S.C. §§**
17                                  **1441(b), 1446.**
    ALLSTATE INSURANCE
18  COMPANY, a corporation; TERESA
    VARELA, an individual, and DOES 1   Complaint Filed:  April 21, 2014
19  through 60, inclusive,

20            Defendants,

21      **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**

22  **THE CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION,**

23  **PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

24      **PLEASE TAKE NOTICE** that defendant Allstate Indemnity Company,

25  erroneously sued as Allstate Insurance Company, hereby removes the state court

26  action described below from the Superior Court of the State of California for the

27  County of Los Angeles to the United States District Court for the Central District of

28  California, Central Division, pursuant to 28 U.S.C. §§ 1441(b) and 1446.

                                   -1-

## I.    COMPLIANCE WITH STATUTORY REQUIREMENTS

1.    On or about April 21, 2014, plaintiffs Carlos Madrigal, Richard Tang and Anna Tang filed a lawsuit in the Superior Court of California for the County of Los Angeles entitled *Carlos Madrigal, Richard Tang and Anna Tang v. Allstate Insurance Company, Teresa Varela and Does 1 through 60*, Case No. BC 542968. A true and correct copy of the complaint is attached hereto as **Exhibit A**.

2.    The complaint named as defendants: (1) Allstate Indemnity Company, erroneously sued as Allstate Insurance Company ("Allstate"); (2) Teresa Varela and (3) Does 1 through 60.

3.    Allstate was served with a copy of the Summons and Complaint on May 1, 2014.  Ms. Varela has also been served with the Summons and Complaint.

4.    Pursuant to 28 U.S.C. § 1446(b)(1), a notice of removal may be filed "within 30 days after the receipt by the defendant, through service or otherwise" of the initial pleading from which removability can be ascertained.  28 U.S.C. § 1446(b)(1).  Here, Allstate's notice of removal is timely because it was filed within 30 days after being served with the Summons and Complaint.

5.    Pursuant to 28 U.S.C § 1446(d), Allstate will promptly provide written notice of removal of this action to plaintiffs and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of California for the County of Los Angeles.

6.    The United States District Court for the Central District of California, Central Division, embraces Los Angeles, the county in which this Action is brought. Therefore, the Court is a proper venue for this Action pursuant to 28 U.S.C. §§ 84 (c) and 1441(a).

## II.    STATEMENT OF THE GROUNDS FOR REMOVAL

7.    Allstate removes this case pursuant to 28 U.S.C. § 1441.  Removal is proper because, as alleged in more detail below, (1) there is complete diversity between Allstate and plaintiffs, (2) the only non-diverse defendant, Ms. Varela, has

-2-

1  been fraudulently joined and, therefore, her residence is not relevant for purposes of
2  diversity jurisdiction, and (3) this matter is a civil action in which the amount in
3  controversy exceeds the sum of $75,000.00, exclusive of costs and interests.

### A.   *There is Complete Diversity Between Allstate and Plaintiffs*

5      8.      Allstate is, and was at the commencement of the state court action, a
6  corporation organized and existing under the laws of the State of Illinois, with its
7  principal place of business in Cook County, Illinois.  Allstate does not have
8  substantial predominance of its corporate activities in the State of California.  Its
9  corporate "nerve center," where the majority of its executive and administrative
10  functions are performed, is in Northbrook, Illinois.  Thus, Allstate is, and was at the
11  commencement of the state court action and at the time of removal, a resident and
12  citizen of the state of Illinois, as well as the United States.

13     9.      Plaintiff Carlos Madrigal is, and was at the commencement of the state
14  court action and at the time of removal, a citizen and resident of the County of Los
15  Angeles, State of California, as well as of the United States.  (Exhibit A
16  [Complaint], ¶ 3).  There is no indication that Madrigal is or was a citizen of Illinois,
17  the only fact that would destroy diversity of citizenship.

18     10.     Plaintiff Richard Tang is, and was at the commencement of the state
19  court action and at the time of removal, a citizen and resident of the County of Los
20  Angeles, State of California, as well as of the United States.  (Exhibit A
21  [Complaint], ¶ 4).  There is no indication that Richard Tang is or was a citizen of
22  Illinois, the only fact that would destroy diversity of citizenship.

23     11.     Plaintiff Anna Tang is, and was at the commencement of the state court
24  action and at the time of removal, a citizen and resident of the County of Los
25  Angeles, State of California, as well as of the United States.  (Exhibit A
26  [Complaint], ¶ 5).  There is no indication that Anna Tang is or was a citizen of
27  Illinois, the only fact that would destroy diversity of citizenship.

28

1   12.   Plaintiffs' naming of 60 fictitious "Doe" defendants without identifying

2   their residence has no effect on the diversity analysis in this case.  See 28 U.S.C.

3   § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of

4   defendants sued under fictitious names shall be disregarded"); Cripps v. Life Ins.

5   Co. of North America, 980 F.2d 1261, 1266 (9th Cir. 1992) (acknowledging that

6   "Doe" defendants "shall be disregarded for jurisdictional purposes") (citing

7   Section 1441(a)).

8   13.   For these reasons, complete diversity exists between Allstate and

9   plaintiffs, meeting the diversity requirements of 28 U.S.C. § 1332(d).

10             **B.    *Ms. Varela's Joinder is Fraudulent Because Plaintiffs Cannot
                       State a Viable Claim Against Her Under Settled California Law***

11

12   14.   Plaintiffs have attempted to allege claims for intentional

13   misrepresentation, negligent misrepresentation and intentional infliction of

14   emotional distress against Ms. Varela, an employee of Allstate and the only non-

15   diverse defendant.  As demonstrated below, these claims fail as a matter of law and,

16   therefore, Ms. Varela's residence is not relevant for purposes of diversity

17   jurisdiction.

18             a.   *The Misrepresentation Claims*.  To state a claim for intentional

19   misrepresentation, plaintiffs must prove (1) misrepresentation; (2) knowledge of

20   falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5)

21   resulting damages.  Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 173-74 (2003).

22   The elements of a negligent misrepresentation claim are (1) the misrepresentation of

23   a past or existing material fact, (2) without reasonable ground for believing it to be

24   true, (3) with intent to induce another's reliance on the fact misrepresented, (4)

25   justifiable reliance on the misrepresentation, and (5) resulting damage.  Apollo

26   Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243

27   (2007).  In contrast to fraud, to state a negligent misrepresentation claim, a positive

28

-4-

1   assertion is required; an omission or an implied assertion or representation is not
2   sufficient. Id.

3           i.      Madrigal cannot prove any of the requisite elements of a
4   misrepresentation claim.  While the complaint alleges that the Tangs assigned their
5   misrepresentation claims against *Allstate* to Madrigal, the assignment apparently did
6   not include any claims against *Ms. Varela*.  (Exhibit A [Complaint], ¶27).  Thus,
7   Madrigal lacks standing to assert a misrepresentation claim against her.

8           ii.     The Tangs cannot assert a misrepresentation claim against
9   Ms. Varela for several reasons:

10          *First*, the Tangs cannot show that Ms. Varela made an affirmative
11          misrepresentation when she stated that "Allstate would accept the policy
12          limits offer."  In a letter dated January 29, 2010, Allstate attempted to accept
13          the offer and, therefore, the representation was true.  (Exhibit F to
14          Complaint).  Nor can the Tangs assert any claim for fraudulent concealment
15          against Ms. Varela.  That is because concealment or non-disclose does not
16          give rise to a misrepresentation claim absent a duty to disclose.  Williams v.
17          Wraxall, 33 Cal. App. 4th 120, 131 n. 9 (1995); In re Still, 393 B.R. 896, 914
18          (C.D. Cal. 2008).  A duty to disclose arises only where there is a fiduciary or
19          confidential relationship.  First v. Allstate Ins. Co., 222 F. Supp. 2d 1165,
20          1174-75 (C.D. Cal. 2002).  Under California law, however, there is no
21          fiduciary relationship between an insurer and its insured.  See Vu v.
22          Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1150-51 (2001); Love v. Fire
23          Ins. Exchange, 221 Cal. App. 3d 1136, 1147-49 (1990); Henry v. Associated
24          Indem. Corp., 217 Cal. App. 3d 1405, 1419 (1990).  A *fortiori*, there is no
25          fiduciary duty between an insured and a claim adjuster.

26          *Second*, the claims that the Tangs purport to allege are for promissory
27          fraud.  "'Promissory fraud' is a subspecies of the action for fraud and deceit."
28          Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).  It is "a promise without

-5-

1   any intention of performing it." <u>Ailing v. Universal Mfg. Corp.</u>, 5 Cal. App.

2   4th 1412, 1436 (1996). "To maintain an action for deceit based on a false

3   promise, one must specifically allege and prove, among other things, that the

4   promisor did not intend to perform at the time he or she made the promise . .

5   ." <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App. 4th 153, 159

6   (1991). "[I]f plaintiff adduces no further evidence of fraudulent intent than

7   proof of nonperformance of [a] promise, he will never reach a jury." <u>Tenzer</u>

8   <u>v. Superscope, Inc.</u>, 39 Cal. 3d 18, 31 (1985); <u>Smith v. Allstate Ins. Co.</u>, 160

9   F. Supp. 2d 1150, 1152 (S.D. Cal. 2001). Here, the Tangs do not and cannot

10  allege any facts showing that Ms. Varela did not intend to perform the

11  promise *at the time she made it* – especially in light of the January 29, 2010

12  letter. (Exhibit F to Complaint).

13       *Finally*, the misrepresentation claims are barred by the applicable

14  statute of limitations. These claims accrued, at the latest, by September 2010

15  when Madrigal filed suit against the Tangs and they learned that Allstate had

16  not accepted the policy limits offer. <u>See</u> Exhibit A [Complaint], ¶24; <u>Fanucci</u>

17  <u>v. Allstate Ins. Co.</u>, 638 F. Supp. 2d 1125, 1133-36 (2009); <u>Strouther v. State</u>

18  <u>Farm Fire and Cas. Co.</u>, 2004 WL 2538776, at *8-10 (Cal. Ct. App. 2004).

19  Thus, the Tangs should have filed their suit against Ms. Varela, at the latest,

20  by September 2013 – which they failed to do.

21       b.   *The Intentional Infliction of Emotional Distress Claim*. The

22  Tangs' IIED claim against Ms. Varela is predicated on the allegation that she failed

23  to inform them that Allstate intended to reject the policy limits offer. They also

24  allege, in merely conclusory fashion, that Ms. Varela's conduct was "extreme and

25  outrageous" and they suffered "severe emotional distress." (Exhibit A [Complaint],

26  ¶¶64- 65). California law is clear, however, that allegations of improper claims

27  handling – which is all the Tangs allege – are not sufficient to state an IIED claim.

28  <u>See</u>, <u>e.g.</u>, <u>Schlauch v. Hartford Acc. & Indem. Co.</u>, 146 Cal. App. 3d 926, 936

-6-

1  (1983) (allegations that insurer misrepresented pertinent fact, acted in bad faith, and

2  failed to investigate a claim properly were insufficient to state a claim for IIED);

3  Ricard v. Pacific Indem. Co., 132 Cal. App. 3d 886, 894-95 (1983) (allegations that

4  insurer made intentional misrepresentations regarding the plaintiff's medical claim,

5  wrongfully refused to pay, and refused to properly investigate or process were

6  insufficient to state a claim for IIED); Taylor v. C.S.A.A. Inter-Ins. Bureau, 194 Cal.

7  App. 3d 1214, 1223 (1987) (insurer's delay in settling a claim despite knowledge

8  that such duty would cause severe emotional distress was not "outrageous"

9  conduct).  Accordingly, the Tangs have not and cannot state a claim for IIED against

10  Ms. Varela.  Madrigal cannot state an IIED claim against Ms. Varela for an

11  additional reason.  The Tangs did not assign him such a claim.  (Exhibit A

12  [Complaint], ¶27).

13      Moreover, the IIED claim is barred by the 2-year statute of limitations in any

14  event.  Cal. Code Civ. Proc. § 335.1; Murray v. Oceanside Unified Sch. Dist., 79

15  Cal. App. 4th 1338, 1363 (2000).  Such a claim accrued, at the latest, by September

16  2010 when Madrigal filed suit against the Tangs and they learned that Allstate had

17  not accepted the policy limits offer.  See Exhibit A [Complaint], ¶24.  Thus, the

18  Tangs should have filed their IIED claim against Ms. Varela, at the latest, by

19  September 2012 – which they failed to do.

20      15.  The complaint reveals that there is only one reason Ms. Varela is

21  named as a defendant in this lawsuit:  the fact that she is a California resident.  Ms.

22  Varela's joinder is a sham and her citizenship should be ignored for purposes of

23  diversity jurisdiction.  See McCabe v. Gen't Foods Corp., 811 F.2d 1336, 1339 (9th

24  Cir. 1987) (holding that two non-diverse employees were fraudulently joined "sham

25  defendants" who did not destroy diversity because the plaintiffs failed to include

26  allegations demonstrating they should be held liable individually); see also Lewis v.

27  Time, Inc., 83 F.R.D. 455, 460 (E.D. Cal. 1979).

28

SMRH:424112516.1

DEFENDANT ALLSTATE INDEMNITY COMPANY'S
NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1441(b), 1446

## C.   *The Amount-in-Controversy Requirement is Met*

16.    Plaintiffs seek (1) "payment of the $10,680,651.80 judgment"; (Exhibit A [Complaint], ¶70); (2) attorneys' fees (id. at ¶¶ 34, 37); (3) emotional distress damages in an uncertain amount (id. at ¶38); and (4) punitive damages.  (id. at ¶ 70).

17.    Emotional distress damages are included in determining the amount in controversy.  Angus v. Shiley, Inc., 989 F.2d 142, 146 (3rd Cir. 1993); Aucina v. Amoco Oil Co., 871 F. Supp. 332, 334 (S.D. Iowa 1994); Richmond v. Infinity Ins. Co., 897 F. Supp. 447 (S.D. Cal. 1995).  Some courts have held that emotional distress damages in a bad faith action by itself could exceed the minimum $75,000 threshold.  Cain v. Hartford Life & Acc. Ins. Co., 890 F. Supp. 2d 1246, 1251 (C.D. Cal. 2012) ("The Court finds that it is more likely than not that emotional distress damages may be substantial if Cain's allegations in the Complaint are accepted as true.  If such damages were awarded, those damages alone could exceed the minimum $75,000 threshold"); see also Richmond v. Allstate Ins. Co., 897 F. Supp. 447, 450- 51 (S.D. Cal. 1995) (removal proper because plaintiff's emotional distress damages were potentially substantial).

18.    "To establish the amount of emotional distress in controversy, a defendant may introduce evidence of jury verdicts in other cases."  Cain v. Hartford Life & Acc. Ins. Co., 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012); see also Rivera v. Costco Wholesale Corp., 2008 WL 2740399, *4 (N.D. Cal. 2008).  In bad faith cases, juries frequently award emotional distress damages well in excess of the minimum $75,000 amount in controversy.  See e.g., Clayton v. United Services Auto. Assn., 54 Cal. App. 4th 1158 (1997) (emotional distress award of $400,000 for insurance bad faith); Hangarter v. Provident Life and Acc. Ins. Co., 373 F. 3d 998, 1005 (9th Cir. 2004) (jury awarded $400,000 in emotional distress damages for bad faith damages stemming from denial of disability benefits); Ace v. Aetna Life Ins. Co., 40 F. Supp. 2d 1125 (D. Alaska 1999) (jury verdict initially awarded

1    $27,009 for wrongful denial of disability benefits and $100,000 for emotional

2    distress).

3         19.     Likewise, punitive damages are included in determining the amount in

4    controversy.    Bell v. Preferred Life Society, 320 U.S. 238, 240 (1943); Richmond v.

5    Allstate Ins. Co., 897 F. Supp. 447 (S.D. Cal. 1995); Physicians Health Plan v.

6    Citizens Ins. Co., 673 F. Supp. 903, 910 (W.D. Mich. 1987); Dembrowski v.

7    Allstate Ins. Co., 1992 U.S. Dist. LEXIS 3282 (E.D. Pa. 1992).

8         20.     The amount of punitive damages is based, in part, on a ratio to

9    compensatory damages. The *lowest* constitutional limit for punitive damages is a 1-

10   to-1 ratio between punitive and compensatory damages. Guglielmino v. McKee

11   Foods Corp., 506 F.3d 696, 698 (9th Cir. 2007) (including amount of punitive

12   damages based on "conservative" 1 to 1 multiplier of other recoverable damages

13   sought); Tompkins v. Basic Research LL, 2008 WL 1808316, at *4 (E.D. Cal. Apr.

14   22, 2008) (same); see Keeling v. Esurance Ins. Co., 660 F.3d 273 (7th Cir. 2011)

15   (upholding jurisdiction under CAFA upon concluding that a 5:1 ratio of punitive

16   damages to compensatory damages was conceivable); Anthony v. Security Pac. Fin.

17   Servs., Inc., 75 F.3d 311, 317–18 (7th Cir. 1996) (punitive damages in a ratio of two

18   or three times a plaintiff's actual damages properly can be reckoned into the amount

19   in controversy).

20        21.     Indeed, recent California cases have upheld punitive damages awards

21   with ratios to compensatory damages of greater than 1 to 1, even where the

22   compensatory damages were substantial. See Jeng-Cheng Ho v. Shih-Ming Hsieh,

23   181 Cal. App. 4th 337, 341-42 (2010) (stating that the Court of Appeal had affirmed

24   an award of $6 million in punitive damages and approximately $1.5 million in

25   compensatory damages, and that the Supreme Court had denied a petition for

26   review); Century Surety Co. v Polisso, 139 Cal. App. 4th 922, 966 (2006) ("The

27   Polissos were awarded $622,911 in compensatory tort damages and $2,015,000 in

28   punitive damages, a ratio of 3.2 to 1, which is well within the constitutional limit.

-9-

1  Although the compensatory damages were substantial, this ratio is warranted given

2  the reprehensibility of Century's conduct").

3      22.    Similarly, federal courts applying the State Farm constitutional test

4  have in recent years affirmed numerous awards with ratios of punitive to

5  compensatory damages well over 1 to 1, and the U.S. Supreme Court has denied the

6  petitions for certiorari in these cases where sought.  See, e.g., Hangarter v. Provident

7  Life & Accident Ins. Co., 373 F. 3d 998, 1005, 1014-15 (9th Cir. 2004)  (rejecting

8  the claim that State Farm established a rule that punitive damages may not exceed a

9  1-to-1 ratio to compensatory damages, and affirming an award with a 2.6-to-1 ratio

10  even though compensatory damages exceeded $2 million); Myers v. Central Florida

11  Investments, 592 F. 3d 1201, 1221-1222 (11th Cir. 2010) (affirming award with

12  4.89-to-1 ratio, and rejecting argument that any award with a ratio of greater than 1

13  to 1 is constitutionally suspect, and collecting recent cases affirming awards with

14  ratios of 100 to 1, 9.2 to 1, 8.3 to 1, and 5.5 to 1); Craig Outdoor Advertising., Inc.

15  v. Viacom Outdoor, Inc., 528 F. 3d 1001, 1020-21 & n. 9 (8th Cir. 2008) (affirming

16  award with 8-to-1 ratio and rejecting the argument that a 4-to-1 ratio is the

17  constitutional maximum in a commercial case); Action Marine, Inc. v. Cont'l

18  Carbon, Inc.,  481 F. 3d 1302, 1321 (11th Cir. 2007) (affirming punitive damages

19  award with 5-to-1 ratio even though compensatory damages award was $3.2

20  million).

21      23.    Based on the foregoing, this matter is a civil action in which the

22  amount in controversy exceeds the sum of $75,000, exclusive of interest and costs,

23  thus meeting the requirements of 28 U.S.C. § 1332.

24  **III.    REMOVAL IS TIMELY PURSUANT TO 28 U.S.C. § 1446(b).**

25      24.    In  cases where removability appears on the face of the complaint, a

26  notice of removal must be filed "within 30 days after the receipt by the defendant,

27  through service or otherwise" of the initial pleading from which removability can be

28  ascertained.  28 U.S.C. § 1446(b)(1).  This removal notice if timely because Allstate

-10-

1  removed this action on June 2, 2014 within 30 days from being served with a copy
2  of the Summons and Complaint.

3         25.    Copies of additional documents that have been filed in the state court
4  case are attached hereto as **Exhibit B**.

5         **WHEREFORE**, Allstate prays that the state court action now pending
6  against it in the Superior Court for the State of California for the County of Los
7  Angeles be removed to this United States District Court for the Central District of
8  California, Central Division.

9

10  Dated:  June 2, 2014

11                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13                          By _____
                                        s/ Peter H. Klee
14                                    PETER H. KLEE

15                               Attorneys for Defendant
16                          ALLSTATE INDEMNITY COMPANY

17

18

19

20

21

22

23

24

25

26

27

28

-11-

# EXHIBIT A

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 21 2014

Sherri R. Carter, Executive Officer/Clerk
By Myrna Beltran, Deputy

1  THE HOMAMPOUR LAW FIRM, PC
   ARASH HOMAMPOUR (State Bar No. 165407)
2  15303 Ventura Boulevard, Suite 1000
   Sherman Oaks, California 91403
3  Phone: (323) 658-8077 | Fax: (323) 658-8477

4  Attorneys for Plaintiff CARLOS MADRIGAL

5  BINDER & ASSOCIATES
   WARREN J. BINDER (State Bar No. 257686)
6  283 South Lake Avenue, Suite 200
   Pasadena, CA 91101
7  Phone: (626) 793-9124 | Fax: (626) 793-9510

8  Attorneys for Plaintiffs CARLOS MADRIGAL, RICHARD TANG and ANNA TANG

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11       FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

12                          BC 5 4 2 9 6 8

13  CARLOS MADRIGAL, RICHARD TANG, and )   CASE NO.:  Complaint
    ANNA TANG,                          )
14                                      )   1.  BREACH OF THE IMPLIED
              Plaintiffs,               )       COVENANT OF GOOD FAITH AND
15                                      )       FAIR DEALING
    vs.                                 )
16                                      )   2.  BREACH OF CONTRACT
    ALLSTATE INSURANCE COMPANY, a)      )
17  corporation; TERESA VARELA, an individual;)  3.  INTENTIONAL
    and DOES 1 through 60, inclusive,   )       MISREPRESENTATION
18                                      )
              Defendants.               )   4.  NEGLIGENT
19                                      )       MISREPRESENTATION
                                        )
20                                          5.  INTENTIONAL INFLICTION OF
                                                EMOTIONAL DISTRESS; AND
21
                                            6.  DIRECT ACTION AGAINST
22                                              INSURANCE CARRIER PURSUANT
                                                TO CODE SECTION 11580
23
                                            DEMAND FOR JURY TRIAL
24

25       Plaintiffs CARLOS MADRIGAL, RICHARD TANG, and ANNA TANG, as for their complaint

26  against Defendant ALLSTATE INSURANCE COMPANY, TERESA VARELA, and DOES 1

27  through 60, inclusive, allege:

28  \\\
                                                    Page
                                                     12

*Complaint - Page 1*

FILE COPY

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

## GENERAL ALLEGATIONS

1.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 60, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named Defendants are responsible in some manner for the occurrences herein alleged.

2.      Plaintiffs are informed, believe and thereon allege that at all times material herein each fictitiously named Defendant, was either the true defendant or the agent and employee of each other Defendant and in doing the things alleged herein, was acting within the scope and purpose of such agency and with the permission and consent of, and their actions were ratified by, the other Defendants.

3.      Plaintiff CARLOS MADRIGAL ("MADRIGAL") is an individual who is now, and at all times relevant to this complaint, was a resident of the County of Los Angeles.

4.      Plaintiff RICHARD TANG is an individual who is now, and at all times relevant to this complaint, was a resident of the County of Los Angeles.

5.      Plaintiff ANNA TANG is an individual who is now, and at all times relevant to this complaint, was a resident of the County of Los Angeles. RICHARD TANG and ANNA TANG are and were at all times relevant to this complaint married.

6.      Plaintiffs are informed, believe and thereon allege that Defendant ALLSTATE INSURANCE COMPANY ("ALLSTATE") is, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of Illinois.

7.      Plaintiffs are informed, believe and thereon allege that Defendant TERESA VARELA ("VARELA") is an individual who is now, and at all times relevant to this complaint, was a resident of the County of Los Angeles. Plaintiffs are further informed, believe and thereon allege that Defendant VARELA, was at all times mentioned in this complaint an adjuster for and employee of Defendant ALLSTATE and who was acting within the scope and purpose of her employment with ALLSTATE and with the permission and consent of, and their actions were ratified by, the other Defendants. All of the relevant conduct occurred with the County of Los Angeles.

*Complaint - Page 2*

8.      At all relevant times, ANNA TANG and RICHARD TANG were insureds under an automobile insurance policy (Policy Number 9 14 906559 07/28) issued by Defendant ALLSTATE ("POLICY"). The POLICY provided bodily injury coverage with $100,000 limits per each claimant. A true and correct copy of an exemplar of the policy as provided by ALLSTATE is attached hereto as Exhibit "A". Plaintiffs have not yet been able to verify that this exemplar policy is in fact the full and complete policy.

9.      On or about July 13, 2009, while the coverage under the POLICY was in effect, Plaintiff MADRIGAL was involved in a motor vehicle accident with RICHARD TANG. As a result of the accident, MADRIGAL suffered catastrophic injuries, including paraplegia. RICHARD TANG was the driver of the vehicle that negligently caused the accident.

10.     As a result of the accident, MADRIGAL pursued a claim against RICHARD TANG which claim was defended by ALLSTATE and assigned claim No. 0143198462.

11.     MADRIGAL did not maintain liability insurance at the time of the accident. Accordingly, RICHARD TANG pursued an Uninsured Motorist claim with ALLSTATE and that claim was also assigned claim No. 0143198462.

12.     As of September 3, 2009, ALLSTATE confirmed that MADRIGAL was uninsured at the time of the accident and paid RICHARD TANG his collision deductible under the uninsured motorist waiver provision of the POLICY. A true and correct copy of that letter is attached hereto as Exhibit "B".

13.     On September 28, 2009, ALLSTATE's VARELA sent a letter to MADRIGAL's attorney wherein she confirmed that she knew that MADRIGAL did not have liability insurance at the time of the incident. VARELA specifically noted that RICHARD TANG's "attorney is pursuing an uninsured motorist claim. In the event your client has a valid liability policy, kindly forward the appropriate information." A true and correct copy of that letter is attached hereto as Exhibit "C".

14.     On September 29, 2009, MADRIGAL's attorney faxed MADRIGAL's medical records to ALLSTATE confirming that MADRIGAL was rendered paralyzed in the subject accident with ALLSTATE's insured RICHARD TANG. A true and correct copy of that cover letter is attached hereto as Exhibit "D".

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Complaint - Page 3*

15.     On January 15, 2010, MADRIGAL's attorney faxed and mailed to ALLSTATE's VARELA a letter offering to settle MADRIGAL's claims against RICHARD TANG for TANG's $100,000 in policy limits with ALLSTATE ("POLICY LIMITS OFFER"). The letter outlined why RICHARD TANG was responsible for the accident and how MADRIGAL's damages far exceeded the $100,000 in policy limits because MADRIGAL suffered life-altering injuries as a result of the subject accident, was confined to a wheelchair and may never walk again. A true and correct copy is attached hereto as Exhibit "E".

16.     The POLICY LIMITS OFFER outlined various reasonable conditions of acceptance:

        a.      that ALLSTATE timely deliver legible copies of all available liability insurance policies maintained by RICHARD TANG;

        b.      that ALLSTATE timely deliver the appropriate release of all claims forms;

        c.      that ALLSTATE timely deliver a declaration under penalty of perjury, signed by RICHARD TANG, stating that no other liability insurance policies exist for the subject accident (including an umbrella policy), that RICHARD TANG, the driver of the vehicle, was not in the course and scope of employment, and an asset sheet of all assets or lack thereof; and

        d.      that ALLSTATE deliver a settlement draft equal to the amount of all liability insurance policy limits along with a certified copy of the policy revealing the limits.

17.     The POLICY LIMITS OFFER also provided that the terms of the offer expired within 30 days from the date of the policy limit demand or February 15, 2010, that the failure to completely perform all conditions stated above at or within 30 days from the date of the letter would be deemed a rejection and that any counter offers would be rejected.

18.     On January 21, 2010, ALLSTATE (and VARELA) obtained a statement from an eyewitness to the accident, Fidel Avendano ("AVENDANO"). AVENDANO confirmed that RICHARD TANG turned from the center lane into the driveway cutting off MADRIGAL who is the curb lane (lane no. 2), that he did not know the speed of MADRIGAL, that RICHARD TANG was at fault for the accident and that MADRIGAL was not at fault.

\ \ \

\ \ \

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Complaint - Page 4*

19.     By way of letter on January 29, 2010 to MADRIGAL's attorney and copied to RICHARD and ANNA TANG, ALLSTATE, by and through VARELA, represented that it would accept the POLICY LIMITS OFFER but it did not perform all of the conditions necessary for actual acceptance. A true and correct copy of the letter is attached hereto as Exhibit "F".

20.     As of January 29, 2010, RICHARD and ANNA TANG relied on the representation by ALLSTATE, by and through VARELA, that ALLSTATE was going to pay and satisfy the conditions of the POLICY LIMITS OFFER. RICHARD TANG agreed to perform all of the conditions required of him under the POLICY LIMITS OFFER. The only conditions left to be performed were to be performed by ALLSTATE. Had ALLSTATE performed the conditions and not rejected the POLICY LIMITS OFFER, MADRIGAL's claim against RICHARD TANG would have been satisfied in full. RICHARD TANG would have had no liability to MADRIGAL whatsoever, and consequently RICHARD TANG would owe MADRIGAL no money.

21.     On February 4, 2010, ALLSTATE, by and through VARELA, faxed a letter to MADRIGAL's attorney where it advised that it "must withdraw our offer immediately", where it rejected the POLICY LIMITS OFFER and made a counter offer of $34,398.00. ALLSTATE, by and through VARELA, then falsely claimed that when it sent its January 29, 2010 letter representing that it would accept the POLICY LIMITS OFFER it did so "with the consideration that [Madrigal] had proof of liability insurance." This claim was knowingly false because ALLSTATE (and VARELA) knew as of, at least, September 2009 that MADRIGAL was uninsured. By operation of law and the terms of the POLICY LIMITS OFFER, ALLSTATE's counter offer terminated the POLICY LIMITS OFFER such that ALLSTATE did not accept the offer and could not later attempt to accept it. ALLSTATE's February 4, 2010 letter also confirmed that it was a rejection. A true and correct copy of the letter is attached hereto as Exhibit "G".

22.     Despite copying the TANGS on all other communications and otherwise keeping them apprised by phone of all claim developments, ALLSTATE (and VARELA) deliberately did not copy RICHARD TANG and ANNA TANG on the February 4, 2010 fax and did not give them any notice that it was going to reject the POLICY LIMITS OFFER. Had the TANGS been notified of ALLSTATE's (and VARELA's) intentions they would have made sure that ALLSTATE followed

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD • SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

*Complaint - Page 5*

1  through on its representations. They would have pointed out (or hired an attorney to point out) to

2  ALLSTATE (and VARELA) that ALLSTATE (and VARELA) already knew MADRIGAL was

3  uninsured when it represented that it would pay and satisfy the conditions of the POLICY LIMITS

4  OFFER. The TANGS would have pointed out that it was per se unreasonable for ALLSTATE (and

5  VARELA) to take a position that it would not pay a $100,000 policy limits demand because the

6  claimant was uninsured as the special damages (past and future medical expenses and past and future

7  loss of earnings) recoverable for a claimant paralyzed in an accident would be in the millions.

8        23.    As a result of its February 4, 2010 letter, ALLSTATE (and VARELA) failed to accept

9  MADRIGAL's reasonable settlement demand and exposed its insureds RICHARD TANG and ANNA

10  TANG to a judgment that would financially decimate them. Further, ALLSTATE's (and VARELA's)

11  knowingly false claim that it could reject the POLICY LIMITS OFFER because it just learned

12  MADRIGAL was uninsured and its decision to not let the TANGs know that it intended to reject the

13  POLICY LIMITS OFFER was extreme and outrageous conduct directed at the insured TANGS.

14  ALLSTATE's (and VARELA's) conduct was done with the reckless disregard of the probability that

15  it would cause the TANGS severe emotional distress because they would be financially decimated.

16  In the context of a claim that could have been settled for their $100,000 in policy limits but where a

17  judgment could easily be in the millions of dollars, ALLSTATE's (and VARELA's) conduct in

18  falsely claiming a basis to not pay the POLICY LIMITS demand and in deliberately not notifying the

19  TANGS so that they could protect themselves was so extreme as to exceed all bounds of that usually

20  tolerated in a civilized community.

21        24.    CARLOS MADRIGAL filed suit against RICHARD TANG on September 17, 2010.

22        25.    The matter proceeded to jury trial resulting in a verdict rendered on October 4, 2012

23  in favor of MADRIGAL and against RICHARD TANG. Judgment was entered in favor of

24  MADRIGAL against RICHARD TANG for $10,680,651.80 on October 4, 2012. Daily interest

25  accrues on the judgment in the approximate amount of $2,926.21. A true and correct copy of the

26  notice of entry of judgment and judgment is attached hereto as Exhibit "H". A true and correct copy

27  of the order awarding Plaintiff's costs and interest is attached hereto as Exhibit "I."

28  \ \ \

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

---

*Complaint - Page 6*

26.     RICHARD TANG appealed the judgment. On April 2, 2014 the Court of Appeal denied the appeal and affirmed the judgment in full plus awarded MADRIGAL costs.

27.     After the judgment, CARLOS MADRIGAL entered into an Assignment of Rights agreement with RICHARD TANG and ANNA TANG, whereby CARLOS MADRIGAL agreed not to execute the ultimate judgment rendered against RICHARD TANG and, in return, RICHARD TANG and ANNA TANG assigned to CARLOS MADRIGAL all assignable rights he had or may have acquired against ALLSTATE INSURANCE, except for emotional distress and punitive damages.   Plaintiff CARLOS MADRIGAL brings this case against ALLSTATE under that assignment.

28.     As a result of ALLSTATE's failure to protect the interests of its insureds by failing to accept MADRIGAL's reasonable settlement demand within the policy limits, RICHARD TANG and ANNA TANG sue for those damages which are non-assignable as a matter of law, including emotional distress and punitive damages.

### FIRST CAUSE OF ACTION

**(By Plaintiffs CARLOS MADRIGAL, RICHARD TANG, AND ANNA TANG**

**for Breach of the Implied Covenant of Good Faith and Fair Dealing Against**

**ALLSTATE INSURANCE COMPANY and DOES 1 through 10, inclusive )**

29.     Plaintiffs repeat, reallege and incorporate herein by this reference all prior allegations.

30.     Implied within the POLICY (Exhibit "A") was a provision of good faith and fair dealing, which required that neither party do anything that would injure the rights of any other party to receive the benefits for which the POLICY was contracted.

31.     By virtue of the conduct previously alleged in this Complaint and incorporated herein by reference, Defendant ALLSTATE and Does 1 through 10, inclusive, and each of them, breached the implied covenant of good faith and fair dealing, as contained in the POLICY.

32.     Plaintiffs are informed, believe and thereon allege that the insured, RICHARD TANG, had performed all the terms and conditions of the policy to be performed.

\ \ \

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

33.     As a proximate result of the aforementioned unreasonable and bad faith conduct of defendants ALLSTATE INSURANCE COMPANY, and DOES 1 through 10, and each of them, Plaintiffs RICHARD TANG and ANNA TANG have suffered damages in the amount of the entire judgment plus interest and costs, and will continue to suffer in the future damages, plus interest and other economic and consequential damages, for a total amount to be shown at the time of trial.

34.     As a proximate result of aforementioned wrongful conduct of defendants, Plaintiff CARLOS MADRIGAL was compelled to retain legal counsel to obtain the benefits due under the POLICY. Therefore, Defendants are liable to Plaintiff CARLOS MADRIGAL for those attorneys' fees reasonably necessary and incurred by Plaintiff CARLOS MADRIGAL in order to obtain benefits under the POLICY in a sum to be determined at the time of trial.

35.     As a further proximate result of the Defendants' breach of the implied covenant of good faith and fair dealing and the failure to accept a reasonable settlement offer within policy limits, a judgment has been entered against RICHARD TANG. Such a judgment adversely affected RICHARD TANG's credit rating and has caused economic damages.

36.     As a further proximate result of the Defendants' breach of the implied covenant of good faith and fair dealing and the failure to accept a reasonable settlement offer within policy limits, RICHARD TANG and ANNA TANG were required to lose time off work, and suffered economic damages as a result of being required to attend trial.

37.     In addition, as a direct and proximate result of the conduct of Defendants as aforesaid, it became reasonably necessary for RICHARD TANG and ANNA TANG to engage the services of legal counsel and thereby incur, and continue to incur, costs and attorneys' fees in an amount to be determined according to proof. RICHARD TANG and ANNA TANG claim these attorneys' fees as a distinct item of recoverable damage, pursuant to *Brandt v. Superior Court* (1985) 37 Cal. App.3d 813, 210 Cal.Rptr. 211 and *Cassim v. Allstate* (2004) 33 Cal. 4th 780.

38.     As a further proximate result of the aforementioned wrongful conduct of Defendants, Plaintiffs RICHARD TANG and ANNA TANG, insured under the POLICY, who were named defendants in the underlying action and had a judgment entered against then have suffered anxiety, worry, mental, and severe emotional distress, all to their general damages in a sum to be determined

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Complaint - Page 8*

1   at the time of trial. Plaintiffs RICHARD TANG and ANNA TANG's emotional distress damages are

2   not assignable, and they individual sue Defendants for such damages as a result of their bad faith

3   conduct.

4         39.      Defendants' conduct described herein was intended by defendants to cause injury to

5   Plaintiffs or was despicable conduct carried on by Defendants with a willful and conscious disregard

6   of the rights of Plaintiffs, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

7   Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact

8   known to Defendants with the intention to deprive Plaintiffs of property or legal rights or to otherwise

9   cause injury, such as to constitute malice, oppression or fraud under California Civil Code §3294,

10   thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example

11   of defendants.   Plaintiffs RICHARD TANG and ANNA TANG's claim for punitive and exemplary

12   damages are not assignable and Plaintiffs RICHARD TANG and ANNA TANG sues defendants for

13   such damages as a result of their malicious, oppressive and/or fraudulent conduct.

14         40.      Defendants' conduct described herein was undertaken by its corporate officers or

15   managing agents who were responsible for claims supervision and operations, underwriting,

16   communications, and/or decisions.   The aforementioned conduct of said managing agents and

17   individuals was therefore undertaken on behalf of the corporate defendants.   Said corporate

18   defendants further had advance knowledge of the actions and conduct of these individuals whose

19   actions and conduct were ratified (and subsequently ratified), authorized, and approved by managing

20   agents whose precise identities are unknown to plaintiffs at this time.

21

22                     **SECOND CAUSE OF ACTION**

23         **(By Plaintiff CARLOS MADRIGAL For Breach of Contract Against**

24        **ALLSTATE INSURANCE COMPANY and DOES 11 through 20, inclusive )**

25         41.      Plaintiffs repeat, reallege and incorporate herein by this reference all prior allegations.

26         42.      Defendants ALLSTATE and DOES 11 through 20, inclusive, and each of them,

27   breached the terms of the POLICY by engaging in the acts and omissions detailed above ad by failing

28   to provide benefits Plaintiffs were entitled to under the POLICY.

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Complaint - Page 9*

43.  Plaintiff RICHARD TANG has assigned his breach of contract rights, and the right to recover such damages to Plaintiff CARLOS MADRIGAL in exchange for a covenant not to execute.

44.  As a direct and proximate result of Defendants' conduct and breach of contractual obligations, Plaintiff CARLOS MADRIGAL as assignee has suffered damages under the POLICY in an amount to be determined according to proof at the time of trial.

## THIRD CAUSE OF ACTION

### (By Plaintiffs RICHARD TANG and ANNA TANG)

### For Intentional Misrepresentation Against ALLSTATE INSURANCE COMPANY, TERESA VARELA and DOES 21 through 30, inclusive )

45.  Plaintiffs repeat, reallege and incorporate herein by this reference all prior allegations.

46.  Defendants ALLSTATE, VARELA and Does 21 through 30, inclusive, and each of them represented to Plaintiffs RICHARD TANG and ANNA TANG that ALLSTATE would accept the POLICY LIMITS OFFER. That representation was false and Defendants knew that the representation was false when it was made or Defendants made the representation recklessly and without regard for its truth.

47.  Defendants intended that Plaintiffs RICHARD TANG and ANNA TANG rely on the representation.

48.  Plaintiffs RICHARD TANG and ANNA TANG reasonably relied on Defendants' representation.

49.  Plaintiffs RICHARD TANG and ANNA TANG were harmed and their reliance on Defendants' misrepresentation was a substantial factor in causing Plaintiffs' harm.

50.  As a result of relying on Defendants' misrepresentation, Plaintiff RICHARD TANG was damaged by the judgment entered against him for $10,680,651.80 on October 4, 2012. Such a judgment adversely affected RICHARD TANG's credit rating and has caused economic damages.

51.  As a further proximate result of Defendants' misrepresentation, RICHARD TANG and ANNA TANG were required to lose time off work, and suffered economic damages as a result of being required to attend trial.

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

*Complaint - Page 10*

52.     As a further proximate result of Defendants' misrepresentation, Plaintiffs RICHARD TANG and ANNA TANG because of the lawsuit against RICHARD TANG suffered anxiety, worry, mental, and severe emotional distress, all to their general damages in a sum to be determined at the time of trial.

53.     Defendants' conduct described herein was intended by defendants to cause injury to Plaintiffs or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiffs, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention to deprive Plaintiffs of property or legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code §3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of defendants.

54.     Defendants' conduct described herein was undertaken by its corporate officers or managing agents who were responsible for claims supervision and operations, underwriting, communications, and/or decisions.  The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate defendants.  Said corporate defendants further had advance knowledge of the actions and conduct of these individuals whose actions and conduct were ratified (and subsequently ratified), authorized, and approved by managing agents whose precise identities are unknown to plaintiffs at this time.

## FOURTH CAUSE OF ACTION

### (By Plaintiffs RICHARD TANG and ANNA TANG

### For Negligent Misrepresentation Against ALLSTATE INSURANCE COMPANY,

### TERESA VARELA and DOES 31 through 40, inclusive )

55.     Plaintiffs repeat, reallege and incorporate herein by this reference all prior allegations.

56.     Defendants ALLSTATE, VARELA and Does 21 through 30, inclusive, and each of them represented to Plaintiffs RICHARD TANG and ANNA TANG that ALLSTATE would accept the POLICY LIMITS OFFER.  That representation was not true and Defendants knew that the

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD • SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

1   representation was false when it was made or Defendants made the representation recklessly and

2   without regard for its truth had no reasonable grounds for believing the representation was true when

3   it was made.

4          57.      Defendants intended that Plaintiffs RICHARD TANG and ANNA TANG rely on the

5   representation.

6          58.      Plaintiffs RICHARD TANG and ANNA TANG reasonably relied on Defendants'

7   representation.

8          59.      Plaintiffs RICHARD TANG and ANNA TANG were harmed and their reliance on

9   Defendants' misrepresentation was a substantial factor in causing Plaintiffs' harm.

10         60.      As a result of relying on Defendants' misrepresentation, Plaintiff RICHARD TANG

11   was damaged by the judgment entered against him for $10,680,651.80 on October 4, 2012. Such a

12   judgment adversely affected RICHARD TANG's credit rating and has caused economic damages.

13         61.      As a further proximate result of Defendants' misrepresentation, RICHARD TANG and

14   ANNA TANG were required to lose time off work, and suffered economic damages as a result of

15   being required to attend trial.

16         62.      As a further proximate result of Defendants' misrepresentation, Plaintiffs RICHARD

17   TANG and ANNA TANG because of the lawsuit against RICHARD TANG suffered anxiety, worry,

18   mental, and severe emotional distress, all to their general damages in a sum to be determined at the

19   time of trial.

20

21                              **FIFTH CAUSE OF ACTION**

22                       **(By Plaintiffs RICHARD TANG, and ANNA TANG**

23                 **For Intentional Infliction of Emotional Distress Against**

24                         **ALLSTATE INSURANCE COMPANY,**

25                 **TERESA VARELA and DOES 41 through 50, inclusive )**

26         63.      Plaintiffs repeat, reallege and incorporate herein by this reference all prior allegations.

27   \ \ \

28   \ \ \

---

*Complaint - Page 12*

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

64.     As detailed in Paragraphs 18 - 22, the conduct of Defendants ALLSTATE, VARELA, and DOES 41 through 50, inclusive, and each of them and their knowingly false claim that it could reject the POLICY LIMITS OFFER because it just learned MADRIGAL was uninsured and its decision to not let the TANGs know that it intended to reject the POLICY LIMITS OFFER was extreme and outrageous conduct directed at the insured TANGS. ALLSTATE's (and VARELA's) conduct was done with the reckless disregard of the probability that it would cause the TANGS severe emotional distress because they would be financially decimated. In the context of a claim that could have been settled for their $100,000 in policy limits but where a judgment could easily be in the millions of dollars, ALLSTATE's (and VARELA's) conduct in falsely claiming a basis to not pay the POLICY LIMITS demand and in deliberately not notifying the TANGS so that they could protect themselves was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

65.     As a proximate result of Defendants' conduct, Plaintiffs RICHARD TANG and ANNA TANG severe emotional distress, all to their general damages in a sum to be determined at the time of trial.

66.     Defendants' conduct described herein was intended by defendants to cause injury to Plaintiffs or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiffs, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention to deprive Plaintiffs of property or legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code §3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of defendants.

67.     Defendants' conduct described herein was undertaken by its corporate officers or managing agents who were responsible for claims supervision and operations, underwriting, communications, and/or decisions.  The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate defendants.  Said corporate defendants further had advance knowledge of the actions and conduct of these individuals whose actions and conduct were ratified (and subsequently ratified), authorized, and approved by managing

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

agents whose precise identities are unknown to plaintiffs at this time.

## SIXTH CAUSE OF ACTION

**(By Plaintiff CARLOS MADRIGAL For Direct Action Against Insurance Carrier Pursuant to Insurance Code Section 11580 Against ALLSTATE INSURANCE COMPANY, and DOES 51 through 60, inclusive )**

68.     Plaintiff repeats, realleges and incorporates herein by this reference all prior allegations.

69.     By virtue of his assignment and judgment against RICHARD TANG, Plaintiff CARLOS MADRIGAL is entitled to all benefits due under the POLICY, including costs and interest assessed in the underlying action.

## REQUEST FOR JURY TRIAL

70.     Plaintiffs hereby requests a trial by jury on all claims for relief alleged in, and on all issues raised by, this Complaint.

**WHEREFORE,** Plaintiffs pray for judgment against the Defendants, and each of them, as follows:

1.     For payment of the $10,680,651.80 judgment plus all accrued interest and costs on the judgment;

2.     For general and special damages in an amount within the jurisdictional limits of this court;

3.     For all benefits (including costs and interest assessed against RICHARD TANG) due under the POLICY;

4.     For costs of suit incurred herein;

5.     For prejudgment interest according to proof;

6.     For punitive damages as to the first, third and fifth causes of action; and

\ \ \
\ \ \
\ \ \
\ \ \
\ \ \

*Complaint - Page 14*

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

1    7.        For such other and further relief as the Court may deem just and proper.

2

3    Dated:       April 17, 2014              THE HOMAMPOUR LAW FIRM
                                              A Professional Law Corporation
4

5                                            By: _____
6                                            Arash Homampour,        Attorneys for Plaintiff
                                             CARLOS MADRIGAL
7

8    Dated:       April 17, 2014              BINDER & ASSOCIATES
9

10                                           By: _____
11                                           Warren J. Binder,       Attorneys for Plaintiffs
                                             RICHARD TANG and ANNA TANG
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint - Page 15

                                                          Page
                                                          26

# Exhibit A

# Allstate
# Auto Insurance
# Policy

**Policy:** (((((((((((((((((                    **Effective:** ///////////////////

**Issued to:**



AU104-3

Allstate Insurance Company

# Allstate Insurance Company

**The Company Named in the Policy Declarations**
A Stock Company
Home Office: Northbrook, Illinois

## General

This policy is a legal contract between **you** and **us**. A coverage applies only when a premium for it is shown on the Policy Declarations. If more than one **auto** is insured, premiums will be shown for each **auto**. If **you** pay the premiums when due and comply with the policy terms, **Allstate**, relying on the information **you** have given **us**, makes the following agreements with **you**.

### When And Where The Policy Applies

**Your** policy applies only during the policy period. During this time, it applies to losses to the **auto**, accidents and occurrences within the United States of America, its territories or possessions or Canada, or between their ports.

The policy period is shown on the Policy Declarations. If **we** offer to renew **your** policy, **you** may continue the policy for a successive policy period of six months by paying the required renewal premium payment when due. If the required renewal premium payment isn't received on or before the end of the then current policy period, **your** policy will terminate automatically on the expiration date of the then current policy period.

### Limited Mexico Coverage

For **your** protection **you** should purchase insurance from a company licensed in Mexico. However, the coverage of this policy for an insured private passenger or **utility auto** is extended to cover that **auto** within the Republic of Mexico. This coverage applies only while the insured **auto** is within 75 miles of the United States border and only for a period not to exceed ten days after each separate entry into the Republic of Mexico.

If loss or damage occurs which may require repair of the insured **auto** or replacement of any part(s) while the **auto** is in Mexican territory, the basis for adjustment of the claim will be as follows:

The repair or replacement costs will not exceed the cost of having the repairs or replacements

made at the nearest point in the United States where the repairs or replacements can be made. The cost for towing, transportation and salvage operations of the **auto** while within Mexican territory are not covered under this policy.

### WARNING

Unless **you** have auto insurance written by a Mexican insurance company, **you** may spend many hours or days in jail if **you** have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and possible penalties under the laws of Mexico, including the impoundment of **your auto**.

### Changes
### Premium Changes

The premium for each **auto** which **Allstate** agrees to insure based on information **Allstate** has received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct, if it is complete, and if it changes during the policy period. **You** agree that if this information changes or is incorrect or incomplete, **we** may adjust **your** premium accordingly during the policy period.

### Coverage Changes

When **Allstate** broadens a coverage during the policy period without additional charge, **you** have the new feature if **you** have the coverage to which it applies. The new feature applies on the date the coverage change is effective in **your** state. Otherwise, the policy can be changed only by endorsement. Any change in **your** coverage will be made using the rules, rates and forms in effect, and on file if required, for **our** use in **your** state.

### Duty To Report Policy Changes

**Your** policy was issued in reliance on the information **you** provided concerning **autos** and persons insured by the policy. To properly insure **your auto**, **you** should promptly notify **us** when **you** change **your** address or whenever any **resident** operators insured by **your** policy are added or deleted.

**You** must tell **us** within 30 days when **you** acquire a replacement **auto**. If **you** don't, certain coverages of this policy may not apply.

Page 2



Allstate Insurance Company

# Part I
# Automobile Liability Insurance
# Bodily Injury—Coverage AA
# Property Damage —
# Coverage BB

Allstate will pay those damages which an insured person is legally obligated to pay because of:

1. **bodily injury,** sustained by any person, and

2. damage to, or destruction of, property.

Under these coverages, **your** policy protects an insured person from liability for damage arising out of the ownership, maintenance or use, loading or unloading of an insured **auto.**

We will defend an insured person sued for damages which are covered by this policy even if the suit is groundless or false. We will choose the counsel. We may settle any claim or suit if we believe it is proper. We will not defend an insured person sued for damages which are not covered by this policy.

## Additional Payments Allstate Will Make

When we defend an insured person under this Part, we will pay:

1. up to $50 a day for loss of wages or salary if we ask that person to attend hearings or trials to defend against a **bodily injury** suit. We won't pay for loss of other income. We will pay other reasonable expenses incurred at our request.

2. court costs for defense.

3. interest accruing on damages awarded. We will pay this interest only until we have paid, offered, or deposited in court the amount for which we are liable under this policy. We will only pay interest on damages not exceeding our limits of liability.

4. premiums on appeal bonds and on bonds to release attachments, but not in excess of our limit of liability. We aren't required to apply for or furnish these bonds.

We will repay an insured person for:

1. the cost of any bail bonds required due to an accident or traffic law violation involving the use of the insured **auto.** We won't pay more than $300 per bond. We aren't required to apply for or furnish these bonds.

2. any expense incurred for first aid to others at the time of an **auto** accident involving the insured **auto.**

## Insured Persons

1. While using **your** insured **auto:**
   a) **you,**
   b) any **resident,** and
   c) any other person using it with **your** permission.

2. While using a non-owned **auto:**
   a) **you,**
   b) any **resident** relative using a four wheel private passenger **auto** or utility **auto.**

3. Any other person or organization liable for the use of an insured **auto** if the **auto** is not owned or hired by this person or organization, provided the use is by an insured person under 1. or 2. above and then only for that person's acts or omissions.

## Insured Autos

1. Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or utility **auto** you replace it with.

2. An additional four wheel private passenger **auto** or utility **auto** you become the owner of during the policy period will be covered for 30 days immediately after you acquire it. However, we will provide this coverage only if **Allstate** or one of its affiliates insures all other private passenger **autos** or utility **autos** you own, and you pay the additional premium.

Coverage will be continued beyond this 30 day period only if:
   a) you ask us to continue coverage within 30 days after you acquire the **auto** or utility **auto;**
   b) we agree to continue coverage for this additional **auto** or utility **auto;**
   c) you pay the additional premium.

3. A substitute four wheel private passenger **auto** or utility **auto,** not owned by you or a resident, being temporarily used while your

Page 4



**Allstate Insurance Company**

7.  damage to or destruction of property an insured person owns, transports, is in charge of, or rents. An **auto** operated by an insured person is considered to be property in charge of an insured person. However, a private residence or a garage rented by that person is covered.

8.  **bodily injury** or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

9.  **bodily injury** or property damage which would also be covered under nuclear energy liability insurance. This applies even if the limits of that insurance are exhausted.

### Financial Responsibility
When this policy is certified as proof under any motor vehicle financial responsibility law, this policy will comply with the provisions of that law.

### Limits Of Liability
The limits shown on the Policy Declarations are the maximum we will pay for any single auto accident. The limit stated for each person for **bodily injury** is the maximum we will pay for damages because of **bodily injury** sustained by one person in any single auto accident, including damages sustained by anyone else as a result of the **bodily injury**. Subject to the limit for each person, the limit stated for each occurrence is the maximum we will pay for damages for **bodily injury** sustained by two or more persons in any single auto accident. For property damage, the limit applies to damages arising from each occurrence.

The liability limits apply to each insured **auto** as shown on the Policy Declarations. The insuring of more than one person or **auto** under this policy will not increase **our** liability limits beyond the amount shown for any one auto, even though a separate premium is charged for each **auto**. The limits also won't be increased if **you** have other auto insurance policies that apply.

There will be no duplication of payments made under the Bodily Injury Liability and Uninsured Motorists Coverage of this policy.

An **auto** and attached trailer are considered one **auto**. Also, an **auto** and a mounted camper unit, topper, cap or canopy are considered one **auto**.

If a single "each occurrence" limit is stated on the Policy Declarations for Automobile Liability Insurance, this limit will be the maximum amount of **Allstate's** liability for both **bodily injury** and property damage arising out of any one occurrence.

### If There Is Other Insurance
If an insured person is using a substitute private passenger **auto** or non-owned **auto**, **our** liability insurance will be excess over other collectible insurance. If more than one policy applies on a primary basis to an accident involving **your** insured **auto**, we will bear **our** proportionate share with other collectible liability insurance.

If more than one policy applies on an excess basis, we will bear **our** proportionate share with other collectible excess liability insurance.

### Assistance And Cooperation
When we ask, an insured person must cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit. If we ask, that person must also help us obtain payment from anyone who may be jointly responsible.

We can't be obligated if an insured person voluntarily takes any action or makes any payments other than for covered expenses for bail bonds or first aid to others.

### Action Against Allstate
No insured person may sue **us** under this coverage unless there is full compliance with all the policy terms.

If liability has been determined by judgment after trial, or by written agreement among the insured, the other person, and us, then whoever obtains this judgment or agreement against an insured person, may sue **us** up to the limits of this policy. However, no one has the right to join **us** in a suit to determine legal responsibility.

### Bankruptcy or Insolvency
The bankruptcy or insolvency of an insured person or that person's estate won't relieve **us** of any obligation.

Page 6



Allstate Insurance Company

3. "Bodily Injury"—means bodily injury, sickness, disease or death.

4. "Resident"—means a person who physically resides in your household with the intention of continuing residence there. Your unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in your household.

5. "Utility Auto"—means an auto of the pickup body, sedan delivery or panel truck type. This auto must have a rated load capacity of not more than 2,000 pounds.

6. "You" or "Your"—means the policyholder named on the Policy Declarations and that policyholder's resident spouse.

## Exclusions—What is not covered

This coverage does not apply to bodily injury to:

1. you or a resident relative while in, on, getting into or out of an auto you or a resident relative own but do not insure for this coverage.

2. you or a resident relative while in, on, getting into or out of, or struck as a pedestrian by:
   a) a vehicle operated on rails or crawler-treads, or
   b) a vehicle or other equipment designed for use off public roads, while not on public roads.

3. any person while in, on, getting into or out of:
   a) an owned auto while available for hire to the public. This exclusion does not apply to shared-expense car pools.
   b) an auto or trailer while used as a residence or premises.

4. any person, other than you or a resident relative, while using a non-owned auto:
   a) which is available for hire by the public, or
   b) in auto business operations such as repairing, servicing, testing, washing, parking, storing or selling of autos.

Coverage is provided for you, your private chauffeur or domestic servant while using a private passenger auto or trailer in any other business or occupation.

5. any person resulting from any act of war, insurrection, rebellion, or revolution.

## Limits Of Liability

The limit shown on the Policy Declarations is the maximum we will pay for all expenses incurred by or for each person as the result of any one auto accident.

The medical payments limit applies to each insured auto as shown on the Policy Declarations. The insuring of more than one person or auto under this policy won't increase our limit beyond the amount shown for any one auto, even though a separate premium is charged for each auto. The limit also won't be increased if you have other auto insurance policies that apply.

If an insured person dies as the result of a covered auto accident, we will pay the least of the following as a funeral service expenses benefit:

1. $2,000; or

2. the Coverage CC limit of liability stated on the Policy Declarations; or

3. the remaining portion of the Coverage CC limit of liability not expended for other covered medical expenses.

This funeral service expenses benefit does not increase, and will not be paid in addition to, the limits of liability stated on the Policy Declarations for Coverage CC. This benefit is payable to the deceased insured person's spouse if a resident of the same household at the time of the accident. However, if the deceased is a minor, the benefit is payable to either parent if that parent is a resident of the same household at the time of the accident. In all other cases, the benefit is payable to the deceased insured person's estate.

There will be no duplication of payments made under the Bodily Injury Liability and Automobile Medical Payments coverages of this policy. All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person. The damages payable under the Bodily Injury Liability coverage of this policy will be reduced by that amount.

Page 8



# Allstate Insurance Company

## Deductible

If there is no **primary medical plan** covering **you** and **resident** relatives in effect on the date of the accident, **Allstate** will pay only when covered expenses for **you** or a **resident** relative exceed $2,000. We will then pay only the excess amount. This deductible applies to each person. This paragraph does not apply if coverage under the **primary medical plan** terminates within 30 days prior to the loss.

This deductible does not apply to funeral service expenses.

## Insured Persons

1. **You** and any **resident** relative who sustains **bodily injury** while in, on, getting into or out of, or when struck by, an **auto** or trailer. The use of a non-owned **auto** must be with the owner's permission.

2. Any other person who sustains **bodily injury** while in, on, getting into or out of
   a) your insured **auto** while being used by **you**, a **resident** relative, or any other person with **your** permission.
   b) a non-owned **auto** if the injury results from **your** operation or occupancy.
   c) a non-owned **auto** if the injury results from the operation on **your** behalf by **your** private chauffeur or domestic servant.
   d) a non-owned private passenger **auto** or trailer if the injury results from the operation or occupancy by a **resident** relative.

   The use of non-owned **autos** must be with the owner's permission.

## Insured Autos

1. Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto** you replace it with.

2. An additional four wheel private passenger **auto** or **utility auto** you acquire ownership of during the policy period will be covered for 30 days immediately after **you** become the owner. However, we will provide this coverage only if **Allstate** or one of its affiliates insure all other private passenger **autos** or **utility autos** you own, and **you** pay the additional premium.

Coverage will be continued beyond this 30 day period only if:
   a) **you** ask **us** to continue coverage within 30 days after **you** acquire the **auto** or **utility auto**;
   b) **we** agree to continue coverage for this additional **auto** or **utility auto**;
   c) **you** pay the additional premium.

3. A substitute four wheel private passenger **auto** or **utility auto**, not owned by **you** or a **resident**, temporarily used while **your** insured **auto** is being serviced or repaired, or if **your** insured **auto** is stolen or destroyed.

4. A non-owned **auto** having not less than four wheels used with the owner's permission. This **auto** must not be available for the regular use of an insured person.

5. A trailer while attached to an insured **auto**. The trailer must be designed for use with a private passenger **auto** or **utility auto**. This trailer can't be used for business purposes with other than a private passenger **auto** or **utility auto**.

## Definitions

1. **"Allstate", "We", "Us", or "Our"**—means the company as indicated on the Policy Declarations.

2. **"Auto"**—means a land motor vehicle designed for use on public roads.

3. **"Bodily Injury"**—means bodily injury, sickness, disease or death.

4. **"Primary Medical Plan"**—means individual, blanket or group accident disability, health, major medical or hospitalization insurance or a health maintenance organization which covers expenses on a primary basis for treatment, services and products required due to a **bodily injury** caused by an auto accident. The Federal Medicare program is not a primary medical plan.

5. **"Resident"**—means a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in **your** household.

Page 10





If the insured person is sued by a medical services provider because we refuse to pay contested medical expenses, we will pay all defense costs and any resulting judgment against the insured person. We will choose the counsel. The insured person must cooperate with us in the defense of any claim or lawsuit. If we ask the insured person to attend hearings or trials, we will pay up to $50 per day for lost wages or salary. We will also pay other reasonable expenses incurred at our request.

### If There Is Other Automobile Medical Insurance
When this coverage applies to a substitute auto or a non-owned auto, Allstate will pay only after all other collectible auto medical insurance has been exhausted.

When this coverage applies to a replacement auto or additional auto, this policy will not apply if you have other collectible auto medical insurance.

When this coverage applies to an owned auto insured by an affiliate of Allstate or any other insurer, Allstate will pay only after all other collectible auto medical insurance has been exhausted.

### Assistance and Cooperation
When we ask, an insured person must cooperate with us in the investigation, settlement and defense of any claim or lawsuit. If we ask, that person must also help us obtain payment from anyone who may be jointly responsible.

We can't be obligated if an insured person voluntarily takes any action or makes any payments other than for covered expenses for first aid to others.

### Action Against Allstate
No one may sue us under this coverage unless there is full compliance with all the policy terms.

### Proof of Claim; Medical Reports
As soon as possible, any person making claim must give us written proof of claim. It must include all details we may need to determine the amounts payable. We may also require any person making claim to submit to questioning under oath and sign the transcript.

The injured person may be required to take medical examinations by physicians we choose, as often as

we reasonably require. We must be given authorization to obtain medical reports and other records pertinent to the claim.

## Part IV
## Automobile Death Indemnity Insurance
## Coverage CM
Allstate will pay the benefit shown on the Policy Declarations if an insured person dies as the direct result of bodily injury caused by an auto accident. The injury must be sustained while the insured person is in, on, getting into or out of, or when struck as a pedestrian by an auto, trailer or semi-trailer.

Benefits will be paid only if:
1.  death occurs within 90 days of the auto accident; or

2.  death occurs within 1 year of the auto accident and the bodily injury has continuously prevented the insured person from performing all duties pertaining to that person's occupation.

### Insured Persons
The person or persons shown as insured on the Policy Declarations under Coverage CM.

### Definitions
1.  "Allstate", "We", or "Us"—means the company as indicated on the Policy Declarations.

2.  "Auto" — means a land motor vehicle designed for use on public roads.

3.  "Bodily Injury"—means bodily injury, sickness or disease.

### Exclusions—What is not covered
This coverage does not apply to death:
1.  sustained in the course of an occupation by any person while:
    a)  operating, loading, unloading, assisting on, or performing any other duties related to the use of a commercial auto, or an auto hired or rented to others for a charge.

Page 12



# Allstate Insurance Company

b) repairing or servicing **autos,** including any related duties.

2. due to any attempt at suicide while sane or insane.

3. due to any act of war, insurrection, rebellion or revolution.

4. sustained while in, on, getting into or out of, or when struck as a pedestrian by
   a) a vehicle operated on rails or crawler-treads;
   b) a vehicle or other equipment designed for use off public roads, while not on public roads; or
   c) a vehicle when used as a residence or premises.

## To Whom And When Payment Is Made

Weekly benefits are payable to the disabled insured person. Accrued weekly benefits are payable every four weeks. Any remaining balance is payable at termination of the disability period. Benefits end upon the death of the insured person.

## Proof Of Claim; Medical Reports

As soon as possible, any person making claim must give us written proof of claim.

The injured person may be required to take medical examinations by physicians we choose, as often as we reasonably require. We must be given authorization to obtain medical reports and copies of records.

# Part VI
# Uninsured Motorists Insurance Coverage SS

We will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:

1. bodily injury sustained by an insured person, and **property damage.**

2. Property damage is covered only if a separate limit is shown on the Policy Declarations for Uninsured Motorists Insurance—Property Damage.

The **bodily injury** or **property damage** must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto. We will not pay any punitive or exemplary damages.

The right to benefits and the amount payable will be decided by agreement between the insured person and Allstate. If an agreement can't be reached, the decision will be made by arbitration.

If an insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment.

## Insured Persons

1. **You** and any **resident relative.**

2. Any other person while in, on, getting into or out of an insured auto with **your** permission.

3. Any other person who is legally entitled to recover because of **bodily injury** to **you,** a **resident relative,** or an occupant of **your** insured auto with **your** permission.

## An insured auto is a motor vehicle:

1. described on the Policy Declarations. This includes the **motor vehicle you** replace it with.

2. **you** become the owner of during the premium period. This additional **motor vehicle** will be covered for 30 days immediately after **you** become the owner. However, we will provide this coverage only if Allstate or one of its affiliates insure all other private passenger **motor vehicles you** own, and **you** pay the additional premium. Coverage will be continued beyond this 30 day period only if:
   a) **you** ask us to continue coverage within 30 days after **you** acquire the **motor vehicle;**
   b) we agree to continue coverage for this additional **motor vehicle;**
   c) **you** pay the additional premium.

3. not owned by **you** or a resident relative if being temporarily used while **your** insured auto is being serviced or repaired, or if **your** insured auto is stolen or destroyed. The **motor vehicle** must be used with the owner's permission.

Page 14



Allstate Insurance Company

## Exclusions—What is not covered

Allstate will not pay any damages an insured person is legally entitled to recover because of:

1. **bodily injury** or **property damage** to any person who makes a settlement without our written consent.

2. **bodily injury** or **property damage** sustained while in, on, getting into or out of or when struck by an uninsured **motor vehicle** which is owned by **you** or a **resident** relative.

3. **bodily injury** or **property damage** sustained while in, on, getting into or out of a vehicle **you** own which is owned by **you** or a **resident** relative which is insured for this coverage under another policy.

4. **bodily injury** or **property damage**, if the payment would directly or indirectly benefit any workers compensation or disability benefits insurer, including a self-insurer, or directly benefit the United States, or any state or political subdivision.

## Limits Of Liability

1. The coverage limit shown on the Policy Declarations for:
   a) "each person" is the maximum that we will pay for damages arising out of **bodily injury** to one person in any one **motor vehicle** accident, including all damages sustained by anyone else as a result of that **bodily injury**.
   b) "each accident" is the maximum that we will pay for damages arising out of **bodily injury** to two or more persons in any one **motor vehicle** accident. This limit is subject to the limit for "each person".
   c) "each accident" is the maximum that we will pay for **property damage** arising out of any one **motor vehicle** accident. Subject to this limit, **our** limit of liability for **property damage** will be the lessor of:
      1) the actual cash value of the insured auto; or
      2) the amount necessary to repair or replace the insured auto.

2. These limits are the maximum **Allstate** will pay for any one **motor vehicle** accident regardless of the number of:
   a) claims made;
   b) vehicles or persons shown on the Policy Declarations; or
   c) vehicles involved in the accident.

   The Uninsured Motorists Coverage limits apply to each insured **motor vehicle** as shown on the Policy Declarations.

3. The limits for Coverage SS will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured **motor vehicle**.

4. We are not obligated to make any payment for **bodily injury** under this coverage which arises out of the use of an underinsured **motor vehicle** until after the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

5. Any loss payable under Coverage SS will be reduced by:
   a) all amounts payable under the bodily injury liability coverage provided by this policy.
   b) all amounts payable under any workers compensation law.

6. Subject to the limits of liability, damages payable will be reduced by any amount paid or due under this or any other automobile policy for:
   a) medical payments coverage; or
   b) coordinated medical payments coverage; or
   c) any similar medical payments insurance.

## If There Is Other Insurance

If the insured person was in, on, getting into or out of a vehicle **you** do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.

If more than one policy applies to the accident on a primary basis, the total benefits payable to any one

Page 16

Allstate Insurance Com

# Part VII
# Protection Against Loss To The Auto

The following coverages apply when indicated on the Policy Declarations. Additional payments, autos insured, definitions, exclusions, and other information applicable to all these coverages appear beginning on page 19.

## COVERAGE DD
### Auto Collision Insurance

Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto (including insured loss to an attached trailer) from a collision with another object or by upset of that auto or trailer. The deductible amount won't be subtracted from the loss payment in collisions involving your insured auto and another auto insured by us.

### Waiver Of Collision Coverage Deductible Option

The following applies only when the Policy Declarations indicate the Waiver of Collision Coverage Deductible Option:

The Auto Collision Insurance deductible will be waived to the extent that you are legally entitled to recover damages from the owner or operator of an uninsured auto if:

1. the damage is caused by direct physical contact between an uninsured auto as defined in Part VI—Uninsured Motorists Insurance of the policy, and a vehicle owned by you which is insured for Auto Collision Insurance under this policy; and

2. the owner or operator of the uninsured auto has been identified or the vehicle itself has been identified by its license number; and

3. we have been notified of the accident within 10 business days.

The Auto Collision Insurance deductible will not be waived when the damage is caused by an underinsured motor vehicle as defined in Part VI—Uninsured Motorists Insurance of this policy.

## If We Cannot Agree

If you or we cannot agree on the amount of the Auto Collision Insurance deductible to be waived, then upon the written request of either, the disagreement will be settled by a single neutral arbitrator. Arbitration will be conducted within one year from the date of the accident. No cause of action shall exist against either you or Allstate from exercising the right to request arbitration for a claim for the Waiver of Collision Coverage Deductible.

## COVERAGE HH
### Auto Comprehensive Insurance

Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto not caused by collision. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

The deductible amount will not be subtracted from the loss payment when the loss is caused by a peril listed under Coverage HE.

By agreement between you and Allstate, the deductible amount will not be subtracted from a glass breakage loss if the glass is repaired rather than replaced.

## COVERAGE HE
### Auto Fire, Lightning and Transportation Insurance

Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto due to:

1. fire or lightning.

2. smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the auto is located.

3. stranding, sinking, burning, collision or derailment of any conveyance in or upon which the auto is being transported on land or on water.

Page 18



insured auto or disablement of the auto to your destination, if

a) the entire auto is stolen and you have comprehensive coverage under this policy.

b) the auto is disabled by a collision or comprehensive loss, and you have the coverage under this policy applicable to the loss.

This provision does not apply if the insured auto is a travel-trailer.

3. If you have comprehensive insurance under this policy, Allstate will repay up to $10 a day but not more than $300 for each loss for the cost of transportation when the entire auto is stolen. This coverage begins 48 hours after you report the theft to us, but ends when we offer settlement or your auto is returned to use.

4. If you have purchased collision or comprehensive insurance under this policy, Allstate will pay general average and salvage charges imposed when your insured auto is being transported.

## Insured Autos

1. Any auto described on the Policy Declarations. This includes the four wheel private passenger auto or utility auto you replace it with if you notify Allstate within 30 days of the replacement and pay the additional premium. Coverage will not continue after 30 days if we are not notified of the replacement auto.

2. An additional four wheel private passenger auto or utility auto you acquire ownership of during the policy period will be covered for 30 days  immediately after you become the owner.

However, we will provide this coverage only if Allstate or one of its affiliates insure all other private passenger autos or utility autos you own, and you pay the additional premium. Coverage will be continued beyond this 30 day period only if:

a) you ask us to continue coverage within 30 days after you acquire the auto or utility auto you;

b) we agree to continue coverage for this additional auto or utility auto;

c) you pay the additional premium.

3. A substitute four wheel private passenger auto or utility auto, not owned by you or a resident, temporarily used with the permission of the owner while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed.

4. A non-owned four wheel private passenger auto, a utility auto, a motor home or travel-trailer used by you or a resident relative with the owner's permission. These vehicles must not be available for or furnished for the regular use of you or any resident.

5. A trailer while attached to an insured auto. This trailer must be designed for use with a private passenger auto. This trailer can't be used for business purposes with other than a private passenger auto or utility auto. Home, office, store, display, or passenger trailers, travel-trailers or camper units are not covered unless described on the Policy Declarations.

## Definitions

1. "Allstate", "We", "Us", or "Our"—means the company as indicated on the Policy Declarations.

2. "Auto"—means a land motor vehicle designed for use on public roads.

3. "Camper Unit"—means a demountable unit designed to be used as temporary living quarters, including all equipment and accessories built into and forming a permanent part of the unit. A camper unit does not include:

a) caps, tops, or canopies designed for use as protection of the cargo area of a utility auto; or

b) radio or television antennas, awnings, cabanas, or equipment designed to create additional off highway living facilities.

4. "Motor Home"—means a self-propelled vehicle equipped, designed or used as a living quarters.

5. "Resident"—means a person who physically resides in your household with the intention of continuing residence there. Your unmarried

Page 20



## Allstate Insurance Company

the agreed or appraised value. We may settle any claim or loss either with you or the owner of the property.

If a loss or damage occurs which may require repair of the insured auto or replacement of any part(s) while the auto is in Mexican territory, the basis for adjustment of the claim will be as follows:

The repair or replacement costs will not exceed the cost of having the repairs or replacement made at the nearest point in the United States where the repairs or replacements can be made. The cost for towing, transportation and salvage operations of the auto while within Mexican territory are not covered under this policy.

### Limits Of Liability
Allstate's limit of liability is the actual cash value of the property or damaged part of the property at the time of loss. The actual cash value will be reduced by the deductible for each coverage as shown on the Policy Declarations. However, our liability will not exceed what it would cost to repair or replace the property or part with other of like kind and quality. The limit for loss to any covered trailer not described on the Policy Declarations is $500.

An auto and attached trailer are considered separate autos, and you must pay the deductible, if any, on each. Only one deductible will apply to an auto with a mounted camper unit. If unmounted, a separate deductible will apply to the auto and camper unit.

The limit for loss to any non-owned motor home or travel-trailer is $10,000.

### If There Is Other Insurance
If there is other insurance covering the loss at the time of the accident, we will pay only our share of any damages. Our share is determined by adding the limits of this insurance to the limits of all other insurance that applies on the same basis and finding the percentage of the total that our limits represent.

When this insurance covers a substitute auto or non-owned auto, we will pay only after all other collectible insurance has been exhausted.

When this insurance covers a replacement auto or additional auto, this policy won't apply if you have other collectible insurance.

If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible excess insurance.

When more than one coverage is applicable to the loss, you may recover under the broadest coverage but not both. However, any Coverage ZA deductible will always apply.

### Action Against Allstate
No one may sue us under this coverage unless there is full compliance with all the policy terms.

### Subrogation Rights
When we pay, your rights of recovery from anyone else become ours up to the amount we have paid. You must protect these rights and help us enforce them.

### What You Must Do If There Is A Loss
1.  As soon as possible, any person making claim must give us written proof of loss. It must include all details reasonably required by us. We have the right to inspect the damaged property. We may require any person making claim to file with us a sworn proof of loss. We may also require that person to submit to examinations under oath.

2.  Protect the auto from further loss. We will pay reasonable expenses to guard against further loss. If you don't protect the auto, further loss is not covered.

3.  Report all theft losses promptly to the police.

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois and, if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of Allstate.

*signature*

Secretary

*signature* Robert W. Gary

President, Personal Lines

Page 22

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## California
## Amendatory Endorsement — AU2250-6

I.   In the **General** provisions, the following changes are made:

   A.   The following provisions are added:

   **Fraud**
   This policy will not apply to any claim in which an insured person has concealed or misrepresented any material fact or circumstance.

   **What Law Will Apply**
   This policy is issued in accordance with the laws of California and covers property or risks principally located in California. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of California.

   If a covered loss to the auto, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

   **Where Lawsuits May Be Brought**
   Subject to the following two paragraphs, any and all lawsuits in any way related to this policy shall be brought, heard, and decided only in a state or federal court located in California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy or involved in any other way with this policy, shall be brought, heard, and decided only in a state or federal court located in California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

   If a covered loss to the auto, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside California, lawsuits regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may also be brought in the judicial district where that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened.

   Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

   B.   The Non Renewal provision is replaced by the following:

   **Non Renewal**
   If we don't intend to continue the policy beyond the current policy period, we will mail you notice at least 30 days before the end of the policy period.

Page 1

Page
40

## Short Rate Table

| Days Policy In Force | Percentage of Semi-Annual Premium | Days Policy In Force | Percentage of Semi-Annual Premium | Days Policy In Force | Percentage of Semi-Annual Premium |
|---|---|---|---|---|---|
| 1 | 6% | 61-62 | 44% | 121-123 | 74% |
| 2 | 7 | 63 | 45 | 124-125 | 75 |
| 3 | 8 | 64-65 | 46 | 126-127 | 76 |
| 4 | 9 | 66-67 | 47 | 128-130 | 77 |
| 5 | 10 | 68-69 | 48 | 131-132 | 78 |
| 6 | 11 | 70-71 | 49 | 133-134 | 79 |
| 7 | 12 | 72-73 | 50 | 135-136 | 80 |
| 8 | 13 | 74 | 51 | 137-139 | 81 |
| 9 | 14 | 75-76 | 52 | 140-141 | 82 |
| 10 | 15 | 77-78 | 53 | 142-143 | 83 |
| 11 | 16 | 79-80 | 54 | 144-145 | 84 |
| 12 | 17 | 81-82 | 55 | 146-148 | 85 |
| 13-14 | 18 | 83 | 56 | 149-150 (5 mos.) | 86 |
| 15-16 | 19 | 84-85 | 57 | | |
| 17-18 | 20 | 86-87 | 58 | 151-152 | 87 |
| 19-20 | 21 | 88-89 | 59 | 153-155 | 88 |
| 21 | 22 | 90-91 (3 mos.) | 60 | 156-157 | 89 |
| 22-23 | 23 | | | 158-159 | 90 |
| 24-25 | 24 | 92-93 | 61 | 160-161 | 91 |
| 26-27 | 25 | 94-95 | 62 | 162-164 | 92 |
| 28-29 | 26 | 96-98 | 63 | 165-166 | 93 |
| 30-31 (1 mo.) | 27 | 99-100 | 64 | 167-168 | 94 |
| | | 101-102 | 65 | 169-171 | 95 |
| 32 | 28 | 103-104 | 66 | 172-173 | 96 |
| 33-34 | 29 | 105-107 | 67 | 174-175 | 97 |
| 35-36 | 30 | 108-109 | 68 | 176-177 | 98 |
| 37-38 | 31 | 110-111 | 69 | 178-180 | 99 |
| 39-40 | 32 | 112-114 | 70 | 181-183 (6 mos.) | 100 |
| 41 | 33 | 115-116 | 71 | | |
| 42-43 | 34 | 117-118 | 72 | | |
| 44-45 | 35 | 119-120 (4 mos.) | 73 | | |
| 46-47 | 36 | | | | |
| 48-49 | 37 | | | | |
| 50-51 | 38 | | | | |
| 52 | 39 | | | | |
| 53-54 | 40 | | | | |
| 55-56 | 41 | | | | |
| 57-58 | 42 | | | | |
| 59-60 (2 mos.) | 43 | | | | |

Page 3

6.  **bodily injury** to an insured person or **bodily injury** to an insured person whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured person. This exclusion applies only to **you** and **resident relatives**.

8.  **bodily injury** or property damage which may reasonably be expected to result from the intentional or criminal acts of the insured person or which are in fact intended by the insured person.

F.  In the Exclusions—**What is not covered** provision, item 10. is added:

10.  **bodily injury** or property damage arising out of the participation in any prearranged, organized, or spontaneous racing contest; speed contest; or use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

G.  The following provision is added:

**Child Passenger Restraint System**
Allstate will pay for the replacement of a child passenger restraint system in use by a child at the time of an accident for which coverage under this Part is applicable due to the liability of an insured person. The child passenger restraint system must meet applicable federal motor vehicle safety standards.

III.  In Part II, **Automobile Medical Payments—Coverage CC,** the following changes are made:

A.  The **Insuring Agreement** provision is replaced by the following:

**Insuring Agreement**
Allstate will pay to or on behalf of an insured person all reasonable expenses the insured person becomes legally obligated to pay for necessary medical treatment, medical services or medical products actually provided to the insured person. Covered expenses may include ambulance, hospital, medical, surgical, X-ray, dental, orthopedic and prosthetic devices, pharmaceutical, eyeglasses, hearing aids, funeral service expenses, and professional nursing services. Payments will be made only when such expenses relate to **bodily injury** caused by an **auto** accident.

The treatment, services, or products must be rendered within one year after the accident. This will be extended to five years if the amount of insurance shown on the Policy Declarations for this coverage is more than $5,000.

This coverage does not apply to any person to the extent that the treatment is covered under any worker's compensation law.

B.  In the **Definitions** provision, item 6., is replaced by the following:

6.  "**Your**" or "**Your**"—means the policyholder named on the Policy Declarations and:
    a)  that policyholder's **resident spouse**; or
    b)  a party who has established with that policyholder a registered domestic partnership under California state law if a **resident** of the same household.



**Page 5**



V.   In **Part IV, Automobile Death Indemnity Insurance—Coverage CM**, under the **Exclusions—What is not covered** provision, item 5. is added:

5.   to any person arising out of the participation in any prearranged, organized, or spontaneous:
   a)   racing contest;
   b)   speed contest; or
   c)   use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

VI.   In **Part V, Automobile Disability Income Protection—Coverage CW**, under the **Exclusions—What is not covered** provision, item 5. is added:

5.   arising out of the participation in any prearranged, organized, or spontaneous:
   a)   racing contest;
   b)   speed contest; or
   c)   use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

VII.   In **Part VI, Uninsured Motorists Insurance—Coverage SS**, the following changes are made:

A.   In the **An uninsured auto is** provision, items 2. and 4. are replaced by the following:

2.   a motor vehicle for which the insurer denies coverage, becomes insolvent within one year of the accident, or refuses to admit coverage except conditionally or with reservation.

4.   an underinsured **motor vehicle** which has a bodily injury liability bond or bodily injury liability insurance in effect at the time of the accident, but in an amount less than the applicable bodily injury limit of liability for Uninsured Motorists Bodily Injury coverage shown on **your** Policy Declarations.

B.   In the **An uninsured auto is not** provision, item 3. is replaced by the following:

3.   a **motor vehicle** insured for bodily injury under Part I of this policy. However, this does not apply when the insured is in, on, getting into or out of or when struck and injured by a **motor vehicle** owned by the insured while it is being operated or caused to be operated by a person without the insured's consent in connection with criminal activity that is documented in a police report and in which the insured is not involved.

C.   In the **Definitions** provision, the following is amended:

1.   item 4. is replaced by the following:

4.   **Property damage** means damage to or destruction of the insured auto, but does not include:

   a)   loss of use of the insured auto;
   b)   damage caused by an underinsured **motor vehicle**; or
   c)   damage to personal property contained in the insured auto other than a child passenger restraint system in use by a child in the insured auto at the time of an accident to which

Page 7

Legal action can be brought against **us** under this coverage if within two years from the date of the accident:

1. suit for **bodily injury** has been filed against the uninsured motorist in a court of competent jurisdiction; or

2. agreement as to the amount due under this coverage has been concluded; or

3. formal arbitration proceedings have been instituted and notice provided **us**.

If a suit has been filed against the uninsured motorist, the insured person must provide **us** notice of the suit. The notice must be in writing and be provided within a reasonable time after the insured knew or should have known the motorist was uninsured. If we are prejudiced by a failure to give notice the claim will be denied.

H.  The **If We Cannot Agree** provision is replaced by the following:

**If We Cannot Agree**
If **you** and we disagree on **your** right to receive any damages or on the amount of damages, then upon written request of either party, the disagreement will be settled by a single neutral arbitrator.

If arbitration is used, any arbitration award will be binding up to **your** policy limits and may be entered as a judgment in a proper court. All expenses of arbitration will be shared equally. However, attorney fees and fees paid to medical or other expert witnesses are not considered arbitration expenses and are to be paid by the party incurring them.

No cause of action shall exist against either **you** or **Allstate** as a result of exercising the right to request arbitration of a claim.

VIII.  In **Part VII, Protection Against Loss To The Auto**, the following changes are made:

A.  The **Coverage DD—Auto Collision Insurance** provision is replaced by the following:

**Allstate** will pay for direct and accidental loss to **your** insured **auto** or a non-owned **auto** (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer. The deductible amount won't be subtracted from the loss payment in collisions involving **your** insured auto and another **auto** insured by us. In addition, **Allstate** will pay for the replacement of a child passenger restraint system in use by a child in the insured **auto** at the time of a collision. The child passenger restraint system must meet applicable federal motor vehicle safety standards.

B.  The **Waiver Of Collision Coverage Deductible Option** provision is replaced by the following:

**Waiver Of Collision Coverage Deductible Option**
The following applies only when the Policy Declarations indicate the Waiver of Collision Coverage Deductible Option:
The Auto Collision Insurance deductible will be waived if:

Page 9

9. **"You"** or **"Your"** — means the policyholder named on the Policy Declarations and:
  a) that policyholder's **resident** spouse; or
  b) a party who has established with that policyholder a registered domestic partnership under California state law if a **resident** of the same household.

E. In the Exclusions—**What is not covered** provision, item 1. is replaced by the following:

  1. loss which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

F. In the Exclusions—**What is not covered** provision, items 13. 14. and 15. are added:

  13. loss to any **auto** due to confiscation by any government authority.

  14. loss or damage arising out of the participation in a prearranged, organized, or spontaneous:
    a) racing contest;
    b) speed contest; or
    c) use of an **auto** at a track or course designed or used for racing or high performance driving, or in practice or preparation for any contest or use of this type.

  15. loss to any **custom parts or equipment** designed for racing which is installed in **your** insured **auto**. This includes, but is not limited to, nitrous oxide systems, roll cages, and air intake modifications.

G. The **Limits Of Liability** provision is replaced by the following:

**Limits Of Liability**
Allstate's limit of liability is the least of:

  1. the actual cash value of the property or damaged part of the property at the time of loss, which may include a deduction for depreciation; or

  2. the cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations; or

  3. $500, if the loss is to a covered trailer not described on the Policy Declarations.

Any applicable deductible amount is then subtracted.

If **Allstate**, at its option, elects to pay for the cost to repair or replace the property or part, **Allstate's** liability does not include any decrease in the property's value, however measured, resulting from the loss and/or repair or replacement. If repair or replacement results in the betterment of the property or part, **you** may be responsible, subject to applicable state laws and regulations, for the amount of the betterment.

The maximum **Allstate** will pay for loss to any **custom parts or equipment** is $1000, unless otherwise excluded.



**Page 11**

We may cancel this policy according to its terms. We will notify the Lienholder and/or Lessor at least ten days prior to the date of cancellation that the cancellation is effective as to the interest of the Lienholder and/or Lessor.

Whenever we pay the Lienholder and/or Lessor any sum for loss or damage under this policy, we will be subrogated to the extent of payment to the rights of the party to whom payment was made. However, these subrogation provisions must in no way impair the rights of the Lienholder and/or Lessor to recover the full amount of its claim from the insured.

The Lienholder and/or Lessor has no greater rights under the provisions of the policy than the insured.

All other policy terms and conditions apply.



Page 13

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Allstate Amendment of Policy Provisions — AU2285

This endorsement amends all of the following Allstate Insurance Company policies: Automobile, Motorcycle, and Motorhome. This endorsement is in addition to all other endorsements which apply to these policies.

It is agreed that the following provision is added to the General Provisions:

A.  The following replaces the provision titled **Where And When The Policy Applies**:

   **Your** policy applies only during the policy period. During this time, it applies to losses to the **auto**, accidents and occurrences within the United States of America, its territories or possessions or Canada, or between their ports.

   If we offer to renew **your** policy and **your** required premium payment isn't received when due, **you** will have rejected **our** renewal offer. This means that the insurance coverage described in the renewal offer and any endorsements to the renewal offer will not become effective.

B.  The following replaces the provision titled **Termination**:

   If we offer to renew **your** policy and **your** required premium payment isn't received when due, **you** will have rejected **our** renewal offer. This means that the insurance coverage described in the renewal offer and any endorsements to the renewal offer will not become effective.

C.  The following provision is added:

   **Conditional Reinstatement**
   If we mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice we issue which waives the cancellation or reinstates coverage is void. This means that **Allstate** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

D.  Under the provision titled **Cancellation**, the following is added:

   Any unearned premium amounts under $2.00 will be refunded only upon **your** request.



Allstate Indemnity Company

RENEWAL

# Auto Policy Declarations

## Summary

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>Anna & Richard Tang<br>364 Mooney Drive<br>Monteray Park CA 91755-4140 | **YOUR ALLSTATE AGENT IS**<br>Riggio Ins Agy Inc<br>(805) 604-0675<br><br>300 E Esplanade<br>Oxnard CA 93036 | **YOUR BILL**<br>lists your payment options. |

| | |
|---|---|
| **POLICY NUMBER**<br>9 14 906559 07/28 | **POLICY PERIOD**<br>Jan. 28, 2009  to July 28, 2009  at 12:01 a.m. standard time |

| | |
|---|---|
| **DRIVER(S) LISTED**<br>Anna          Richard | **DRIVER(S) EXCLUDED**<br>None |

| VEHICLES COVERED | VEHICLE ID NUMBER | LIENHOLDER |
|---|---|---|
| 1.  00  Honda Cr-V | JHLRD2841YC011441 | None |
| 2.  03  Mercedes-B MI350 | 4JGAB57E23A412251 | Chase Auto Finance |

## Total Premium

| | |
|---|---|
| Premium for 00 Honda Cr-V | $442.47 |
| Premium for 03 Mercedes-B MI350 | $428.64 |
| **TOTAL** | **$871.11** |

✓  *Your total premium reflects a combined discount of $370.68*

See the **Important Payment and Coverage Information** section for details about payment options and installment fees.

*Your Policy Effective Date is Jan. 28, 2009*



AUTO *01000040812060301514D603*




Information as of
December 5, 2008

Page    3

CA019R80

# Allstate Indemnity Company

Policy Number: 9 14 906559 07/28 Your Agent: Riggio Ins Agy Inc (805) 604-0675
Policy Effective Date: Jan. 28, 2009

COVERAGE FOR VEHICLE #.1

## 2000 Honda Cr-V

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $267.95 |
| • Bodily Injury | $100,000<br>$300,000 | each person<br>each occurrence | | |
| • Property Damage | $100,000 | each occurrence | | |
| Uninsured Motorists Insurance for Bodily Injury | $50,000<br>$100,000 | each person<br>each accident | Not Applicable | $26.75 |
| Auto Collision Insurance<br>Waiver of deductible applies | Actual Cash Value | | $500 | $96.96 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $23.77 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $2.48 |
| Rental Reimbursement Coverage | up to $30 per day for a maximum of 30 days | | Not Applicable | $24.56 |
| **Total Premium for 00 Honda Cr-V** | | | | **$442.47** |

**DISCOUNTS** Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Good Driver | 20% | Multiple Policy | $7.19 |
| Distinguished Driver | $57.53 | Loyalty Discount | $13.63 |

**RATING INFORMATION** Your premium is determined based on certain information, including the following:

The estimated number of miles that this vehicle is driven annually is 10,000 - 10,999. This vehicle is driven 3-9 miles to work/school, married male licensed 29 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly. A change in the information could result in a premium adjustment.

## Allstate Indemnity Company

Policy Number : 9 14 906559 07/28      Your Agent:   Riggle Ins Agy Inc  (805) 604-0675
Policy Effective Date: Jan. 28, 2009

COVERAGE FOR VEHICLE # 2

# 2003 Mercedes-B MI350

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $229.00 |
| • Bodily Injury | $100,000 | each person | | |
| | $300,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | | |
| Uninsured Motorists Insurance | $50,000 | each person | Not Applicable | $34.74 |
| for Bodily Injury | $100,000 | each accident | | |
| Auto Collision Insurance | Actual Cash Value | | $500 | $106.34 |
| Waiver of deductible applies | | | | |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $31.52 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $2.48 |
| Rental Reimbursement Coverage | up to $30 | per day for | Not Applicable | $24.56 |
| | a maximum of 30 days | | | |
| Total Premium for 03 Mercedes-B MI350 | | | | $428.64 |

**DISCOUNTS**      Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Anti-Theft | $1.66 | Good Driver | 20% |
| Multiple Policy | $8.08 | Distinguished Driver | $63.78 |
| Loyalty Discount | $15.30 | | |

**RATING INFORMATION**  Your premium is determined based on certain information, including the following:

The estimated number of miles that this vehicle is driven annually is 10,000 - 10,999. This vehicle is driven
3-9 miles to work/school, married female licensed 21 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly.   A change in
the information could result in a premium adjustment.

AUTO *010000408120503015140604*

information as of
December 8, 2008

**Page**   5
CA0158RBD

# Allstate Indemnity Company

Policy Number : 9 14 906559 07/28      Your Agent: Riggio Ins Agy Inc (805) 604-0675
Policy Effective Date: Jan. 28, 2009

## Your Policy Documents

Your auto policy consists of this Policy Declarations and the documents listed below.  Please keep them together.
- Allstate Automobile Policy form AU104-3                    - Amendment of Policy Provisions form AU2250-6
- Amendment of Policy Provisions form AU2285

## Important Payment and Coverage Information

Your rate is lower because you are insuring multiple cars.

Your bill will be sent to you in a separate mailing and will list any payment option(s) available to you. If you are eligible to pay your premium in installments, your first bill will reflect your available payment options, including the option to pay in full or to pay in monthly installments. Please note that any amounts payable for the first renewal bill will not include an installment fee (unless you have an unpaid balance from a previous policy period, in which case the Minimum Amount Due will include an installment fee, or unless you are participating in the Allstate Easy Pay Plan).

Subsequent bills, if any, will provide the following options if you are eligible to pay your premium in installments:

Option 1 — You can pay your premium in full. The "To Pay In Full" amount will be shown on your bill.

Option 2 — You can pay the Minimum Amount Due shown on your bill. If you choose this option, you will be sent a bill each month and the Minimum Amount Due will include a $3.50 installment fee for each monthly payment (the monthly installment fee is $1.00 for the Allstate Easy Pay Plan).

Option 3 — You can pay less than the full amount but more than the Minimum Amount Due. You will be charged a $3.50 installment fee each time you choose this payment option (the monthly installment fee is $1.00 for the Allstate Easy Pay Plan).

Please note that the Allstate Easy Pay Plan allows you to have your insurance payments automatically deducted from your checking or savings account.

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of Allstate.

Frederick F. Cripe
President

Mary J. McGinn
Secretary

Information as of
December 8, 2003

Page  6
CA01FR&D

*Riggio Ins Agy Inc*
*300 E Esplanade*
*Oxnard CA 93036*

**Your Quick Insurance Check**
✓ Verify the vehicles and drivers listed on the Policy Declarations and ID cards.
✓ Check the vehicle identification number (VIN) listed on these documents; its accuracy could affect your premium.
✓ Now you can pay your premium even before your bill is issued – visit allstate.com or call 1-800-Allstate®.

Important: Please note that this mailing is our policy renewal offer. Your coverage won't continue unless we receive the required payment before the policy effective date and time listed on the enclosed Policy Declarations.

Anna & Richard Tang
364 Mooney Drive
Monteray Park CA 91755-4140

**Here's your policy renewal offer — with new opportunities to be rewarded for safe driving like never before.**

We're pleased to offer to renew your Allstate Indemnity Company auto policy for another six months. Enclosed are your renewal materials, including new Proof of Auto Insurance cards and your Policy Declarations — which describes the coverage choices you've made, any discounts you may be receiving and your premium.

*Allstate[B] Your Choice Auto Insurance — a different kind of car insurance*
- Want to be rewarded in new and different ways for safe driving?
- How about a feature that helps limit the amount of an accident-related rate increase?*
- Want to help limit a premium increase due to a minor violation?*

Allstate[B] Your Choice Auto Insurance offers new auto insurance packages with great features that can reward you like never before. And you can get these features on top of what you already get from Allstate, such as quality coverage and 24/7 claim service.

With Your Choice Auto[B], you can get**:
- An immediate $100 off your collision coverage deductible.
- Accident Forgiveness — Limits the amount your rates could go up just because of an accident, even if it's your fault.*
- A Safe Driving Bonus[B] — For every six months of accident-free driving, earn up to 5% off your next renewal premium.***

*(over)*

AUTO *0101004081205030151406501* Information as of   December 5, 2008·  00000091490659   019   060   CA

RA895

## Allstate Indemnity Company

# Your Savings and Opportunities

| Your discount savings for this policy period is: | Your premium for this policy period is: |
|---|---|
| **$370.68** | **$871.11** |
| (For an itemized list of your discounts, refer to your Policy Declarations) | This amount reflects the discount savings shown on left. |

## Allstate Offers You Innovative Choices

We'd like to introduce you to Allstate® Your Choice Auto Insurance, a different kind of car insurance that can reward you like never before. Now, with a Gold or Platinum Protection Package SM you can get a range of innovative features, including:

- An immediate $100 off your collision coverage deductible.
- Accident Forgiveness — Limits the amount your rates could will go up just because of an accident, even if it's your fault.*
- A Safe Driving Bonus SM of up to 5% which can be applied toward your next renewal premium.**
- Ticket Mitigation -- Limits the amount your premium could go up just because of a minor violation (one minor violation per policy in a three year period).*

*Under California law, you could still lose the 20% Good Driver Discount. **Safe Driving Bonus is based on eligible premium for prior policy period.

Your Choice Auto bundles together the kind of features you want most in car insurance. You simply choose the package that you like best. And you get these great features on top of what you already get from Allstate, such as quality coverage and 24/7 claim service. Consider whether one of the following optional Your Choice Auto packages is right for you:

### Platinum Protection Package

- Safe Driving Deductible Reward (Deductible Rewards) SM

- Safe Driving Bonus

- Accident Forgiveness

- Ticket Mitigation

### Gold Protection Package

- Safe Driving Deductible Reward (Deductible Rewards)

- Ticket Mitigation

You can add a Your Choice Auto package to your policy right away. You don't need to wait for your current insurance to expire. Call your Allstate representative for a quote today!

AUTO *01000040812050030151440602*

Information as of December 5, 2009

CA019R&D

Page   1

Allstate Indemnity Company

Policy Number : 9 14 906559 07/28
Policy Effective Date: Jan. 28, 2009

Your Agent:   Ruggio Ins Agy Inc   (805) 604-0675

COVERAGE FOR VEHICLE # 2

## 2003 Mercedes-B MI350

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $229.00 |
| • Bodily Injury | $100,000 | each person | | |
| | $300,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | | |
| Uninsured Motorists Insurance for Bodily Injury | $50,000 | each person | Not Applicable | $34.74 |
| | $100,000 | each accident | | |
| Auto Collision Insurance Waiver of deductible applies | Actual Cash Value | | $500 | $106.34 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $31.52 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $2.48 |
| Rental Reimbursement Coverage | up to $30 per day for a maximum of 30 days | | Not Applicable | $24.56 |
| **Total Premium for 03 Mercedes-B MI350** | | | | **$428.64** |

**DISCOUNTS**   Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Anti-theft | $1.66 | Good Driver | 20% |
| Multiple Policy | $8.08 | Distinguished Driver | $63.78 |
| Loyalty Discount | $15.30 | | |

**RATING INFORMATION**   Your premium is determined based on certain information, including the following:

The estimated number of miles that this vehicle is driven annually is 10,000 – 10,999. This vehicle is driven 3-9 miles to work/school, married female licensed 21 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly.   A change in the information could result in a premium adjustment.

AUTO *010000408120503015140504*

Information as of
December 5, 2008

**Allstate Indemnity Company**

Policy Number : 9 14 906559 07/28     Your Agent:   ruggio Ins Agy Inc  (805) 604-0675
Policy Effective Date: Jan. 28, 2009

# Important Notice

## *Important Information About Your Auto Policy*

The enclosed Policy Declarations lists important information about your policy, such as your address, the vehicles you've insured, the vehicle identification numbers (VIN) assigned to your insured vehicles, the drivers insured, and the coverages and coverage limits you've chosen. Your Policy Declarations also lists any discounts and surcharges applied to your policy.

Because much of the information found on your Policy Declarations is used to help us determine your premium, please be sure to review your Policy Declarations carefully each time you receive one. You may want to add coverage, delete coverage or change your coverage limits — or you may want to change the information concerning the vehicles or drivers your policy insures.

Another thing to keep in mind is that you may now qualify for discounts that you previously were not eligible to receive. For instance, Allstate offers discounts for:

- young drivers, including students under the age of 25;
- drivers who have completed approved driver training courses; and
- drivers who also insure their homes with Allstate.

Please contact your Allstate representative for additional information about discount qualifications, as well as other discounts that may be available.

### *Making changes to your policy*

If you need to make a change to any of the information listed on your Policy Declarations, please notify your Allstate representative of the change as soon as possible. With a few exceptions, **any changes will be effective as of the date you notify us.**

If you have any questions about this notice, or if you need to update any of the information listed on the enclosed Policy Declarations, please contact your Allstate agent or call our Customer Information Center at 1-800-ALLSTATE (1-800-255-7828).

X67098



AUTO *01000040812050303151406GS*

Allstate Indemnity Company

Policy Number : 9 14 906559 07/28          Your Agent:  riggio Ins Agy Inc (805) 604-0675
Policy Effective Date: Jan. 28, 2009

# Important Notice

## *Congratulations, You've Received Your Loyalty Discount*

### *Allstate Appreciates Your Loyalty!*

Thank you for choosing Allstate. We truly appreciate your business and the opportunity to serve you.

We understand that in today's marketplace you have many options. So as a way of showing our appreciation for your continued business, we'd like to let you know about a Loyalty Discount that you will be receiving.

As an Allstate auto insurance customer, we will give you a Loyalty Discount every time you renew your policy. To see how much money you're saving with the Loyalty Discount, please see the enclosed Policy Declarations.

### The Longer You Stay with Us, the More You Save

One of the benefits of your Allstate Loyalty Discount is that it grows over time. We will automatically increase the amount of your discount on your first, third, fifth, and fifteenth policy anniversaries, making it more and more valuable.

What's more, your Allstate Loyalty Discount isn't tied into your driving record. So even if you have an occasional accident or receive a speeding ticket, you could still qualify.

### This Is Our Way of Saying "Thanks!"

We value your business and want you to stay with us. We look forward to continuing to provide you with great products and services that will help you feel better protected today and better prepared for tomorrow.

### Have Questions? Please Contact Us

Your Allstate agent can give you additional information about this discount, as well as other discounts and deductible options that we offer. If you do not currently have an Allstate agent, please contact 1-800 ALLSTATE.

X72473



AUTO *01000040812050301514060B*

**Exhibit B**



Diamond Bar Casualty
PO BOX 6517
DIAMOND BAR CA 91765

LAW OFFICE OF LO AND ASSOCIATES
2440 S HACIENDA BLVD STE 103
HACIENDA HTS CA 91745-4763

September 03, 2009

INSURED: RICHARD TANG
DATE OF LOSS: July 13, 2009
CLAIM NUMBER: 0143198462

PHONE NUMBER: 888-358-8415
FAX NUMBER: 909-612-2888
OFFICE HOURS:  Mon - Fri 8:00 am - 5:30 pm,
Sat 8:00 am - 2:00 pm

Your Client: Richard Tang

Dear LAW OFFICE OF LO AND ASSOCIATES,

Allstate's file concerning your client's potential uninsured motorist claim has been assigned to me.  You can reach me at the address above, by fax at 909-612-2888, or by telephone at 909-612-6572.

We are attempting to determine if the defendant had liability insurance in effect for this loss.  If you have already been in touch with his carrier, please let me know the name of that carrier, the claim number and adjuster contact information.  If you have already determined that he was uninsured, please send me a copy of the UM Certificate (SR19).

Since the attorney for the other driver has told us he is uninsured, I have issued a check to your client returning the collision deductible under the uninsured motorist waiver.  It will arrive at your office under separate cover.  However, I have sent to DMV for an SR19 form to confirm his lack of liability coverage.

I look forward to working with you to resolve your client's claims, and to your continued courtesy and cooperation in this matter.

Sincerely,

*DAVID JOHNS*

DAVID JOHNS
888-358-8415 Ext. 26572
Allstate Indemnity Company

**Exhibit C**



**Allstate.** You're in good hands.

Diamond Bar Casualty
PO BOX 6517
DIAMOND BAR CA 91765

MADISON LAW GROUP INC
9000 W SUNSET BLVD STE 704
LOS ANGELES CA 90069-5807

September 28, 2009

INSURED: RICHARD TANG
DATE OF LOSS: July 13, 2009
CLAIM NUMBER: 0143198462

PHONE NUMBER: 888-358-8415
FAX NUMBER: 909-612-2888
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm,
Sat 8:00 am - 2:00 pm

Your Client: Carlos Madrigal
VIA FAX & MAIL

Dear MADISON LAW GROUP INC,

This confirms receipt of your faxed letter dated Scmptember 24, 2009 with a statement totalling $34,395.00. As noted, you will forward the reports and itemized billing statement.

Enclosed is a copy of my letter dated September 24, 2009 which outlines our current position. Please provide any evidence which reveals any liability on behalf of our insured. We would like to consider your clients statement of facts, please let me know when we can schedule an appointment to do so.

We have also obtained a statement from an independent witness Naomi Galaviz, who was in a wheelchair when she witnessed the accident. She confirms she was almost struck by your clients motorcycle who was speeding on Vernon. I will forward you a copy of the transcribed recorded statement upon receipt. Kindly provide the witness iinformation which you referred in our last conversation.

Our insured's attorney is pursuing an uninsured motorist claim. In the event your client has a valid liability policy, kindly forward the appropriate information.

In response to your request for policy limit information, this is to advise our insured has $100,000.00 auto liability policy limit.

Sincerely,

*TERESA VARELA*

TERESA VARELA
888-358-8415 Ext. 26571
Allstate Indemnity Company

Page
60

GENI001                                    0143198462

# Exhibit D

 



# Madison Law Group

ATTORNEYS

KYLE K. MADISON, ESQ.

MAIN OFFICE

9000 WEST SUNSET BOULEVARD
SUITE 704
LOS ANGELES, CALIFORNIA 90069

TELEPHONE (310) 201-7676 • FACSIMILE (310) 550-7878

OF COUNSEL

MARTIN WOLF
SEAN TABIBIAN
SAMIRA KERMANI
DAVID M. TAGHIOU
JEFF P. VOTT

EXTENSION: 7676

# FAX TRANSMISSION SHEET

| TO: | ALLSTATE INS. / ATTN: LORI MARCO | DATE: | 9-29-09 |
|---|---|---|---|
| FAX #: | 909-612-2888 | PAGES: | 36, INCLUDING THIS PAGE |
| FROM: | MADISON LAW GROUP | COPIES: | NONE |

**SUBJECT:** <u>MADRIGAL V. TANG</u>   CLAIM #: 0143195462   DOL: 7/13/09

Dear Lori:

As you know, we are in the process of receiving the medical records and bills we ordered for Mr. Madrigal. We are sending you these records and bills as they come into our office. Enclosed please find medical records from LA County USC Medical Center where he was an in-patient for 3 weeks.

Please call our office upon your review at (310) 201-7676. Thank you.

Very truly yours,
MADISON LAW GROUP

Jasmin Mahboubi
Office Manager

> IMPORTANT
> PLEASE DELIVER
> IMMEDIATELY

CONFIDENTIALITY NOTE: THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPY OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ADDRESS ABOVE VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.



# HP Color LaserJet *2840*

9000 Sunset Blvd Ste 704
310-550-7878
Sep-29-2009  10:17AM

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 11199 | 9/29/2009 | 10:09:30AM | Send | 19096122888 | 8:21 | 36 | OK |

MADISON LAW GROUP
ATTORNEYS
KEVIN K. MADISON, ESQ.

### FAX TRANSMISSION SHEET

| To | A. ETTINGER / AGN. LORI MARTIN | Date | 9-29-09 |
|----|-------------------------------|------|---------|
| Fax #. | 909-612-2888 | Pages | 36, Including This Page |
| From | Madison Law Group | Client | None. |

SUBJECT:  MADRIGAL V. TANG, CLAIM #: 0143195462,  DOL: 7/13/09

Dear Lori:

As you know, we are in the process of receiving the medical records and bills we ordered for Mr Madrigal. We are sending you these records and bills as they come into our office. Enclosed please find medical records from LA County USC Medical Center where he was an inpatient for 3 weeks.

Please call our office upon your review at (310) 201-7676. Thank you.

Very truly yours,
MADISON LAW GROUP

Office Manager

PLEASE DELIVER
IMMEDIATELY

CONFIDENTIALITY NOTICE: THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE...

 

RECEIVED
SEP 2 5 2009

Page 1

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:11 PM  By Jorge Stopani
For: 08/06/2009 0758

```
Patient: MADRIGAL,CARLOS 24Y M      Fac/Camp:  G/G       MRUN:  480-09-17
DOB:     10/18/1984                 Loc:                 Acct #:9194552
Admit:   07/14/2009  0414 LOS: 24   Adm Phys: Charalampos Zalavras
Disch:   08/07/2009  2030           Diagnosis: Ed Re 09/trauma Complications
```

08/06/2009  0758      ONGOING  Tien Nguyen, RN
------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD
  Assessment - Baseline

    NEUROLOGICAL
    *   LOC/Orientation:   Awake and alert, oriented to person, place, time
    and purpose.   Alert
    *   Limb Movement/Strength:   RUE =   Normal power   LUE =   Moderate
    weakness   RLE =   Trace movement   LLE =   Trace movement
    *   Pupil Size:   Right Pupil =   3 mm   Left Pupil =   3 mm
    *   Pupillary Reaction:   Right =   Brisk   Left =   Brisk
    CARDIOVASCULAR
    WNL = Skin warm and dry to touch, no chest pain, pulses palpable and
    regular in all extremities, brisk capillary refill, no edema.
    VENOUS ACCESS
    Saline Lock Location: Patient has two saline lock on RUE patent and
    intact with no signs of infiltration noted   Site checked
    RESPIRATORY
    WNL = Breathing even and unlabored on room air.
    GASTROINTESTINAL
    WNL = Abdomen soft, non-tender, absence of N/V, constipation, diarrhea,
    and no tubes or drains.
    *   Nutrition:   Consumes 75% or more of diet
    *   Tubes/Drains:   Jackson Pratt
    *   Bowel Function/Pattern: Patient had BM this morning
    *   Bowel Sounds:   Present
    *   Other: Patient has JP to bulb suction on left shoulder, currently
    patent currently draining moderate amounts of serous sanguinous fluids.
    GENITOURINARY
    *   Mode of Urination:   Foley catheter
    *   Urine Characteristics:   Clear
    *   Urine Color:   Yellow
    INTEGUMENTARY
    Pressure sore risk assessment:
    *   Sensory Perception:   4 No impairment
    *   Skin Moisture:   3 Occasionally moist
    *   Activity:   1 Bedfast
    *   Mobility:   2 Very limited
    *   Nutrition:   3 Adequate
    *   Friction and Shear:   2 Potential problem
    *   GRAND TOTAL: 15   NO RISK = > 13
    *   Rash/Lesion/Wound: Patient has multiple lacerations that are in the



SINGLE ASSESSMENT
For: 08/06/2009 0758

Patient: MADRIGAL,CARLOS 24Y M        Fac/Camp:  G/G       MRUN:  480-09-17
DOB:    10/18/1984                    Loc:                 Acct #:9194552
Admit:  07/14/2009  0414 LOS: 24      Adm Phys:  Charalampos Zalavras
Disch:  08/07/2009  2030              Diagnosis: Ed Re 09/trauma Complications

08/06/2009 0758 (Cont.)
----------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD (Cont.)
  Assessment - Baseline (Cont.)
      process of healing on left side of neck, hands, and arm.  No erythema,
      drainage, or infection noted.
      *   Dressing Patient has dry dressing on left shoulder, left hip, left
      knee, and spinal column.  Currently dry and intact with no drainage
      noted.  Moderate amounts of old drainage noted on upper spinal column.
      *   Tubes and Drains:  Jackson Pratt
      BEHAVIORS
      WNL = Interactive, calm, and cooperative
      LEARNING/TEACHING
      *   Readiness to Learn:     Patient demonstrates readiness to learn
      *   Daily Learning Needs:  · Medication(s)  · Disease process   ·
      Nutrition/feeding
      MOBILITY / ACTIVITY
      *   Range of motion:
      *   Patient has Full Range of Motion in all Extremities except: Patient
      unable to move from diaphragm down to toes.  Patient is a T5 paraplegic
      and cannot feel sensation on BLE.
      *   Functional Limitation/Needs:   Moderate assistance needed Patient
      needs moderate assistance with ADL's and hygiene care.
      *   Other: Patient has sling on left arm, SCD's to BLE, heel protectors
      to both foot.
      COMFORT
      WNL = Denies pain/reports acceptable levels of comfort
  Falls Risk Assessment

      *   3   Unstable gait/balance/motor impairment
      *   2   General weakness, sided weakness, or malnourished
      *   1   Antiemetics
      *   1   Analgesics
      *   3   Narcotics
      *   2   GI motility meds, including enemas
      *   1   Foley catheter or tube connections
      *   TOTAL 13
      *   AT RISK = Score 6 or greater.
  Nutrition Risk Assessment

      NO RISK
  Patient/ Family Instruction

      PATIENT
      · Side rails   · Call light   · Smoking policy   · Visiting hours   ·
      Pain Management   Reinforced   · Disease process   · Nutrition/feeding

 

Page 3

### SINGLE ASSESSMENT
### For: 08/06/2009 0758


Patient: MADRIGAL,CARLOS 24Y M        Fac/Camp:  G/G      MRUN:  480-09-17
DOB:       10/18/1984                 Loc:                Acct #:9194552
Admit:     07/14/2009  0414 LOS: 24   Adm Phys:  Charalampos Zalavras
Disch:     08/07/2009  2030           Diagnosis: Ed Re 09/trauma Complications

08/06/2009 0758 (Cont.)
--------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD (Cont.)
    Patient/ Family Instruction (Cont.)
        · Incentive spirometer   · Other: Inform patient that he is on fall
        precaution and to call nursing staff when needing assistance.  Patient
        verbalize understanding.
    Treatment/ Observation

        *   Venous Access  Saline Lock Location:   Flushed   Site checked
        *   Awake
        *   Neuro. and circulation check completed
        *   Spirometry
        *   Sequential Compression Device SCD's on BLE
        *   Reposition: Patient will be repositioned from back to right lateral
        every 2 hours, patient currently on back

PAIN ASSESSMENT
    Pain Site #1

        *   Pain Score:
        *   Numerical    0/10
        *   Education:   Other: Patient indicated he does not have pain at the
        moment, but inform patient to notify nursing staff when pain occur.
        Patient verbalize understanding.

 

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:11 PM  By Jorge Stopani
For: 08/06/2009 1200


Patient: MADRIGAL,CARLOS 24Y M          Fac/Camp:  G/G        MRUN:  480-09-17
DOB:      10/18/1984                    Loc:                  Acct #:9194552
Admit:    07/14/2009  0414 LOS: 24      Adm Phys:  Charalampos Zalavras
Disch:    08/07/2009  2030              Diagnosis: Ed Re 09/trauma Complications

08/06/2009  1200      ONGOING  Tien Nguyen, RN
--------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD
   Reassessment

      Partial Assessment. No changes noted.
      COMFORT
      WNL = Denies pain/reports acceptable levels of comfort
   Notes

      FORMATIVE NOTE
      Notes: Patient is on wheelchair and being pushed around by mother.
      Patient is content.
   Treatment/ Observation

      *    Venous Access  Saline Lock Location: Two saline lock on right
      forearm both patent and intact with no signs of infiltration noted
      Flushed   Site checked
      *    Neuro. and circulation check completed
      *    Awake

PAIN ASSESSMENT
   Pain Site #1

      *    Pain Score:
      *    Numerical   0/10
      *    Education:   Other: Patient indicated he does not have pain at the
      moment, but inform patient to notify nursing staff when pain occur.
      Patient verbalize understanding.

 

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:12 PM  By Jorge Stopani
For: 08/06/2009 1942


Patient: MADRIGAL,CARLOS 24Y M      Fac/Camp:  G/G       MRUN:  480-09-17
DOB:      10/18/1984                Loc:                 Acct #:9194552
Admit:    07/14/2009  0414 LOS: 24  Adm Phys:  Charalampos Zalavras
Disch:    08/07/2009  2030          Diagnosis: Ed Re 09/trauma Complications

08/06/2009  1942     ONGOING  Evelyn N Omisore, RN
--------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD
  Reassessment

      Complete Reassessment.  No changes noted
      GENITOURINARY
      *   Mode of Urination:   Foley catheter
      *   Urine Characteristics:   Clear
      *   Urine Color:   Yellow
      INTEGUMENTARY
      *   Tubes and Drains:   Jackson Pratt
      JP to the left shoulder infusing serosanginous drain
      BEHAVIORS
      WNL = Interactive, calm, and cooperative
      COMFORT
      WNL = Denies pain/reports acceptable levels of comfort
  Falls Risk Assessment

      *   3   Unstable gait/balance/motor impairment
      *   2   Incontinence/diarrhea
      *   2   General weakness, sided weakness, or malnourished
      *   1   Foley catheter or tube connections
      *   1   Analgesics
      *   1   Antiemetics
      *   3   Narcotics
      *   TOTAL 13
      *   AT RISK = Score 6 or greater.
  Notes

      FORMATIVE NOTE
      Notes: pt has drsg to the left hip, knee, and spinal area and no
      sensation from diaphragm down, lue need to be elevated.
  Patient/ Family Instruction

      PATIENT
      · Side rails  · Call light   · Disease process
  Treatment/ Observation

      *   Venous Access   Saline Lock Location: pt has 2 s/l on the rue patent
      Site checked
      *   Neuro. and circulation check completed
      *   Awake



Page 2

**SINGLE ASSESSMENT**
**For: 08/06/2009 1942**

Patient: MADRIGAL,CARLOS 24Y M        Fac/Camp: G/G        MRUN: 480-09-17
DOB:      10/18/1984                  Loc:                 Acct #:9194552
Admit:    07/14/2009   0414 LOS: 24   Adm Phys: Charalampos Zalavras
Disch:    08/07/2009   2030           Diagnosis: Ed Re 09/trauma Complications

08/06/2009 1942 (Cont.)
-----------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD (Cont.)

PAIN ASSESSMENT
    Pain Site #1

        *    Pain Score:
        *    Numerical   0/10

Page 1

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:12 PM  By Jorge Stopani
For: 08/07/2009 0838

Patient: MADRIGAL,CARLOS 24Y M      Fac/Camp:  G/G        MRUN:  480-09-17
DOB:     10/18/1984                 Loc:                  Acct #:9194552
Admit:   07/14/2009  0414 LOS: 24   Adm Phys:  Charalampos Zalavras
Disch:   08/07/2009  2030           Diagnosis: Ed Re 09/trauma Complications

08/07/2009  0838      ONGOING  Tien Nguyen, RN
--------------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD
  Assessment - Baseline

    NEUROLOGICAL
    *   LOC/Orientation:    Awake and alert, oriented to person, place, time
    and purpose.   Alert
    *   Limb Movement/Strength:   RUE =   Normal power   LUE =   Normal
    power   RLE =   Trace movement   LLE =   Trace movement
    *   Pupil Size:   Right Pupil =   3 mm   Left Pupil =   3 mm
    *   Pupillary Reaction:   Right =   Brisk   Left =   Brisk
    CARDIOVASCULAR
    WNL = Skin warm and dry to touch, no chest pain, pulses palpable and
    regular in all extremities, brisk capillary refill, no edema.
    VENOUS ACCESS
    Saline Lock Location: Saline lock on right wrist patent and intact with
    no signs of infiltration noted.  Saline lock on right ac was removed
    because patient states that it hurts and was bloody underneath dressing.
    Site checked
    RESPIRATORY
    WNL = Breathing even and unlabored on room air.
    GASTROINTESTINAL
    WNL = Abdomen soft, non-tender, absence of N/V, constipation, diarrhea,
    and no tubes or drains.
    *   Nutrition:   Consumes 75% or more of diet
    *   Bowel Function/Pattern: Patient states having BM yesterday without
    any diarrhea or constipation noted.
    *   Bowel Sounds:   Present
    GENITOURINARY
    *   Mode of Urination:   Foley catheter
    *   Urine Characteristics:   Clear
    *   Urine Color:   Yellow
    INTEGUMENTARY
    Pressure sore risk assessment:
    *   Sensory Perception:   4 No impairment
    *   Skin Moisture:   3 Occasionally moist
    *   Activity:   1 Bedfast
    *   Mobility:   2 Very limited
    *   Nutrition:   3 Adequate
    *   Friction and Shear:   2 Potential problem
    *   GRAND TOTAL: 15   NO RISK = > 13
    *   Rash/Lesion/Wound: Patient has multiple laceration noted on LUE,

Page
70

Page 2

SINGLE ASSESSMENT
For: 08/07/2009 0838

Patient: MADRIGAL,CARLOS 24Y M      Fac/Camp:  G/G       MRUN:  480-09-17
DOB:     10/18/1984                 Loc:                 Acct #:9194552
Admit:   07/14/2009  0414 LOS: 24   Adm Phys:  Charalampos Zalavras
Disch:   08/07/2009  2030           Diagnosis: Ed Re 09/trauma Complications

08/07/2009 0838 (Cont.)
-------------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD (Cont.)
  Assessment - Baseline (Cont.)
      LLE, and left neck which is in the stages of healing.  No drainage or
      infection noted.
      *   Dressing Patient has dry dressing noted on left shoulder (change by
      md), left knee, left hip, and spinal column.  Currently all dressing are
      dry and intact with no signs of drainage noted.  Dressing on left
      shoulder had been changed by MD twice.
      *   Tubes and Drains:   Jackson Pratt
      *   Other: JP to left shoulder patent and intact with moderate amounts
      of serosanguinous drainage noted.
      BEHAVIORS
      WNL = Interactive, calm, and cooperative
      LEARNING/TEACHING
      *   Readiness to Learn:      Patient demonstrates readiness to learn
      *   Daily Learning Needs:  · Medication(s)  · Disease process   ·
      Nutrition/feeding
      MOBILITY / ACTIVITY
      *   Range of motion:
      *   Patient has Full Range of Motion in all Extremities except: Patient
      has paralysis from diaphragm down to toes and cannot feel any sensation.
      PT has been working with patient yesterday.  Patient will work with PT
      again today.
      *   Other: Patient has sling to left arm
      COMFORT
      WNL = Denies pain/reports acceptable levels of comfort
  Falls Risk Assessment

      *   3    Unstable gait/balance/motor impairment
      *   2    General weakness, sided weakness, or malnourished
      *   1    Antiemetics
      *   1    Analgesics
      *   3    Narcotics
      *   TOTAL 10
      *   AT RISK = Score 6 or greater.
  Nutrition Risk Assessment

      NO RISK                                           Page
  Patient/ Family Instruction                          71

      PATIENT
      · Side rails   · Call light   · Smoking policy   · Visiting hours   ·
      Pain Management   Reinforced   · Disease process   · Nutrition/feeding
      · Other: Inform patient that he is on fall risk precaution and to notify



**SINGLE ASSESSMENT**
For: 08/07/2009 0838

```
Patient: MADRIGAL,CARLOS 24Y M      Fac/Camp:  G/G      MRUN:  480-09-17
DOB:       10/18/1984               Loc:               Acct #:9194552
Admit:     07/14/2009  0414 LOS: 24 Adm Phys:  Charalampos Zalavras
Disch:     08/07/2009  2030         Diagnosis: Ed Re 09/trauma Complications
```

08/07/2009 0838 (Cont.)
-------------------------------------------------------------------------

ADULT MED/SURG/GYN NURSING RECORD (Cont.)
   Patient/ Family Instruction (Cont.)
      nursing staff when needing assistance.  Patient verbalize understanding.
   Treatment/ Observation

      *    Venous Access  Saline Lock Location:    Flushed    Site checked
      *    Neuro. and circulation check completed
      *    Awake

PAIN ASSESSMENT
   Pain Site #1

      *    Pain Score:
      *    Numerical    0/10
      *    Education:   Other: Patient indicated he does not have pain at the
      moment, but inform patient to notify nursing staff when pain worsen.
      Patient verbalize understanding.

 

Page 1
LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:12 PM  By Jorge Stopani
For: 08/07/2009 1200

Patient: MADRIGAL,CARLOS 24Y M      Fac/Camp:  G/G       MRUN:  480-09-17
DOB:     10/18/1984                 Loc:                 Acct #:9194552
Admit:   07/14/2009   0414 LOS: 24  Adm Phys:  Charalampos Zalavras
Disch:   08/07/2009   2030          Diagnosis: Ed Re 09/trauma Complications

08/07/2009  1200      ONGOING  Tien Nguyen, RN
-----------------------------------------------------------------------------
ADULT MED/SURG/GYN NURSING RECORD
  Reassessment

     Partial Assessment. No changes noted.
     COMFORT
     WNL = Denies pain/reports acceptable levels of comfort
  Treatment/ Observation

     *   Venous Access  Saline Lock Location: Saline lock on right wrist
     patent and intact with no signs of infiltration noted.   Flushed  Site
     checked   Dressing changed
     *   Neuro. and circulation check completed
     *   Awake
     *   Other: Patient is currently on wheelchair and has been on there
     since 0900

PAIN ASSESSMENT
  Pain Site #1

     *   Pain Score:
     *   Numerical   0/10
     *   Education:   Other: Patient indicated he has no pain at the moment,
     but inform patient to notify nursing staff when pain occur.  Patient
     verbalize understanding.

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:13 PM  By Jorge Stopani
For: 08/25/2009 1153

Patient: MADRIGAL,CARLOS 24Y M        Fac/Camp:  G/G      MRUN:  480-09-17
DOB:     10/18/1984                   Loc:     ROR       Acct #:9384879
Admit:   08/25/2009  1030 LOS: 27     Adm Phys:  Physician Ro
Disch:                                Diagnosis: V65.0 Healthy Person W Sick

08/25/2009  1153  VA  INITIAL  Ryan Spivak, MD
-----------------------------------------------------------------------------
SURGERY (RECONSTRUCTION)
  Reconstruction Exam

    SUBJECTIVE
    *    Allergies:
    *    Medication: No active medications.
    *    Reason For Visit/History: Carlos Madrigal is a 24 yo male no past
    medical or surgical history who wasriding his motorcycle when he was hit
    by a car (+LOC).  Date of injury
    was 07/14 and he was admitted on 07/14 to LAC.  Pt. came in with open L
    clavicle fx, L scapula fracture, T4 TP fx, T5 facet fx, T6 chance fx
    ---> paraplegic (with loss of sensation from T5 dermatome down), and L
    3rd rib fx.  On DOA, neurosurgery took patient to OR for laminectomy
    of T3 thru T9.  Ortho was consulted intraop for management of open L
    clavicle fracture and L scapula fx, wound was washed out and wound
    vacuum was placed.  Wound was grossly contaminated, with bits of
    asphalt/concrete embedded throughout.  Wound approx 14cm x 7 cm, with
    a smaller upper pole measuring 6 x 4 cms.  Fractured clavicle was
    grossly visible in wound bed, believed to have lost an approximately
    3-5cm fragment.  L carotid, L subclavian vein, L subclavian artery were
    grossly intact.
    Plastic surgery performed local tissue advancement in the area of the
    clavicle, concomitant with bone grafting and scapula/clavical repair
    with orthopedic surgery.  Since the surgery he has been afebrile and
    without complaint.  He continues to have limited ROM and strength of the
    R UE limited by bony and neural damage unrelated to tissue at the
    operative site at the clavicle.  He denies pain associated with this
    wound.    NKA
    FOR NEW PATIENTS ONLY
    *    Social History: Denies current or previous use of alcohol, tobacco,
    or illegal drugs.
    *    Past Med/Surg History: No past medical or surgical history.
    OBJECTIVE
    *    Physical Examination:
    *    General Appearance:
    *    Chest:    · Left clacicular incision well healed, clean, dry and
    intact with pebbling.  Nontender along incision.  The scar extends
    approximately from his LUSB along the clavicular border to his left
    shoulder, and then towards his scapula along his lower cervical border.
    No fluctuance/erythema/exudate.   ·No acute distress
    ASSESSMENT/PLAN



Page 2

SINGLE ASSESSMENT
For: 08/25/2009 1153

Patient: MADRIGAL,CARLOS 24Y M          Fac/Camp:  G/G          MRUN:  480-09-17
DOB:      10/18/1984                     Loc:       ROR           Acct #:9384879
Admit:    08/25/2009  1030 LOS: 27       Adm Phys:  Physician Ro
Disch:                                   Diagnosis: V65.0 Healthy Person W Sick

08/25/2009 1153 (Cont.)
-----------------------------------------------------------------------------
SURGERY (RECONSTRUCTION) (Cont.)
    Reconstruction Exam (Cont.)
        *   Narrative Description: Patient has healed well from his surgery.  He
    will follow up with the orthopedics and neurosurgery teams regarding his
    comorbidities from the accident and related surgeries.  He should follow
    up in the plastic clininc in approximately one month to re-evaluate the
    healing of this clavicular wound.

 

Page 1

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:14 PM  By Jorge Stopani
For: 08/28/2009 1326

Patient: MADRIGAL,CARLOS 24Y M       Fac/Camp:  G/G       MRUN:  480-09-17
DOB:      10/18/1984                 Loc:      ROR        Acct #:9384879
Admit:    08/25/2009  1030 LOS: 27   Adm Phys:  Physician Ro
Disch:                               Diagnosis: V65.0 Healthy Person W Sick

08/28/2009  1326     ONGOING  Ryan Dellamaggiora, MD
--------------------------------------------------------------------------
ORTHO - TRAUMA WHITE
   Fracture Clinic Note

   Assessment
   *   24yo RHD M s/p L clavicle, scapula, multilevel T-spine fx. DOI
   07/13/09, MCA. L clavicle ORIF DOS 08/04/09; T3-T10 fusion 07/14/09. No
   F/C. Paraplegic secondary to accident, in wheelchair. No OT.

   PE: wheelchair
   Gen - NAD
   LUE -
   NTTP clavicle, scapula
   well-healed scars over scapula (and L hip) - no drainage/ e/o infection
   AROM shoulder - minimal
   PROM shoulder - FF 140, abd 40 (limited by pain), minimal IR/ER (limited
   by pain)
   0/5 strength shoulder
   FROM, 5/5 strength elbow, hand
   SILT over deltoid, FDWS, IF, SF
   brisk CR

   XR- L clavicle - HWI; L scapula - fx healing

   A/P
   24yo RHD s/p L clavicle ORIF 08/04/09, L scapula fx, multilevel T-spine
   fusion 07/14/09. DOI 07/13/09 MCA. Loss of ROM and strength L shoulder.
   -OT to see pt today for L shoulder ROM and strengthening: ROM to 90
   degrees, no overhead activity
   -RTC 3wks with L shoulder and scapula series

Page 1

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:14 PM  By Jorge Stopani
For: 09/01/2009 1755


Patient: MADRIGAL,CARLOS 24Y M        Fac/Camp:  G/G         MRUN:   480-09-17
DOB:     10/18/1984                   Loc:       ROR         Acct #:9384879
Admit:   08/25/2009  1030 LOS: 27     Adm Phys:  Physician Ro
Disch:                                Diagnosis: V65.0 Healthy Person W Sick

09/01/2009  1755       ONGOING  Brian Lee, MD
-----------------------------------------------------------------------------
NEUROSURGERY (BLUE)
    Physician Exam

    PATIENT ID
    *  Patient ID 24 yo s/p MCA T-spine fx at T5.  DOI 07/13/09.  T3-T10
    fusion 07/14/09.  Paraplegic secondary to accident, in wheelchair.  Pt
    went to Rancho for rehab after discharge for 1 week.  Did well.
    Currently unable to move legs and sensation ends just below the nipples
    T5 dermatome.

    wheelchair
    A&Ox3, NAD
    P3-2b, EOMI
    RUE 5/5
    LUE 4/5
    well-healed scars over scapula
    0/5 strength L shoulder
    SILT
    incision healing well, no draining, intact

    A/P
    24 yo s/p T3-T10 fusion 07/14/09, paraplegic, sensory to T5 level.
    - Pt doing well
    - several nylon sitches removed from incision
    - RTC in 6 months with XR thoracic AP and lateral on same day as clinic
    - d/w Dr. Farin

    Lee 112254



Page 1

LAC+USC Medical Center Live
SINGLE ASSESSMENT
Printed: Mon Sep 21, 2009 12:15 PM  By Jorge Stopani
For: 09/11/2009 1055


Patient: MADRIGAL,CARLOS 24Y M       Fac/Camp:  G/G        MRUN:  480-09-17
DOB:     10/18/1984                   Loc:     ROR          Acct #:9384879
Admit:   08/25/2009  1030 LOS: 27     Adm Phys:  Physician Ro
Disch:                                Diagnosis: V65.0 Healthy Person W Sick

09/11/2009  1055      ONGOING  Rey N Ramirez, MD
--------------------------------------------------------------------------
ORTHO - TRAUMA WHITE
   Fracture Clinic Note

      *   ORTHO - TRAUMA WHITE
      Fracture Clinic Note
      Assessment
      *   24yo RHD M s/p L clavicle, scapula, multilevel T-spine fx. DOI
      07/13/09, MCA. L clavicle ORIF DOS 08/04/09; T3-T10 fusion 07/14/09. No
      F/C. Paraplegic secondary to accident, in wheelchair. due to start
      rancho soon

      PE: wheelchair
      Gen - NAD
      LUE -
      NTTP clavicle, scapula
      well-healed scars over scapula (and L hip) - no drainage/ e/o infection
      AROM shoulder - minimal
      PROM shoulder - FF 140, abd 40 (limited by pain), minimal IR/ER (limited
      by pain)
      2/5 strength shoulder
      nontender over clavicle
      FROM, 5/5 strength elbow, hand
      SILT over deltoid, FDWS, IF, SF
      brisk CR

      XR- L clavicle - HWI with healing; L scapula - fx healing

      A/P
      24yo RHD s/p L clavicle ORIF 08/04/09, L scapula fx, multilevel T-spine
      fusion 07/14/09. DOI 07/13/09 MCA. Loss of ROM and strength L shoulder.
      -continue rom, begin strengthening
      -RTC 6wks with L shoulder and scapula series
      - okay for all rehab activites at rancho

Name=MADRIGAL,CARLOS
DOB= 10/18/1984        Sex=M
Loc/Svc=/GORTHO
FINAL REPORT
GH DISCHARGE SUMMARY

MRUN=480-09-17
Acct #=9194552
Admit Date=07/14/2009
Discharge Date=08/07/2009

===============================================================================

**\*\* REVISED on 08/12/2009 1837 by SR \*\***

Date of Admission:  07/14/09        Department:

Date of Discharge:  08/07/09

Hospital Course:  The patient is a 24-year-old male who was involved in a motor vehicle accident on 07/14/09.  He was brought in to the Emergency Department and admitted to the Intensive Care Unit with the injuries: T4 transverse process fracture, T5, T6 fracture with anterior pulsion fracture into the spinal canal, resulting in paraplegia-loss of sensation and motor from the T5 dermatome down, left open clavicle fracture with large wound defect, scapula fracture, left second posterior rib fracture.
 The patient was monitored in the Intensive Care Unit and taken to the operating room by Neurosurgery on 07/14/09 for T5-T7 laminectomies, T6 reduction, fusion of T3-T10, repair of dural tear.  He had a lumbar drain placed for cerebrospinal fluid leak.  A wound vac was applied to the left clavicle fracture and wound defect after I&D and washout.  The patient continued to have regular q3 day wound vac changes to the left clavicle.  The patient was deemed stable for transfer from the Intensive Care Unit to the floor by Neurosurgery. The lumbar drain was pulled. The patient was transferred to Orthopedics White Trauma Team for surgery to the left clavicle, left scapula fracture was deemed nonoperative. Collaboration with the Plastics Team was made to coordinate repair of the clavicle with repair of the wound defect.  On 08/04/09 the patient was taken to the operating room for left clavicle open reduction internal fixation with left hip iliac crest bone graft and skin flap placed by Plastics Team.  The operation went well without complications.
 The patient did well for the postoperative course and was ready to be transferred to rehab on 08/07/09.

At the time of discharge, the patient was afebrile, vital signs stable, pain well controlled. He had been seen by both Physical Therapy and Occupational Therapy who both believed that he could benefit from a rehabilitation center, and he was accepted to Rancho Los Amigos Rehabilitation Center.  At the time the patient left, he was scheduled to return with follow-up appointments with Neurosurgery, Orthopedics White, and Plastics. He was instructed to wear his TLS brace per Neurosurgery. He was to be non-weight-bearing on the left upper extremity.  The patient had full understanding of all discharge instructions and treatment plan at the time of discharge.

The Discharge Plan was discussed with the attending physician, and

```
                                                        Page 2
Name=MADRIGAL,CARLOS                        MRUN=480-09-17
DOB= 10/18/1984      Sex=M                  Acct #=9194552
Loc/Svc=/GORTHO                         Admit Date=07/14/2009
FINAL REPORT                        Discharge Date=08/07/2009
GH DISCHARGE SUMMARY
========================================================================
he/she concurs with this discharge plan.

Dictated By:  Shelby Resnick, M.D.

Job#/Transcriber's Initials:  083115/mm
```

```
========================================================================
   Dictated By=RESNICK,SHELBY   (MD)         D/T=08/09/2009 1145
   Text Status=REVISED FINAL
Elec Signed By= (Electronic Signature)       D/T=08/12/2009 1837
               RESNICK,SHELBY  (MD)
Transcribed By=METHENY,MAUREEN               D/T=08/10/2009 1145
```

Name=MADRIGAL,CARLOS
DOB= 10/18/1984     Sex=M
Loc/Svc=/GORTHO
FINAL REPORT
REPORT OF OPERATION-GH OPS

MRUN=480-09-17
Acct #=9194552
Admit Date=07/14/2009
Discharge Date=08/07/2009

========================================================================

REPORT OF OPERATION


DEPARTMENT: Surgery.     DATE OF OPERATION: 08/04/09.

ATTENDING: Dr. Kim

PRIMARY SURGEON: Joseph Carey, MD

ASSISTANT(S): Ali Soltani, MD

ANESTHESIA: General endotracheal anesthesia.

PREOPERATIVE DIAGNOSIS: Open wound, left clavicular region, open
clavicular fracture.  Status post motorcycle accident.

POSTOPERATIVE DIAGNOSIS: Open wound, left clavicular region, open
clavicular fracture.  Status post motorcycle accident.

PROCEDURE(S): Mobilization of deltopectoral advancement flap,
approximately 40 square centimeters.  Mobilization of neck advancement
flap, fasciocutaneous approximately 20 square centimeters.  Mobilization
of posterior neck advancement flap from trapezial region,
fasciocutaneous approximately 20 square centimeters.  Primary closure of
layer complex closure in the left neck.

INDICATIONS:  This is a 25-year-old male who is status post motorcycle
accident, during which he suffered an open clavicular fracture.  Based
on the patient's history of a paraplegia, secondary to the accident, and
open clavicle, the orthopedic surgeons deemed him a good candidate for
open reduction and internal fixation of the clavicle.  Based on the fact
there is an open wound as well, the consideration was for coverage of
the wound.  Plastic surgery was consulted for coverage of the wound.

RISK NOTE:  The patient had an opportunity to discuss the indications
for the procedure, including, but not limited to, pain, bleeding, risks
of the anesthesia, and risk of death, also risk of wound failure,
possible need for future free flaps, or other reconstructive options.
We had an opportunity to discuss at length prior to the surgery, the
possibilities for closure of the wound, including primary closure,
versus local rotational flaps, versus possible free flaps.  He
understood the reconstructive hierarchy and agreed to allow us to make a
judgment in the operating room.



Page 2

Name=MADRIGAL,CARLOS
DOB= 10/18/1984      Sex=M
Loc/Svc=/GORTHO
FINAL REPORT
REPORT OF OPERATION-GH OPS

MRUN=480-09-17
Acct #=9194552
Admit Date=07/14/2009
Discharge Date=08/07/2009

========================================================================

OPERATIVE FINDINGS: Upon completion of the part of the operation by the
orthopedic surgeons, we entered the operating room and evaluated the
wound.  We found that due to the local tissue forces, would be likely
salvageable wound by local tissue advancement flaps.  The deltopectoral
flap was designed and mobilized without rotational configuration.
Primary closure was achieved using multiple layers under minimal
tension.

PROCEDURE: The attending, Dr. Kim, was present for the case.  Upon
completion of the open reduction and internal fixation of the clavicle
by the orthopedic surgeons, we entered the operating room.  We began the
operation by assessment of the wound, and found that the deltopectoral
region could be mobilized.  The deltopectoral region was mobilized in
the subpectoral fascial plane, for an area of approximately 40 square
centimeters.  This area was then able to be mobilized towards the neck.
The sternocleidomastoid region was then mobilized in the fasciocutaneous
plane.  It was able to be pulled towards the deltopectoral flap, with
minimal tendon.  Finally, a posterior neck trapezial fasciocutaneous
advancement flap was dissected.  All dissection was carried out in the
subfascial plane.  Care was taken to avoid damage to nerves, and deeper
structures.  Care was taken to avoid damage to the accessory nerve,
which was visualized during the case.  Once all flaps were mobilized in
their full positions, a test stitch was placed and found to be able to
close the 3 corners of the wound without difficulty.  A JP drain, size
7, was left in position, and the tissues were closed under minimal
tension with the deepest layer of 0 Vicryl, followed by a subdermal
layer of 2-0 Maxon, followed by a superficial layer of running 5-0 fast
gut suture.  The wound was then dressed in a sterile dressing, with
placement of Bactroban and Xeroform over the dressing, and then secured
with an ABD pad.  The left upper extremity was placed in a sling.  All
sponge, needle, and instrument counts were correct at the end of the
case for the plastic surgery part, and there were no complications.

COMPLICATIONS: None.

ESTIMATED BLOOD LOSS: Will be dictated in a separate part by the
pediatric surgeons.

Dictated By:  Joseph Carey, MD

Job ID#: 082431/sag

Page
82

========================================================================

Name=MADRIGAL,CARLOS
DOB= 10/18/1984        Sex=M
Loc/Svc=/GORTHO
FINAL REPORT
REPORT OF OPERATION-GH OPS

MRUN=480-09-17
Acct #=9194552
Admit Date=07/14/2009
Discharge Date=08/07/2009

=================================================================

** REVISED on 07/16/2009 2012 by CHB **

REPORT OF OPERATION


DEPARTMENT:  ACUTE CARE SURGERY SERVICE

DATE OF OPERATION:  07/13/2009

SURGEON:  Kenji Inaba, MD

ASSISTANTS:  Benjamin Chen, MD; Paul Sanders, MD; also present
orthopedic service

ANESTHESIA:  General endotracheal anesthesia.

PREOPERATIVE DIAGNOSES:  Open left clavicular fracture, open left neck
wound.

POSTOPERATIVE DIAGNOSES:  Open left clavicular fracture, open left neck
wound, small venous tributary avulsion in the clavicular area.

PROCEDURES PERFORMED:  Left neck wound exploration, ligation of small
venous tributaries, washout, left chest tube placement.

INDICATIONS:  The patient is a 24-year-old male who presented to LAC+USC
medical center status post a motorcycle accident.  The patient arrived
in the resuscitation bay in C-collar with a large open left clavicular
fracture and large neck wound.  Initial venous bleeding seen from the
wound site was controlled with ligation of the external jugular vein.
No active bleeding or expanding hematoma was seen in the open neck
wound.  The patient was insensate with loss of motor function below the
T5-T6 region and no anal tone.  Neurosurgery RB'd the patient to the
operating room for repair of the thoracic spine injuries.  The trauma
team was present for the RB.

PROCEDURE:  The neck wound was explored by extension of the laceration
laterally.  A portion of the pectoralis major was divided, and 2 bony
fragments of the mid clavicle were removed.  The left subclavian artery
was exposed with good arterial pulse palpable.  No left subclavian
arterial injury was seen, which confirmed CT findings.  The left carotid
pulse was palpable.  A small venous tributary in the posterior neck area
as well as adjacent to the pectoralis major muscle was ligated with 0
silk ties.  The internal jugular vein was ligated with an 0 silk tie on
the left side.  The field was hemostatic.  At this time, the orthopedic

Page 2
Name=MADRIGAL,CARLOS                        MRUN=480-09-17
DOB= 10/18/1984        Sex=M                Acct #=9194552
Loc/Svc=/GORTHO                            Admit Date=07/14/2009
FINAL REPORT                            Discharge Date=08/07/2009
REPORT OF OPERATION-GH OPS

=================================================================
service joined.  A washout of the open left clavicular fracture as well
as the left neck wound was done.  This portion of the operation will be
dictated by the orthopedic service.  The left chest was re-draped
following the orthopedic washout and wound V.A.C. placement on the open
left clavicular fracture as well as the left neck open wound.  A
32-French chest tube was placed in the 5th intercostal space on the left
side and put to Pleur-evac suction.  Approximately 50 mL of venous blood
was evacuated.  No evidence of air leak.  The needle count, lap count,
and instrument count was correct for this portion of the operation.  The
neurosurgical intervention and, again, the orthopedic interventions will
be dictated by their respective services.  The patient maintains a
palpable left carotid pulse and a strong left radial pulse following
intervention.

COMPLICATIONS:  None.

FLUIDS:  Please see anesthesia records.

ESTIMATED BLOOD LOSS:  Please see anesthesia records.

Dictated By:  Benjamin Chen, MD

Job ID#:  79199/saf

=================================================================
     Dictated By=CHEN,BENJAMIN (MD)            D/T=07/14/2009 1330
     Text Status=REVISED FINAL
Elec Signed By= (Electronic Signature)         D/T=07/16/2009 2012
               CHEN,BENJAMIN (MD)
Transcribed By=FARGUS,SHARON A                 D/T=07/14/2009 1330

```
                                                        Page 3
Name=MADRIGAL,CARLOS                          MRUN=480-09-17
DOB= 10/18/1984         Sex=M                 Acct #=9194552
Loc/Svc=/GORTHO                          Admit Date=07/14/2009
FINAL REPORT                         Discharge Date=08/07/2009
REPORT OF OPERATION-GH OPS
==============================================================
cc: CHEN,B
```

Name=MADRIGAL,CARLOS
DOB= 10/18/1984        Sex=M
Loc/Svc=/GORTHO
FINAL REPORT
REPORT OF OPERATION-GH OPS

MRUN=480-09-17
Acct #=9194552
Admit Date=07/14/2009
Discharge Date=08/07/2009

==================================================================
REPORT OF OPERATION


DEPARTMENT: NEUROSURGERY        DATE OF OPERATION: July 14, 2009

ATTENDING:  AZADEH FARIN, M.D.

SURGEON:  AZADEH FARIN, M.D.

ASSISTANT(S):  JESSE L. WINER, M.D.

ANESTHESIA:  General endotracheal anesthesia.

PREOPERATIVE DIAGNOSES:  T5 fracture of posterior elements. T6
three-column injury, trans fracture with injury to 3 columns. Spinal
cord compression. Complete spinal cord injury. Spinal canal compromise.
Instability. Kyphotic deformity at T6.

POSTOPERATIVE DIAGNOSES: T5 fracture of posterior elements. T6
three-column injury, trans fracture with injury to 3 columns. Spinal
cord compression. Complete spinal cord injury. Spinal canal compromise.
Instability. Kyphotic deformity at T6.

PROCEDURE(S):  T5, T6, T7 laminectomies. T6 reduction of kyphotic
deformity. Fusion from T3 to T10 with Theken system. Repair of traumatic
dural tear.

INDICATIONS:  The patient is a 24-year-old male who was the unfortunate
victim of a motorcycle accident. He suffered what appears to be a
3-column fracture through T6 causing canal compromise, cord compression,
and complete spinal cord injury as well as resulting in an unstable
kyphotic deformity. He had a corresponding level on examination. He was
considered to be a complete spinal cord injury; however, because of the
remote possibility he would regain any function if decompressed acutely,
we decided to decompress him immediately and give him this possibility.
We explained to him that the chances were extremely unlikely that he
would ever have any meaningful motor function but we were willing to
operate on him immediate to aid with this possibility.

RISK NOTE:  The risks, benefits, alternatives, complications, hazards,
and expectations of the surgical procedure were described to the patient
and his family in great detail. They understood and accepted the risks
to include but not be limited to bleeding, stroke, infection, death,
coma, neurological deterioration, paralysis, numbness, failed surgery,

Page 2

Name=MADRIGAL,CARLOS
DOB= 10/18/1984        Sex=M
Loc/Svc=/GORTHO
FINAL REPORT
REPORT OF OPERATION-GH OPS

MRUN=480-09-17
Acct #=9194552
Admit Date=07/14/2009
Discharge Date=08/07/2009

=================================================================

need for further surgery, failed instrumentation, need for revision
surgery. The patient and his family understood and accepted the risks;
they desired to proceed with surgery; informed consent was obtained. No
guarantees were given or implied. All questions were answered to their
satisfaction.

PROCEDURE:  After the satisfactory induction of general endotracheal
anesthesia, a central line was placed. First, trauma surgery addressed
the left shoulder wound. After that, the patient was maintained in spine
precautions and turned over onto a Jackson table. His back was shaved
and prepped. Fluoroscopy was used to determine an incision from
approximately T3 to T9-T10. All pressure points were padded on the
Jackson table; his gonads were free. After surgical pause was carried
out, local was injected into the wound. Incision was carried out from T3
to approximately T9-T10 in the midline. Self-retaining retractors were
placed. Subperiosteal muscle dissection was carried out bilaterally to
expose the facets at T2-T3 all the way down to T8-T9. Then the Theken
system was used to place pedicle screws at T3, T4, T5, T7, T8, and T9
bilaterally. This was done freehand with fluoroscopic guidance to check
screw placement. At this point a temporary rod was placed on the left
side and secured. Unfortunately, because of the nature of the kyphotic
deformity, the temporary rod caused the T8 screw on the left side to
pull out. Therefore, the fusion was extended down to the T10 level on
the left side. The temporary rod was removed from the left side and
placed on the right side but with a greater kyphotic angle to it so
screw pullout would not be an issue with the temporary rod placed on the
right side. With the temporary rod in place and the patient somewhat
stable at this point, we began the decompression laminectomies at T5,
T6, and T7. Copious amounts of cerebral spinal fluid were encountered.
The thecal sac was widely decompressed and shrunken because of the
extent of CSF that had already left the canal due to the traumatic
injury. There were large amounts of epidural bleeding because of the
small size of the thecal sac. Adequate decompression was carried out at
T5, T6, and T7. All bone fragments were removed from the canal. The
epidural space was hemostatic. The traumatic dural tear from the injury
was sealed first with a fat graft and then a piece of DuraGen and
finally Tisseel. At this point compression was used to correct the
kyphotic deformity resulting in a Cobb angle of 15 degrees instead of
the preoperative Cobb angle of 27 degrees between T5 and T7. The set
screws were torqued. Irrigation was carried out. The laminar transverse
spinous processes were decorticated. A Theken crosslink was placed
across approximately T6. Four syringes of Actifuse followed by a mix of
autograft were placed in the fusion bed to help with the fusion process.



Page 3

Name=MADRIGAL,CARLOS  
DOB= 10/18/1984        Sex=M  
Loc/Svc=/GORTHO  
**FINAL REPORT**  
REPORT OF OPERATION-GH OPS

MRUN=480-09-17  
Acct #=9194552  
Admit Date=07/14/2009  
Discharge Date=08/07/2009

========================================================================

Two #7 flat lumbar Jackson-Pratt drains were placed in the wound. The muscles were approximated followed by the fascia with 1-0 Vicryl interrupted stitches. The dermal layer was closed with 3-0 Vicryl interrupted buried stitches. The skin was closed with running Biosyn. The drains were sutured in place. Hardware placement was confirmed with fluoroscopy and demonstrated excellent hardware placement. The patient was taken to the intensive care unit in stable condition.

SPECIMENS:  None.

COUNTS:  Sponge, lap, needle, and instrument counts correct.

COMPLICATIONS:  None.

ESTIMATED BLOOD LOSS:  See anesthesia record.

Dictated By:  AZADEH FARIN, M.D.

Job ID#:  079284/ems

Page 88

========================================================================

Dictated By=FARIN,AZADEH (MD)                    D/T=07/14/2009 1306
   Text Status=**FINAL**
Elec Signed By= (Electronic Signature)           D/T=08/18/2009 1826
          FARIN,AZADEH (MD)
Transcribed By=SCHWARTZENBERGER,EILEEN M          D/T=07/14/2009 2146

```
                        LAC+USC Medical Center Live
                        RESULTS FOR DATE & VIEW, SUMMARY
                     Date=07/13/2009, Result View=NET WORK VIEW
                     Printed Mon Sep 21, 2009 12:18 PM By: JS,IS


Name:MADRIGAL,CARLOS              Sex:M    DOB:10/18/1984      MRUN:480-09-17
Loc:ROR       Adm:08/25/09        Att:                        Acc#:9384879
-----------------------------------------------------------------------------
Unresulted Orders Across Visits:
07/13/09   1837 s   CANCELLED         R01WDFW-1
CT/ER ABDOMEN/PELVIS W/CONTRAS

07/13/09   1837 s   CANCELLED         R01WDFZ-1
CT/ER CHEST W/CONTRAST

07/13/09   1907 p   COMPLETED         R01WDG3-1
XR/ER PELVIS AP



Resulted Orders for 07/13/2009, Across Visits:
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09


Ord #= L0DPHNQ-1        *ASAP*/RESULTED        Collect D/T= 07/13/2009 2300
BLOOD GAS,ARTERIAL (CORE LAB)
  Modifiers:                                                    (1 of 8)
  pH ARTERIAL, CORRECTED:          7.27                    pH UNITS
  PCO2 ARTERIAL, CORRECTED:        44                      MM HG
  PO2 ARTERIAL, CORRECTED:         436                     MM HG
  PO2 (A-a), CORRECTED:            83                      MM HG
  pH ARTERIAL, RAW:              L 7.27      (7.35 - 7.45) pH UNITS
  PCO2 ARTERIAL, RAW:              44        (35 - 45) MM HG
  PO2 ARTERIAL, RAW:               436       (>75) MM HG
  HCO3 ARTERIAL:                 L 20        (22 - 27) mmol/L
  BASE DEFICIT:                    6.1                     mmol/L
    Comment:
      REFERENCE RANGE 0-2
  O2 SAT,ARTERIAL:               H 99        (94 - 98) %
  APPROX O2 CONTENT, ARTERIAL:     14                      mL%
    Comment:
      REFERENCE RANGE NOT ESTABLISHED,LOCAL AND/OR NATIONAL.
  TOTAL HB:                      L 10.4      (13.8 - 16.9) g/dL
  HEMATOCRIT:                    L 31.0      (41.0 - 50.0) %
  OXY HB:                          98.6      (>95.0) %
  CARBOXY HB (ARTERIAL):           0.5       (<2.5) %
    Comment:
      <2.5 NON-SMOKERS
  MET HB:                        L 0.1       (1.1 - 2.4) %
  ANION GAP:                       13        (10 - 20) mmol/L
  SODIUM:                          145       (135 - 145) mmol/L
  POTASSIUM:                     H 5.0       (3.3 - 4.9) mmol/L
    Comment:
      NOTE: Whole Blood Potassium levels may be falsely elevated if the
      specimen is hemolyzed.  In addition, whole blood and serum potassium
      reference ranges are different:
      Whole blood: 3.3-4.9 mmol/L   serum: 3.5-5.1 mmol/L.
```



LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/13/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

```
Name:MADRIGAL,CARLOS        Sex:M   DOB:10/18/1984      MRUN:480-09-17
Loc:ROR        Adm:08/25/09        Att:                 Acc#:9384879
-------------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

  CALCIUM,IONIZED:           L 4.3          (4.5 - 5.3) mg/dL
  CHLORIDE:                  H 117          (100 - 110) mmol/L
  GLUCOSE:                   H 178           (65 - 99)  mg/dL
  UREA NITROGEN (BUN):         20            (8 - 22)   mg/dL
  CREATININE:                  0.9          (0.5 - 1.3) mg/dL
  BUN/CREAT RATIO:           H 23           (12 - 20)
  LACTATE:                   H 2.6          (0.5 - 1.6) mmol/L
  PT TEMP:                     37.0                     DEG C
  FIO2:                        80                       %
  SAMPLE SITE:               ARTERIAL
  POSITION:                  SUPINE
  LAB LOCATION:              CORE LAB

Ord #= L0DPHFL-1            *ASAP*/RESULTED       Collect D/T= 07/13/2009 2204
BLOOD GAS,ARTERIAL (CORE LAB)
  Modifiers:                                                 (2 of 8)
  pH ARTERIAL, CORRECTED:      7.31                     pH UNITS
  PCO2 ARTERIAL, CORRECTED:    31                       MM HG
  PO2 ARTERIAL, CORRECTED:     386                      MM HG
  PO2 (A-a), CORRECTED:        216                      MM HG
  pH ARTERIAL, RAW:          L 7.31         (7.35 - 7.45) pH UNITS
  PCO2 ARTERIAL, RAW:        L 31           (35 - 45)   MM HG
  PO2 ARTERIAL, RAW:           386            (>75)     MM HG
  HCO3 ARTERIAL:             L 15           (22 - 27)   mmol/L
  BASE DEFICIT:                9.3                      mmol/L
    Comment:
      REFERENCE RANGE 0-2
  O2 SAT,ARTERIAL:           H 99           (94 - 98)   %
  APPROX O2 CONTENT, ARTERIAL: 12                       mL%
    Comment:
      REFERENCE RANGE NOT ESTABLISHED,LOCAL AND/OR NATIONAL.
  TOTAL HB:                  L 8.4          (13.8 - 16.9) g/dL
  HEMATOCRIT:                L 25.0         (41.0 - 50.0) %
  OXY HB:                      98.8           (>95.0)   %
  CARBOXY HB (ARTERIAL):       0.3            (<2.5)    %
    Comment:
      <2.5 NON-SMOKERS
  MET HB:                    L 0.1          (1.1 - 2.4) %
  ANION GAP:                   12           (10 - 20)   mmol/L
  SODIUM:                    H 146          (135 - 145) mmol/L
  POTASSIUM:                   3.9          (3.3 - 4.9) mmol/L
    Comment:
      NOTE: Whole Blood Potassium levels may be falsely elevated if the
      specimen is hemolyzed.  In addition, whole blood and serum potassium
      reference ranges are different:
```

 

Page 3

LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/13/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

Name:MADRIGAL,CARLOS          Sex:M    DOB:10/18/1984        MRUN:480-09-17
Loc:ROR        Adm:08/25/09          Att:                    Acc#:9384879
--------------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

```
      Whole blood: 3.3-4.9 mmol/L  serum: 3.5-5.1 mmol/L.
  CALCIUM,IONIZED:          L 3.9              (4.5 - 5.3) mg/dL
  CHLORIDE:                 H 122              (100 - 110) mmol/L
  GLUCOSE:                  H 124              (65 - 99) mg/dL
  UREA NITROGEN (BUN):        15               (8 - 22) mg/dL
  CREATININE:                 0.6              (0.5 - 1.3) mg/dL
  BUN/CREAT RATIO:          H 24               (12 - 20)
  LACTATE:                    1.5              (0.5 - 1.6) mmol/L
  PT TEMP:                   37.0              DEG C
  FIO2:                       90               %
  SAMPLE SITE:            ARTERIAL
  POSITION:               SUPINE
  LAB LOCATION:           CORE LAB
```

Ord #= R01WDG2-1        *ASAP*/SIGNED          Perform D/T= 07/13/2009 1922
XR/ER CHEST PORTABLE
  Modifiers:                                                     (3 of 8)
XR/ER CHEST PORTABLE:

      Location:  MEDICAL CENTER
      Rev Phys:  John Park, M.D.
      Ref Phys:  MATTHIEU P DE CLERCK, MD
      Clinic/Ward: ED
      Date Dict:  07/13/2009 19:22:07
      Date Trans: 07/14/2009 09:00:17
      Dict Job #:  17072 / 379627492
      Tran ID:  JP:MedQ  R:

      Date of Exam:  07/13/2009
      Acct#:  9194552  Order#:  R01WDG21  Interface Code:  15955


  CHEST X-RAY AND PELVIS STUDY

  CLINICAL HISTORY:  Auto versus motorcycle.

  COMPARISONS:  None available.

  FINDINGS:  Chest:  No pneumothorax or focal contusion is
  identified.  The cardiomediastinal contours are grossly within
  normal limits.  There are fractures involving the posterior left
  second and possibly first ribs as well as the mid clavicle with
  associated bony fragments.  There is cortical irregularity of the
  glenoid of  the left scapula likely related to a fracture.
  Unclear if the left scapular body is also injured.  Correlation

LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/13/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

Name:MADRIGAL,CARLOS        Sex:M    DOB:10/18/1984        MRUN:480-09-17
Loc:ROR        Adm:08/25/09        Att:        Acc#:9384879
--------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

with CT scan is recommended.

Pelvis:  No definite displaced fractures are identified.  The
bones demonstrate normal mineralization.  No dislocations are
seen.

IMPRESSION:  1.  No acute cardiopulmonary processes.  Multiple
left rib, clavicle, and scapular fractures.  2.  No acute osseous
injuries to the pelvis.


The Staff Physician originated this document.
Electronically signed on 07/19/2009 22:00:32 PDT
John Park, M.D.
SIGNED BY STAFF PHYSICIAN


       * * * * * * * E N D   O F   R E P O R T * * * * * * * *

Edited on:    07/14/2009 @ 2212 by SYS, IS
Previous Result:

    Location:  MEDICAL CENTER
    Rev Phys:  John Park, M.D.
    Ref Phys:  MATTHIEU P DE CLERCK, MD
    Clinic/Ward: ED
    Date Dict:  07/13/2009 19:22:07
    Date Trans:  07/14/2009 09:00:17
    Dict Job #:  17072 / 379627492
    Tran ID:  JP:MedQ  R:

    Date of Exam:  07/13/2009
    Acct#:  9194552  Order#:  R01WDG21  Interface Code:  15955


CHEST X-RAY AND PELVIS STUDY

CLINICAL HISTORY:  Auto versus motorcycle.

COMPARISONS:  None available.

FINDINGS:  Chest:  No pneumothorax or focal contusion is
identified.  The cardiomediastinal contours are grossly within
normal limits.  There are fractures involving the posterior left

 

Page 5

LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/13/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

```
Name:MADRIGAL,CARLOS          Sex:M    DOB:10/18/1984        MRUN:480-09-17
Loc:ROR        Adm:08/25/09           Att:                  Acc#:9384879
```
--------------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

second and possibly first ribs as well as the mid clavicle with
associated bony fragments.  There is cortical irregularity of the
glenoid of  the left scapula likely related to a fracture.
Unclear if the left scapular body is also injured.  Correlation
with CT scan is recommended.

Pelvis:  No definite displaced fractures are identified.  The
bones demonstrate normal mineralization.  No dislocations are
seen.

IMPRESSION:  1.  No acute cardiopulmonary processes.  Multiple
left rib, clavicle, and scapular fractures.  2.  No acute osseous
injuries to the pelvis.


Dictated by John Park, M.D.
UNVERIFIED - UNSIGNED


* * * * * * * E N D   O F   R E P O R T * * * * * * * *

```
Ord #= L0DPGHF-1          *ASAP*/RESULTED      Collect D/T= 07/13/2009 1837
PROTHROMBIN TIM
  Modifiers:                                                 (4 of 8)
 PRO TIME:               13.3            (12.4 - 14.8) sec
 INR:                    0.97            (0.89 - 1.11)

Ord #= L0DPGHG-1          *ASAP*/RESULTED      Collect D/T= 07/13/2009 1837
BASIC METABOLIC
  Modifiers:                                                 (5 of 8)
 ANION GAP (STAT):             16            (10 - 20) mmol/L
 SODIUM (STAT):               145          (135 - 145) mmol/L
 POTASSIUM (STAT):            4.1          (3.5 - 5.1) mmol/L
 CHLORIDE (STAT):             106         (100 - 110) mmol/L
 CARBON DIOXIDE (STAT):        27           (20 - 30) mmol/L
 GLUCOSE (STAT):               89           (65 - 99) mg/dL
 UREA NITROGEN (BUN) (STAT):   17            (8 - 22) mg/dL
 CREATININE (STAT):           1.21        (0.50 - 1.30) mg/dL
 CALCIUM (STAT):              9.3          (8.5 - 10.3) mg/dL

Ord #= L0DPGHH-1          *ASAP*/RESULTED      Collect D/T= 07/13/2009 1837
CBC WITH DIFFER
  Modifiers:                                                 (6 of 8)
```

 

LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/13/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

Name:MADRIGAL,CARLOS        Sex:M    DOB:10/18/1984        MRUN:480-09-17
Loc:ROR        Adm:08/25/09        Att:                    Acc#:9384879
-----------------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

```
WBC:                    10.2                (3.7 - 10.3) K/cumm
RBC:                    4.96                (4.10 - 5.90) M/cumm
HEMOGLOBIN:             14.4                (13.8 - 16.9) g/dL
HEMATOCRIT:             42.5                (41.0 - 50.0) %
MCV:                    85.9                (82.0 - 99.0) fL
MCH:                    29.1                (28.0 - 33.0) pg
MCHC:                   33.9                (33.0 - 35.0) g/dL
RDW:                    13.2                (11.0 - 14.0) %
PLATELET COUNT:         215                 (150 - 350) K/cumm
MPV:                    8.3                 (7.0 - 11.0) fL
DIFF TYPE:              AUTOMATED RESULTS REPORTED
NEUTROPHIL:             70.8                (42.0 - 78.0) %
LYMPHOCYTE:             24.3                (16.0 - 52.0) %
MONOCYTE:               3.9                 (1.0 - 11.0) %
EOSINOPHIL:             0.9                 (0.0 - 4.0) %
BASOPHIL:               0.1                 (0.0 - 2.0) %
ABSOLUTE NEUTROPHIL:    7.2                 (1.8 - 8.0) K/cumm
ABSOLUTE LYMPHOCYTE:    2.5                 (1.2 - 3.8) K/cumm
ABSOLUTE MONOCYTE:      0.4                 (0.3 - 1.0) K/cumm
ABSOLUTE EOSINOPHIL:    0.1                 (0.1 - 0.5) K/cumm
ABSOLUTE BASOPHIL:      0.0                 (0.0 - 0.1) K/cumm
```

Ord #= L0DPGHD-1        *ASAP*/RESULTED        Collect D/T= 07/13/2009 1830
TYPE AND SCREEN
  Modifiers:                                                (7 of 8)
ABO/Rh-Type and Screen:    B   POS
Ab Screen/Ind Coombs:      NEGATIVE                        (NEG)
  :                        State law requires that women be notifi (1)

(1)  State law requires that women be notified of their Rhesus (Rh) type.


Ord #= L0DQ0NN-1                RESULTED        Collect D/T= 07/13/2009 0000
SURGICAL PATHOL
  Modifiers:                                               (8 of 8)
AS09-6594&rpt:
    Surgical Pathology Report



    Specimen(s) Received
    Portions of left clavicle
                                                            Page
    Clinical History                                        94

 

LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/13/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

Name:MADRIGAL, CARLOS          Sex:M    DOB:10/18/1984          MRUN:480-09-17
Loc:ROR          Adm:08/25/09          Att:                     Acc#:9384879
-------------------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

    Not stated


    Gross Description
    Portions of left clavicle:  Received in formalin and consists of
    three tan white to red brown fragments of bone and adherent
    hemorrhagic tissue measuring in aggregate 3.1 x 2.1 x 0.3 cm.
    Representative sections are submitted in cassette A after
    decalcification. (ns)

    Date of Dictation: 07/15/09


    Gross Description By:    Megan Holden,MD

    gc/7/16/2009

    Microscopic Description
    Performed.




    Final Pathologic Diagnosis
    Portions of left clavicle:  Fragments of benign bone and skeletal
    muscle.



    Attending Pathologist: Nancy Klipfel, MD

    ***Electronically Signed Out By Nancy Klipfel, MD***

    hmg/7/21/2009



    Patient Name:  MADRIGAL, CARLOS
    Case #:        AS09-6594
    Med. Rec. #:   4800917
    Location:      5B, ICU/Surg (LAC)
    Date Collected:7/13/2009

 

LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/13/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

Name:MADRIGAL,CARLOS        Sex:M    DOB:10/18/1984        MRUN:480-09-17
Loc:ROR        Adm:08/25/09        Att:        Acc#:9384879
-------------------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

LAC+USC Medical Center Live
RESULTS FOR DATE & VIEW, SUMMARY
Date=07/26/2009, Result View=NET WORK VIEW
Printed Mon Sep 21, 2009 12:18 PM By: JS,IS

```
Name:MADRIGAL,CARLOS          Sex:M    DOB:10/18/1984      MRUN:480-09-17
Loc:ROR         Adm:08/25/09          Att:                 Acc#:9384879
```
--------------------------------------------------------------------------

Unresulted Orders Across Visits:


 None found

Resulted Orders for 07/26/2009, Across Visits:
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09

Ord #= L0DVJMP-1               RESULTED         Collect D/T= 07/26/2009 1718
GLUCOSE (POCT)
 Modifiers:                                                   (1 of 6)
 GLUCOSE (POCT):          H 141                        (65 - 99) mg/dL
 Comments:                 Repeat
 OPERATOR ID:              509215
 LAB LOCATION:             POINT OF CARE TEST-PERFORMED BY  (1)

(1)  POINT OF CARE TEST-PERFORMED BY WARD PERSONNEL


Ord #= L0DVJMF-1               RESULTED         Collect D/T= 07/26/2009 1223
GLUCOSE (POCT)
 Modifiers:                                                   (2 of 6)
 GLUCOSE (POCT):          H 111                        (65 - 99) mg/dL
 OPERATOR ID:              159278
 LAB LOCATION:             POINT OF CARE TEST-PERFORMED BY  (1)

(1)  POINT OF CARE TEST-PERFORMED BY WARD PERSONNEL


Ord #= L0DV4N5-1             *ASAP*/RESULTED      Collect D/T= 07/26/2009 0351
PARTIAL THROMBO
 Modifiers:                                                   (3 of 6)
 APTT:                     33.9            (26.0 - 39.0) sec
   Comment:
      FOR PATIENTS RECEIVING "UNFRACTIONATED" HEPARIN, THE CURRENT LOS
      ANGELES COUNTY-DHS RECOMMENDED THERAPEUTIC RANGE IS 65-100 SECONDS.

Ord #= L0DV4N5-1             *ASAP*/RESULTED      Collect D/T= 07/26/2009 0351
PROTHROMBIN TIM
 Modifiers:                                                   (4 of 6)
 PRO TIME:                 14.6            (12.4 - 14.8) sec
 INR:                      1.09            (0.89 - 1.11)

Ord #= L0DV4N6-1             *ASAP*/RESULTED      Collect D/T= 07/26/2009 0351
BASIC METABOLIC
 Modifiers:                                                   (5 of 6)
```

```
                    LAC+USC Medical Center Live
                  RESULTS FOR DATE & VIEW, SUMMARY
            Date=07/26/2009, Result View=NET WORK VIEW
         Printed Mon Sep 21, 2009 12:18 PM By: JS,IS
```

```
Name:MADRIGAL,CARLOS          Sex:M    DOB:10/18/1984      MRUN:480-09-17
Loc:ROR         Adm:08/25/09           Att:               Acc#:9384879
---------------------------------------------------------------------------
Acct#: 9194552 GORTHO Adm: 07/14/09-08/07/09
```

```
     ANION GAP (STAT):              17              (10 - 20) mmol/L
     SODIUM (STAT):                 136             (135 - 145) mmol/L
     POTASSIUM (STAT):              4.4             (3.5 - 5.1) mmol/L
     CHLORIDE (STAT):               110             (100 - 110) mmol/L
     CARBON DIOXIDE (STAT):       L 13              (20 - 30) mmol/L
     GLUCOSE (STAT):              H 106             (65 - 99) mg/dL
     UREA NITROGEN (BUN) (STAT):  H 26              (8 - 22) mg/dL
     CREATININE (STAT):           H 1.47            (0.50 - 1.30) mg/dL
     CALCIUM (STAT):                8.7             (8.5 - 10.3) mg/dL


Ord #= L0DV4N7-1              *ASAP*/RESULTED         Collect D/T= 07/26/2009 0351
COMPLETE BLOOD
  Modifiers:                                                       (6 of 6)
WBC:                    H 18.8            (3.7 - 10.3) K/cumm
RBC:                    L 3.74           (4.10 - 5.90) M/cumm
HEMOGLOBIN:             L 11.4           (13.8 - 16.9) g/dL
HEMATOCRIT:             L 32.9           (41.0 - 50.0) %
MCV:                      88.1           (82.0 - 99.0) fL
MCH:                      30.4           (28.0 - 33.0) pg
MCHC:                     34.5           (33.0 - 35.0) g/dL
RDW:                      13.8           (11.0 - 14.0) %
PLATELET COUNT:           283            (150 - 350) K/cumm
MPV:                      7.3            (7.0 - 11.0) fL
```

**Exhibit E**



# Madison Law Group

ATTORNEYS

KYLE K. MADISON, ESQ.

MAIN OFFICE

11111 SANTA MONICA BOULEVARD
SUITE 100
LOS ANGELES, CALIFORNIA 90025

TELEPHONE (310) 201-7676 ♦ FACSIMILE (310) 744-0111

OF COUNSEL

FRANK HUTTING
WALTER BATT
MARTIN WOLF
SEAN TABIBIAN
SAMIRA KERMANI
DAVID M. TAGHIOFF
JEFF P. VOLL

EXTENSION: 7676

# FAX TRANSMISSION SHEET

| TO: | ALLSTATE INS. / ATTN: TERESA VARELA | DATE: | 1-15-10 |
|---|---|---|---|
| FAX #: | 909-612-2888 | PAGES | 5, INCLUDING THIS PAGE |
| FROM: | MADISON LAW GROUP | COPIES: | NONE |

SUBJECT:   **MADRIGAL V. TANG   CLAIM #: 0143195462   DOL: 7/13/09**

Dear Ms. Varela:

Please find attached Plaintiff's policy demand which was sent today by certified mail.

Please contact our office with any questions at (310) 201-7676.

Very truly yours,
MADISON LAW GROUP

Ellen Taylor
Paralegal to Kyle Madison

### IMPORTANT
### PLEASE DELIVER
### IMMEDIATELY

**CONFIDENTIALITY NOTE:** THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPY OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ADDRESS ABOVE VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.

 

# HP Color LaserJet 2840

11111 SANTA MONICA BLVD
310-744-0111
Jan-15-2010   4:23PM

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 12771 | 1/15/2010 | 4:21:43PM | Send | 19096122888 | 1:32 | 5 | OK |

---

MADISON
LAW GROUP
ATTORNEYS

KYLE K. MADISON, ESQ.

*MAIN OFFICE*
11111 SANTA MONICA BOULEVARD
SUITE 100
LOS ANGELES, CALIFORNIA 90025
TELEPHONE (310) 201-7676 • FACSIMILE (310) 744-0111

*OF COUNSEL*
FRANK MOTTEK
WALTER BATT
MARIAN WOLF
JEAN TRIEGISM
SANDRA HERMINE
DAVID W. TASCHOFF
JEFF P. VOSS

*EXTENSION 7676*

## FAX TRANSMISSION SHEET

| TO: ALLSTATE INS. / ATTN: TERESA VARELA | DATE: 1-15-10 |
|---|---|
| FAX #: 909-612-2888 | PAGES: 5, INCLUDING THIS PAGE |
| FROM: MADISON LAW GROUP | COPIES: NONE |

SUBJECT: MADRIGAL V. YANG CLAIM #: 0161193462 DOI: 7/13/09

Dear Ms. Varela:

Please find attached Plaintiff's policy demand which was sent today by certified mail.

Please contact our office with any questions at (310) 201-7676.

Very truly yours,
MADISON LAW GROUP

Ellen Taylor
Paralegal to Kyle Madison

```
IMPORTANT
PLEASE DELIVER
IMMEDIATELY
```

CONFIDENTIALITY NOTE: THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPY OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ADDRESS ABOVE VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.



**M**ADISON

**L**AW **G**ROUP

A T T O R N E Y S

KYLE K. MADISON, ESQ.

MAIN OFFICE

11111 SANTA MONICA BOULEVARD
SUITE 100
LOS ANGELES, CALIFORNIA 90025

TELEPHONE (310) 201-7676 ♦ FACSIMILE (310) 744-0111

OF COUNSEL

FRANK HUTTING
WALTER BATT
MARTIN WOLF
SEAN TABIBIAN
SAMIRA KERMANI
DAVID M. TAGHIOFF
JEFF P. VOLL

EXTENSION: 7676

JANUARY 15, 2010

TERESA VARELA
ALLSTATE INSURANCE COMPANY
P.O. BOX 6517
DIAMOND BAR, CA 91765

RE:   **CARLOS MADRIGAL**
**DATE OF LOSS:**        **JULY 13, 2009**
**CLAIM NO.: 0134198462**

Dear Ms. Varela:

This letter will confirm that Plaintiffs have made a policy limits demand to Defendant RICHARD TANG and his insurance carrier, Allstate Insurance Company, by way of a C.C.P. §998 offer for $100,000.00. We have been advised (and relying on the assumption) that RICHARD TANG only had $100,000.00 in policy limits and that it had no other coverage (whether by umbrella or excess.)

**Allstate's Duty to Pay the Policy Limits**

As you know, the implied covenant of good faith and fair dealing imposes on both insurance carriers a duty to settle within the policy limits if it would be unreasonable not to do so. *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal. 3d 9, 14-16. If a carrier unreasonably refuse to settle, it is liable for the entire amount of any subsequent judgment against the insured, even if that judgment is in excess of the policy limits. Id.

A duty to accept reasonable settlement demands is implied in order to protect the insured's reasonable expectations in purchasing the insurance: "(I)n light of the common knowledge that settlement is one of the usual methods by which an insured receives protection under a liability policy, it may not be unreasonable for an insured . . . to believe that a sum of money equal to the limits is available and will be used so as to avoid liability on his part . . ." *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 431.

In this way, an insured is protected from liability in excess of the policy limits as a result of an insurer's gamble on the outcome of the case--a gamble that only the insured stands to lose. *Murphy v. Farmers Ins. Co.* (1976) 17 Cal. 3d 937, 941. As one court succinctly stated the rule, "[a]n insurer cannot unreasonably refuse to settle within policy limits and thus gamble with its insured's money to further its own interests." *Western Polymer Technology, Inc. v. Reliance Ins. Co.* (1995) 32 Cal. App. 4th 14, 26 citing *Crisci v. Security Ins. Co.* (1967) 66 Cal. 2d 425, 431.

Whether an insurer acted reasonably in rejecting a settlement demand is a question of fact. *Cain v. Farmers Mut. Auto. Ins. Co.* (1975) 47 Cal. App. 3d 783, 792. The standard is whether a prudent insurer, after having made an honest, intelligent, and knowledgeable evaluation of the claim on its merits, (*Merritt v. Reserve Ins. Co.*



January 15, 2010
Page 2

(1973) 34 Cal. App. 3d 858, 872-873)  would have accepted the settlement demand if it alone were liable for the entire judgment. *Betts v. Farmers Ins. Co.* (1984) 154 Cal. App. 3d 688, 706.

The reasonableness of a settlement offer depends on facts known or available to the insurer (knowledge of which is imputed to the insurer) at the time of the proposed settlement: "The reasonableness of a settlement offer is to be evaluated by considering whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Isaacson v. California Ins. Guar. Ass'n* (1988) 44 Cal.3d 775, 792, fn. 12.

The factors to be considered in determining whether the insurer reasonably evaluated the settlement demand include: (*Merritt*, 34 Cal. App. 3d at 876)

    (1)      The strength of the injured claimant's case on the issues of liability and damages;

    (2)      Attempts by the insurer to induce the insured to contribute to a settlement;

    (3)      The failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured;

    (4)      The insurer's rejection of advice of its own attorney or agent;

    (5)      The failure of the insurer to inform the insured of a compromise offer;

    (6)      The amount of financial risk to which each party is exposed in the event of a refusal to settle;

    (7)      The fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and

    (8)      Any other factors tending to establish or negate bad faith on the part of the insurer.
Such additional factors have been held to include the extent of settlement negotiations and the timing of the insurer's rejection of the settlement demand. *Critz v. Farmers Ins. Group* (1964) 230 Cal. App. 2d 788, 797.

Insurers have been found to have acted unreasonably:

    —    when they placed blind faith in the expectation that expert testimony would overcome the plaintiff's claims; *Crisci*, 66 Cal. 2d at 431-432 (insurer acted unreasonably when it rejected a $10,000 demand while recognizing that $100,000 award might follow if the jury rejected the insurer's expert testimony);

    --    when they unquestioningly relied on the insured's statements regarding liability when mounting evidence was to the contrary. *Betts*, 154 Cal. App. 3d at 707; and

    --    when they relied on the advice of defense counsel even though their own personnel predicted high odds that the plaintiff would win and that a substantial excess judgment would be entered. *Allen v. Farmers Ins. Co.* (9th Cir. 1981) 656 F.2d 487, 489.

The amount of an excess judgment raises an inference that the value of the claim was equal to the amount of the judgment, and therefore that the insurer's refusal to settle within policy limits was unreasonable. *Johansen*, 15 Cal. 3d at 17.

 

January 15, 2010
Page 3

## Liability

We strongly recommend interviewing the following witnesses who we determined to be favorable to the Plaintiff by our investigator and though accident reconstruction:

1. Francisco Basan, 2445 Oak, Huntington Park, CA 90255, 323-371-8094
2. Francisco Herrera, 4867 Long Beach Ave, Los Angeles, CA 90058, 323-641-2115
3. Jose, (last name and address unknown), 323-216-7508
4. Teresa Hernandez, (address unknown), 323-527-3581

Through statements we have taken and representations from your insured, we believe that your insured is 100% liable for this accident.

The basis for this position is that your insured was in the center lane, and turned suddenly and without warning to the left and into a parking lot, failing to look at the lane on his left where our client was driving his motorcycle. When your insured turned left, he hit our client, which places sole liability on your insured.

## Damages

Plaintiff's damages far exceed your insured's policy limits. Enclosed you will find pertinent medical records for plaintiff indicating the severity of Mr. Madrigal's life-altering injuries that he sustained as a direct result of the subject accident. Plaintiff is confined to a wheelchair and may never walk again. Please note that you are in possession of photographs we have previously produced to you.

Before this letter's conditional policy limits settlement offer can be accepted by you on behalf of your insured, you must comply completely, not just substantially, with the following conditions precedent, and those conditions precedent must be completely performed by you within and only within 30 days from the date of this letter.

1. You must timely deliver to my office legible photocopies of all available liability insurance policies maintained by your insured;

2. You must timely deliver to my office the appropriate release of all claims forms;

3. You must timely deliver to my office a declaration under penalty of perjury, signed by your insured, specifically stating that no other liability insurance policies exist for the subject accident, (including an umbrella policy) that he was not in the course and scope of employment, and an asset sheet of all assets or lack thereof;

4. You must deliver to my office a settlement draft, equal to the total amount of all available liability insurance policy limits along with a certified copy of the policy revealing limits;

5. The purpose of this letter is to give you, on behalf of your insured, an opportunity within the next thirty (30) days to legally effectuate a permanent, binding and enforceable settlement contract and at an amount of money that does not require any payment by you insured of monies above and beyond your insured's total available liability insurance policy limits. Therefore, if you do not understand any portion of this letter or if you believe that any portion of this letter cannot be complied with for any reason, then this instant conditional policy limits settlement offers requires you, as another condition precedent to be performed by you, at or within thirty (30) days from the date of this letter, to communicate in writing to my office, whatever, "problems" you deem to exist. If your written problems establish good cause, then my office will grant you an extension of time within which you may accept my client's conditional policy limits settlement offer;

 

January 15, 2010
Page 4

  6.  Any effort on you part to comply with any of the above conditions precedent orally or telephonically will be deemed by this letter to a rejection of this conditional policy limits settlement offer. In other words, complete compliance with this instant letter could only be achieved by written responsive letters from you.  No one in our office is authorized to orally or telephonically modify any of the terms of this instant policy limits settlement offer letter. For the next thirty (30) days from the date of this letter, our office will only respond in writing to written communication initiated by you or your carrier.

Time is of the essence.  Therefore, failure on your part to completely perform all of the above conditions precedent at or within thirty (30) days from the date of this letter will be deemed to be a rejection of this letter's conditional policy limits settlement offer. In other words, performance on your part of some, but not all, of the above condition precedent will be deemed by this instant letter to be a counter offer. You are hereby put on notice that any counter offers by you will hereby be rejected by this office. Our client's claims against your insured represent one of certain liability against your insured. The damages suffered by my client substantially exceed my understanding of your insured's total available liability insurance policy limits. Liability is reasonably clear in that your insured caused this accident.

 If the above matter settles per the above conditions precedent for all available policy limits within thirty (30) days from the date of this letter, then my client hereby agrees to remain exclusively responsible for any and all liens of any kind, known or unknown.

In the matter of *Boicourt v. Amex Assurance Co.*, (2000) 78 Cal. App. 4th 1390, the California Supreme Court in upholding a verdict in excess of policy limits and finding affirmative bad faith of an insurance company cautioned the insurance industry that "an insurance company plays with fire by refusing to disclose policy limits."

Thank you for your immediate attention to this matter and your written response to the same.

Very truly yours,
MADISON LAW GROUP

Kyle K. Madison, Esq.
KKM:et

# Exhibit F



Diamond Bar Casualty
PO BOX 6517
DIAMOND BAR CA 91765



FEB 0 1 2010

MADISON LAW GROUP INC
11111 SANTA MONICA BLVD STE 100
LOS ANGELES CA 90025-3378

*5 pages*

January 29, 2010

INSURED: RICHARD TANG
DATE OF LOSS: July 13, 2009
CLAIM NUMBER: 0143198462 RTV

PHONE NUMBER: 888-358-8415
FAX NUMBER: 909-612-2888
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm,
Sat 8:00 am - 2:00 pm

Your Client: Carlos Madrigal
VIA FAX & MAIL
RESPONSE TO POLICY LIMIT DEMAND

Dear MADISON LAW GROUP INC,

This shall serve as a response to your policy and timed limit demand received via fax on January 15, 2009 and via mail on January 22, 2010 and due on February 13, 2010 (30 days).

We are extending our $100,000.00 policy limit offer to resolve this claim. Enclosed is a release for your client to sign and return so we may forward the settlement check immediately. Although your conditions to accept our offer include:

4.   "You must deliver to my office a settlement draft, equal to the total
      amount of all available liability insurance policy limits along
      with a certified copy of the policy revealing limits;"

I'm sure you understand in order to forward the settlement check, we must receive the signed release. Therefore, we are faxing and mailing the release so we may immediately process the same.

Enclosed is a copy of the declaration of insurance. The certified declaration will be forthcoming.

Our records reflect Richard Tang did not possess any excess and/or umbrella policy with Allstate Insurance Company.

Our insured, Richard Tang has filed a claim with the commercial carrier, Topa Insurance to determine whether any excess coverage is applicable to this loss. The adjuster is Sherri Bank, her phone number is (310)272-7063 and her claim number is 77644-SB.

Pursuant to a voice mail I received from Sherri on January 27, 2010, her preliminary investigation reveals there is no coverage due to the "auto exclusion". You may contact her directly regarding her completed investigation.

I have forwarded a declaration under penalty of perjury, (see copy enclosed) for our insured to complete and return. We are awaiting receipt of the same. In the event you have your own declaration which meets your standards and which you wish us to forward to our insured, please provide it.

Page
107

0143198462 RTV

 

Your policy limit demand requests:

      3. "........and an asset sheet of all assets or lack thereof;"

We have provided a copy of your letter to our insured and must allow our insured to make the decision regarding providing confidential information with respect to their assets.

We look forward to resolving this claim timely. If you have any questions, please contact me. Please note, attached to this letter of an offer are the following: 1) policy declaration; 2) release; and 3) declaration under penalty of perjury (unsigned).

Sincerely,

*TERESA VARELA*

TERESA VARELA
888-358-8415 Ext. 26571
Allstate Indemnity Company

Copy :  ANNA & RICHARD TANG
        RIGGIO INSURANCE AGEN
        DOBBIN LO AND ASSOCIATES



# Allstate Indemnity Company

Policy Number : 9 14 906559 07/28    Your Agent:  Riggio Ins Agy Inc  (805) 604-0575
Policy Effective Date: Jan. 28, 2009

COVERAGE FOR VEHICLE # 1
## 2000 Honda Cr-V

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $267.95 |
| • Bodily Injury | $100,000 | each person | | |
| | $300,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | | |
| Uninsured Motorists Insurance | $50,000 | each person | Not Applicable | $26.75 |
| for Bodily Injury | $100,000 | each accident | | |
| Auto Collision Insurance. Waiver of deductible applies | Actual Cash Value | | $500 | $96.96 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $23.77 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $2.48 |
| Rental Reimbursement Coverage | up to $30 | per day for a maximum of 30 days | Not Applicable | $24.56 |
| Total Premium for 00 Honda Cr-V | | | | $442.47 |

**DISCOUNTS**  Your premium for this vehicle reflects the following discounts:
| | | | |
|---|---|---|---|
| Good Driver | 20% | Multiple Policy | $7.19 |
| Distinguished Driver | $57.53 | Loyalty Discount | $19.63 |

**RATING INFORMATION**  Your premium is determined based on certain information, including the following:
The estimated number of miles that this vehicle is driven annually is 10,000 - 10,999. This vehicle is driven
3-9 miles to work/school, married male licensed 29 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly.  A change in
the information could result in a premium adjustment.



Page  4
Prepared as of
November 5, 2009

# Allstate Indemnity Company

Policy Number : 9 14 906559 07/28     Your Agent:   Riggio Ins Agy Inc  (805) 604-0575
Policy Effective Date: Jan. 28, 2009

COVERAGE FOR VEHICLE # 1

## 2000 Honda Cr-V

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $267.95 |
| • Bodily Injury | $100,000 | each person | | |
| | $300,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | | |
| Uninsured Motorists Insurance for Bodily Injury | $50,000 | each person | Not Applicable | $26.75 |
| | $100,000 | each accident | | |
| Auto Collision Insurance Waiver of deductible applies | Actual Cash Value | | $500 | $96.96 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $23.77 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $2.48 |
| Rental Reimbursement Coverage | up to $30 per day for a maximum of 30 days | | Not Applicable | $24.56 |
| Total Premium for 00 Honda Cr-V | | | | $442.47 |

## DISCOUNTS  Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Good Driver | 20% | Multiple Policy | $7.19 |
| Distinguished Driver | $57.53 | Loyalty Discount | $13.63 |

## RATING INFORMATION  Your premium is determined based on certain information, including the following:

The estimated number of miles that this vehicle is driven annually is 10,000 - 10,999. This vehicle is driven 3-9 miles to work/school, married male licensed 29 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly.  A change in the information could result in a premium adjustment.

# Allstate Indemnity Compa 

Policy Number : 9 14 906559 07/28     Your ... in.. Alggio Ins Agy Inc (805) 604-0675
Policy Effective Date: Jan. 28, 2009

COVERAGE FOR VEHICLE # 1

## 2000 Honda Cr-V

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance | | | Not Applicable | $267.95 |
| • Bodily Injury | $100,000 | each person | | |
| | $300,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | | |
| Uninsured Motorists Insurance for Bodily Injury | $50,000 | each person | Not Applicable | $26.75 |
| | $100,000 | each accident | | |
| Auto Collision Insurance Waiver of deductible applies | Actual Cash Value | | $500 | $96.96 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $23.77 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $2.48 |
| Rental Reimbursement Coverage | up to $30 a maximum of 30 days | per day for | Not Applicable | $24.56 |
| Total Premium for 00 Honda Cr-V | | | | $442.47 |

**DISCOUNTS**   Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Good Driver | 20% | Multiple Policy | $7.19 |
| Distinguished Driver | $57.53 | Loyalty Discount | $13.63 |

**RATING INFORMATION**   Your premium is determined based on certain information, including the following:

The estimated number of miles that this vehicle is driven annually is 10,000 - 10,999. This vehicle is driven 3-9 miles to work/school, married male licensed 29 years

If any of the information shown above is incorrect or if it changes in the future, please notify Allstate promptly.   A change in the information could result in a premium adjustment.

Information as of December 5, 2008

Page   4
CA018R8D

 

# DECLARATION
# UNDER PENALTY OF
# PERJURY

I, Anna Tang, verify under penalty of perjury that there is _____ is not _____ any other liability insurance policy(ies), ( included but not limited to an umbrella policy), which existed for the subject accident on July 13, 2009.

Signed: _____     Dated: _____

I, Richard Tang, verify under penalty of perjury that there is _____ is not _____ any other liability insurance policy(ies), ( included but not limited to an umbrella policy), which existed for the subject accident on July 13, 2009.

Signed: _____     Dated _____

I Richard Tang, (driver), under penalty of perjury confirm that I was _____ was not _____ in the course and scope of employment on the date of the subject accident, July 13, 2009.

Signed _____     Dated _____

 

## RELEASE OF ALL CLAIMS

CLAIM # 0143198462

This Indenture Witnesseth that, in consideration of the sum of one hundred thousand dollars ($100,000.00), receipt whereof is hereby acknowledged, for myself and for my heirs, personal representatives and assigns, I do hereby release and forever discharge Richard Tang and Anna Tang and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damages, loss or damages of any kind already sustained or that I may hereafter sustain in consequence of an accident that occurred on or about this 13th day of July, 2009, at or near vernon street, Los Angeles, , CA.

To procure payment of the said sum, I hereby declare: that I am more than 18 years of age; that no representations about the nature and extent of said injuries, disabilities or damages made by any physician, attorney or agent of any party hereby release, nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties release, have induced us to make this settlement; that in determining said sum there has been taken into consideration not only the ascertained injuries, disabilities and damages, but also the possibility that the injuries sustained may be permanent and progressive and recovery therefrom uncertain and indefinite, so that consequences not now anticipated may result from the said accident.

I hereby agree that, as a further consideration and inducement for this compromise settlement, that it shall apply to all unknown and unanticipated injuries and damages resulting from said accident, casualty or event, as well as to those now disclosed.

I further understand that such liability as I admit no liability of any sort by reason of said accident and that said payment and settlement in compromise is made to terminate further controversy respecting all claims for damages that We have heretofore asserted or that we or our personal representatives might hereafter assert because of said accident.

I further understand that such liability as I may or shall have incurred, directly or indirectly, in connection with or for damages arising out of the accident to each person or organization, release and discharge of liability herein, and to any other person or organization, is expressly reserved to each of them, such liability not being waived, agreed upon, discharged nor settled by the release.

**For your protection California law requires the following to appear on this form:   Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.**

### (CAUTION-READ BEFORE SIGNING)

SIGNED AND SEALED THIS_____ DAY OF _____. _____

Witnessed by:

_____          _____

_____          _____

STATE OF

COUNTY OF          }

On this _____day of _____, _____, before me personally appeared

_____, to me known to be the persons _____ who executed the foregoing

instrument, and acknowledged that they _____ executed the same as their _____free act and deed.

My commission expires _____          _____

Notary Public

C53-9

# Exhibit G

FEB. 4. 2010 3:52PM   AL  A E                    NO. 172   P. 1



Diamond Bar Casualty
PO BOX 6517
DIAMOND BAR CA 91765

MADISON LAW GROUP INC
11111 SANTA MONICA BLVD STE 100
LOS ANGELES CA 90025-3378

February 04, 2010

| | |
|---|---|
| INSURED: RICHARD TANG | PHONE NUMBER: 888-358-8415 |
| DATE OF LOSS: July 13, 2009 | FAX NUMBER: 909-612-2888 |
| CLAIM NUMBER: 0143198462 RTV | OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, |
| | Sat 8:00 am - 2:00 pm |

Your Client: Carlos Madrigal
VIA FAX & MAIL

Dear MADISON LAW GROUP INC,

This confirms our conversation this afternoon wherein you provided a response advising your client did not have a valid liability policy at the time of this loss.

When we extended the $100,000.00 on January 29, 2010, we evaluated the case with the consideration that your client had proof of liability insurance. Given the fact you have now confirmed there was no valid liability insurance, effective for the loss of July 13, 2009 on behalf of your client, Carlos Madrigal, we must withdraw our offer immediately. Proposition 213 would be applicable to this loss.

We are extending a settlement offer of <$34,398.00 to resolve your client's bodily injury claim. This also confirms you indicated that was the total sum of medical bills you had to date. In the event you have any additional medical bills, relating to this loss, which you wish me to consider, kindly forward them so I may re-evaluate this claim.

If you believe this claim was wrongfully denied or rejected, you may contact the California Department of Insurance, Consumer Services at 300 S. Spring Street, Los Angeles, CA 90013 or contact them by phone at (800)927-4357.

Sincerely,

*TERESA VARELA*

TERESA VARELA
888-358-8415 Ext. 26571
Allstate Indemnity Company

**Page
115**

GEN001                          0143198462 RTV

# Exhibit H

**Page 116**

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY : (LEAVE BLANK IF NOTICE IS BY CLERK OF THE COURT) | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

**ATTORNEY FOR (Name):**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

**COURTHOUSE ADDRESS:**  STANLEY MOSK, 111 N HILL ST, L.A, CA 90012

**PLAINTIFF:**  CARLOS MADRIGAL

**DEFENDANT:**  RICHARD TANG

**NOTICE OF ENTRY OF:** ☑ JUDGMENT ☐ DISMISSAL

**BY ORDER OF THE COURT**

**CASE NUMBER:** BC445794

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 05 2012

SUPERIOR COURT

---

To the above named parties and to their attorneys of record, you are hereby given notice of entry of:

☑ Judgment in the above-entitled matter, entered on (date): **OCTOBER 4, 2012**

☐ Order of Dismissal in the above-entitled matter, filed on (date): _____

☐ Order _____, filed on (date): _____

---

## DECLARATION OF MAILING

I, (typed or printed name) **DONALD BROSTOFF** _____, do hereby (check one):

☐ declare under penalty of perjury under the laws of the State of California that I am an active member of the State Bar of California;

☑ declare under penalty of perjury under the laws of the State of California that I am (check one) ☑ employed in / ☐ a resident of _____ **LOS ANGELES** _____ County, over the age of 18 years, and not a party to the cause within; that my *(check one)* ☑ business/☐ residence address is as shown above;

*(where mailing occurred)*

and that on the date shown below I served the notice of entry of the above-named document filed and entered herein, by depositing true copies thereof in sealed envelope(s), with postage fully prepaid, in the United States Mail Service located at **LOS ANGELES** , **CALIFORNIA** .

*(city)* *(state)*

addressed to the parties named below:

ARASH HOMAMPOUR
THE HOMAMPOUR LAW FIRM PLC
15303 VENTURA BLVD, SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403

JAY S. McCLAUGHERTY
McCLAUGHERTY & ASSOCIATES
250 W. COLORADO BLVD, SUITE 250
ARCADIA, CALIFORNIA 91007

☑ Additional names and addresses on attached sheet.

Dated: **OCTOBER 5, 2012** _____  Signed: _____

*(Signature of declarant)*

Typed or printed name of declarant: **DONALD BROSTOFF**

---

LACIV 123 (Rev. 01/07)
LASC Approved 01-05

### NOTICE OF ENTRY OF JUDGMENT/ DISMISSAL/OTHER ORDER

Code Civ. Proc., §§ 664.5, 1013a
Cal. Rules of Court, rules 8.104 & 8.761

# *SUPERIOR COURT OF CALIFORNIA*

# *COUNTY OF LOS ANGELES, CENTRAL DISTRICT*

STANLEY MOSK COURTHOUSE
111 NORTH HILL STREET
DEPARTMENT 89
LOS ANGELES, CALIFORNIA 90012

CARLOS MADRIGAL
Vs.
RICHARD TANG

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 04 2012

SUPERIOR COURT

BC445794

---

## JUDGMENT ON SPECIAL VERDICT

---

This action came on regularly for trial on September 18, 2012 and concluded on October 4 , 2012, in Department 89 of the Superior Court, the Honorable William A. MacLaughlin, Judge Presiding;

The plaintiff appearing by attorneys

> Arash Homampour,
> THE HOMAMPOUR LAW FIRM PLC, and
> Kyle K. Madison,
> MADISON LAW GROUP,

and the defendant appearing by attorneys

> Jay S. McClaugherty, and
> Christian E. Sanne
> McCLAUGHERTY & ASSOCIATES

### JUDGMENT ON SPECIAL VERDICT

A jury of twelve (12) persons was regularly impaneled and sworn/acknowledged and agreed to try the cause. Witnesses were sworn and testified. After hearing the evidence and arguments of counsel, the jury was duly instructed by the Court and the cause was submitted to the jury with directions to return a special verdict. The jury deliberated and thereafter returned to court with its special verdict submitted to the jury and the answers given thereto by the jury, which was in words and figures as follow, to wit:

## TITLE OF COURT AND CAUSE

1

2          **FILED**
           SUPERIOR COURT OF CALIFORNIA
3          COUNTY OF LOS ANGELES

4          OCT 0 4 2012

5          John A. Clarke, Executive Officer/Clerk
           By _____, Deputy
6                DON BROSTOFF

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9            **FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT**

10

11     CARLOS MADRIGAL,                    )      **CASE NO:  BC 445794**
                                           )
12              Plaintiff,                 )
                                           )      **SPECIAL VERDICT**
13     v.                                  )
                                           )
14     RICHARD TANG,                       )
                                           )
15              Defendant.                 )
                                           )
16     _____)

17

18          We, the jury in the above entitled action, answer the questions submitted to us as follows:

19

20     **Question No. 1:** Was Defendant Richard Tang negligent in operating the vehicle?

21          Answer "yes" or "no".

22          Answer Yes   .

23

24          If your answer to Question No. 1 is "yes", go to Question No. 2.  If your answer to

25     Question No. 1 is "no", then stop here, answer no further questions, and have the

26     presiding juror date, sign, and return this Verdict.

27

28     [go to next page]

_____

*Special Verdict - Page 1*

**Question No. 2:** Was Defendant Richard Tang's negligence a substantial factor in causing harm to Plaintiff Carlos Madrigal?

      Answer "yes" or "no".

      Answer Yes .

If your answer to Question No. 2 is "yes", then answer Question No. 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

**Question No. 3:** What are Plaintiff Carlos Madrigal's total damages? Do not reduce the damages based on the fault (if any) of others.

      a.    Future medical expenses

          Future medical expenses:  $7,877,738

      b.    Future loss of earnings

          Future loss of earnings:  $1,227,268

**Question No. 4:** Was Plaintiff Carlos Madrigal negligent?

      Answer "yes" or "no".

      Answer: No .

If your answer to Question No. 4 is "yes", then go to Question No. 5. If your answer is "no", then please date and sign the form.

**Question No. 5:** Was Plaintiff Carlos Madrigal's negligence (if any) a substantial factor in causing harm to himself?

      Answer "yes" or "no".

      Answer:_____.

---

*Special Verdict – Page 2*

Page
121

1    If your answer to Question No. 5 is "yes", then go to Question No. 6.  If your

2    answer to Question No. 5 is "no", then please date and sign the form.

3

4    **Question No. 6:** What percentage of responsibility for Plaintiff Carlos Madrigal's

5    damages do you assign to the following?

6          Richard Tang          _____ %

7          Carlos Madrigal       _____ %

8          TOTAL            100    %

9

10   Please date and sign the form.

11

12

13   Dated: 4th October, 2012

14

15                                          _____

16                                          Foreperson

17   When signed, this verdict form must be delivered to the clerk.

18

19

20

21

22

23

24

25

26

27

28

*Special Verdict - Page 3*

Page
122

The parties stipulated that Plaintiff's past medical expenses were $99,880.15 and his past loss of earnings were $144,283.50 and that said damages are to be added by the court to determine the total damages awarded in any verdict in favor of Plaintiff Carlos Madrigal.

## JUDGMENT ON SPECIAL VERDICT

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

Plaintiff Carlos Madrigal  have and recover from Defendant Richard Tang damages in the sum of $9,349,169.65 with interest thereon at the rate of ten percent per annum from the date of the judgment until paid together with costs and disbursements amounting to the sum of $_____.

Dated: October 4, 2012                        WILLIAM A. MACLAUGHLIN
                                       _____
                                          Judge William A. MacLaughlin

## JUDGMENT ON SPECIAL VERDICT

# Exhibit I

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 12/11/12 | DEPT. 89 |
| HONORABLE WILLIAM A. MacLAUGHLIN JUDGE | D. BROSTOFF DEPUTY CLERK |
| HONORABLE 1. JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| D.VALENCIA, CRT ASST Deputy Sheriff | NONE Reporter |

| 8:30 am | BC445794 | | |
|---|---|---|---|
| | CARLOS MADRIGAL | Plaintiff Counsel | ARASH HOMAMPOUR ✓ |
| | VS RICHARD TANG | Defendant Counsel | JANET C. SONG ✓ |

**NATURE OF PROCEEDINGS:**

MOTION OF DEFENDANTS, RICHARD TANG AND ANNA TANG TO TAX/STRIKE COSTS;

PLAINTIFF'S MOTION FOR COSTS AND PRE-JUDGMENT INTEREST PER CODE OF CIVIL PROCEDURE SECTION 998 AND CIVIL CODE SECTION 3291.

The motions above are each called for hearing.

Counsel are heard.

The Court, having heard the oral argument of the parties and read the moving papers, opposition and reply, rules as follows:

Regarding the Defendants' Motion to Tax Costs:

As to item 1, Filing and motion fees are reduced by $40.00, from $695.00 to $655.00;

As to item 4, Deposition costs, the motion is denied;

As to item 5, Service of process, the motion is granted for the two rush assignments in the amount of $50.00, and otherwise denied.  The item is reduced from $2,559.14 to $2,509.14.

As to item 8, Witness fees. the motion is denied for

Page   1 of  4   DEPT. 89

MINUTES ENTERED
12/11/12
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 12/11/12

DEPT. 89

HONORABLE WILLIAM A. MacLAUGHLIN   JUDGE   D. BROSTOFF   DEPUTY CLERK

HONORABLE
1.                                   JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR

D.VALENCIA, CRT ASST   Deputy Sheriff   NONE                      Reporter

8:30 am | BC445794

CARLOS MADRIGAL           Plaintiff
VS                        Counsel    ARASH HOMAMPOUR   √
RICHARD TANG
                          Defendant
                          Counsel    JANET C. SONG    √

**NATURE OF PROCEEDINGS:**

the fees of Bennett Williamson, denied for the fees
of Robert Caldwell, granted for the entire fees of
Joseph Yates in the amount of $13,964.90, denied for
the fees of Lawrence Miller, denied for the fees of
David Fractor, denied for the fees of Jan Roughan,
and granted for the entire fees of David King in the
amount of $1,542.50.  The item is reduced in the
amount of $15,507.40 from $197,510.87 to $182,003.47.

As to item 11, Models, blowups, and photocopies of
exhibits, the motion is granted as to the videoclips
in the amount of $9,306.00 and is reduced from
$26,508.93 to $17,202.93.

As to item 13, pre-judgment interest, the motion is
denied;

Total costs are reduced in the amount of $24,903.40
from $1,356,385.55 to $1,331,482.15.

Plaintiff's Motion for Costs and Pre-Judgment Interest
per Code of Civil Procedure section 998 and Civil
Code section 3291 is granted.

Page   2 of  4   DEPT. 89

MINUTES ENTERED
12/11/12
COUNTY CLERK

Page
126

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 12/11/12                                                    DEPT. 89

HONORABLE WILLIAM A. MacLAUGHLIN     JUDGE  D. BROSTOFF     DEPUTY CLERK

HONORABLE                            JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
1.
        D.VALENCIA, CRT ASST   Deputy Sheriff  NONE                      Reporter

8:30 am  BC445794

         CARLOS MADRIGAL           Plaintiff
         VS                        Counsel    ARASH HOMAMPOUR  √
         RICHARD TANG
                                   Defendant
                                   Counsel    JANET C. SONG  √

NATURE OF PROCEEDINGS:


## CLERK'S CERTIFICATE OF MAILING


I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the Minute Order of December 11, 2012
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the Stanley Mosk Courthouse in Los Angeles,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,
in accordance with standard court practices.


Dated: December 13, 2012

John A. Clarke, Executive Officer/Clerk


By: _____
             D. Brostoff


                Page   3 of  4    DEPT. 89

                                          MINUTES ENTERED
                                          12/11/12
                                          COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 12/11/12                                                                DEPT. 89

HONORABLE WILLIAM A. MacLAUGHLIN   JUDGE   D. BROSTOFF                    DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM        ELECTRONIC RECORDING MONITOR
1.

          D.VALENCIA, CRT ASST    Deputy Sheriff   NONE                            Reporter

8:30 am | BC445794

| CARLOS MADRIGAL | Plaintiff Counsel | ARASH HOMAMPOUR ✓ |
| VS | | |
| RICHARD TANG | Defendant Counsel | JANET C. SONG ✓ |

---

**NATURE OF PROCEEDINGS:**

Arash Homampour
THE HOMAMPOUR LAW FIRM PLC
15303 Ventura Boulevard, Suite 1000
Sherman Oaks, California 91403


Jay S. McClaugherty
Janet C. Song
McCLAUGHERTY & ASSOCIATES
250 W. Colorado Boulevard, Suite 250
Arcadia, California 91007

                    Page   4 of   4    DEPT. 89        ┌─────────────────────┐
                                                       │ MINUTES ENTERED     │
                                                       │ 12/11/12            │
                                                       │ COUNTY CLERK        │
                                                       └─────────────────────┘

**EXHIBIT B**

5/1/14

10:00

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>ALLSTATE INSURANCE COMPANY, a corporation; TERESA<br>VARELA, an individual; and DOES 1 through 60, inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>CARLOS MADRIGAL, RICHARD TANG, and ANNA TANG | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>APR 21 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By Myrna Beltran, Deputy |

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>111 North Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>**BC542968** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Arash Homampour (Bar #165407)                          Phone No. (323) 658-8077
THE HOMAMPOUR LAW FIRM, PC                       Fax No. (323) 658-8477
15303 Ventura Boulevard, Suite 1000, Sherman Oaks, CA 91403

| DATE:<br>*(Fecha)* SHERRI R. CARTER | Clerk, by<br>*(Secretario)* **MYRNA BELTRAN** | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Allstate Insurance Company, A Corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

APR 21 2014

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

*LexisNexis® Automated California Judicial Council Forms*

FILE COPY

129

**—DO NOT FILE WITH THE COURT—**
**—UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585—**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| Arash Homampour (Bar # 165407) | (323) 658-8077 | |
| The Homampour Law Firm, PC | FAX NO.: | |
| 15303 Ventura Boulevard, Suite 1000 | (323) 658-8477 | |
| Sherman Oaks, CA 91403 | | |

ATTORNEY FOR *(name):* Plaintiffs Carlos Madrigal, Richard Tang and Anna Tang

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF: Carlos Madrigal, Richard Tang and Anna Tang
DEFENDANT: Allstate Insurance Company, et al.

| STATEMENT OF DAMAGES (Personal Injury or Wrongful Death) | CASE NUMBER: BC542968 |
|---|---|

To *(name of one defendant only):* Allstate Insurance Company
Plaintiff *(name of one plaintiff only):* Carlos Madrigal
seeks damages in the above-entitled action, as follows:

AMOUNT

**1. General damages**

a. [ ] Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

b. [ ] Emotional distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

c. [ ] Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

d. [ ] Loss of society and companionship *(wrongful death actions only)* . . . . . . . . . . . . . . . . . $ _____

e. [ ] Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

f. [X] Other *(specify)* Payment of Judgment, Costs & Interest $ 10,680,651.80

g. [ ] Continued on Attachment 1.g.

**2. Special damages**

a. [ ] Medical expenses *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

b. [ ] Future medical expenses *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

c. [ ] Loss of earnings *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

d. [ ] Loss of future earning capacity *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

e. [ ] Property damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

f. [ ] Funeral expenses *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

g. [ ] Future contributions *(present value) (wrongful death actions only)* . . . . . . . . . . . . . . . . . $ _____

h. [ ] Value of personal service, advice, or training *(wrongful death actions only)* . . . . . . . . . . . . $ _____

i. [X] Other *(specify)* Payment of Judgment, Costs & Interest . . . . . . . . . . . . . . . . . $ 10,680,651.80

j. [ ] Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

k. [ ] Continued on Attachment 2.k.

**3.** [ ] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* . . $ _____
when pursuing a judgment in the suit filed against you.

Date: April 29, 2014

. . . . . . . . . . . . . . . Arash Homampour . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME)

*a* (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

| Form Adopted by Rule 982 Judicial Council of California 982(a)(24) [New January 1, 1997] Mandatory Form | STATEMENT OF DAMAGES (Personal Injury or Wrongful Death) | Code of Civil Procedure, §§ 425.11, 425.115 JC Forms for HotDocs ™ |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Arash Homampour (State Bar # 165407)<br>THE HOMAMPOUR LAW FIRM, PC<br>15303 Ventura Bl., Ste. 1000, Sherman Oaks, CA 91403<br>TELEPHONE NO.: (323) 658-8077    FAX NO.: (323) 658-8477<br>ATTORNEY FOR (Name): Plaintiffs Carlos Madrigal, Richard Tang, and Anna Tang | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>APR 21 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By Myrna Beltran, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central District

CASE NAME:
Madrigal v. Allstate, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC542968 |
| | | | JUDGE:<br><br>DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive

4. Number of causes of action (specify): 6

5. This case [ ] is  [X] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 17, 2014

Arash Homampour
_____
(TYPE OR PRINT NAME)                              ▶                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 3.220, 3.400–3.403;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

FILE COPY

| SHORT TITLE: | CASE NUMBER | BC542968 |
|---|---|---|
| Madrigal v. Allstate, et al. | | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 7-10 [ ] HOURS [X] DAYS.

**Item II.** Select the correct district and courthouse location (4 steps - If you checked "Limited Case", skip to Item III, (Page 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C,** circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100   Motor Vehicle -Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110   Personal Injury/Property Damage/Wrongful Death - Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | [ ] A6070   Asbestos Property Damage | 2. |
| | | [ ] A7221   Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260   Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210   Medical Malpractice- Physicians& Surgeons | 1., 2., 4. |
| | | [ ] A7240   Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250   Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270   Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220   Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury /Property Damage/Wrongful Death Tort** | Business Tort (07) | [ ] A6029   Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005   Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010   Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013   Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | [ ] A6016   Intellectual Property | 2., 3. |

CIV 109 3-04
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

Page
132

LexisNexis® Automated California County Forms
FILE COPY

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Madrigal v. Allstate, et al. | |

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☒ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute (not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation    Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property(not eminent domain, land lord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer- Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

| CIV 109 3-04 | **CIVIL CASE COVER SHEET ADDENDUM** | LASC, rule 2.0 |
|---|---|---|
| LASC Approved | **AND STATEMENT OF LOCATION** | Page 2 of 4 |

LexisNexis® Automated California County Forms

| SHORT TITLE: | | CASE NUMBER |
|---|---|---|
| | Madrigal v. Allstate, et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014 Insurance Cove rage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIV 109 3-04
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**
**Page
134**

LASC, rule 2.0
Page 3 of 4
LexisNexis® Automated California County Forms

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Madrigal v. Allstate, et al. | |

Item III. *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br>☐ 1. ☒ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. | ADDRESS: |
|---|---|
| CITY: | STATE: | ZIP CODE: | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ____Superior____ courthouse in the ____Central District____ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: April 17, 2014

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

## PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form JC 982.2(b)(1).

4. Complete Addendum to Civil Case Cover Sheet form CIV 109 _____ (eff. Date).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---

CIV 109 3-04
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4
LexisNexis® Automated California County Forms

**Page 135**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number _____   BC542968

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

Your case is assigned for all purposes to the judicial officer indicated below. There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Daniel Buckley | 1 | 534 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Michael Johnson | 56 | 514 |
| Hon. Terry A. Green | 14 | 300 | Hon Rolf M. Treu | 58 | 516 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Rita Miller | 16 | 306 | Hon. Mark Mooney | 68 | 617 |
| Hon. Richard E. Rico | 17 | 309 | Hon. William F. Fahey | 69 | 621 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Mary H. Strobel | 32 | 406 | | | |
| Hon. Michael P. Linfield | 34 | 408 | | | |
| Hon. Gregory Alarcon | 36 | 410 | **Hon. Emilie H. Elias** | **324** | **CCW** |
| Hon. Maureen Duffy-Lewis | 38 | 412 | **Hon. Elihu M. Berle\*** | **323** | **CCW** |
| Hon. Michelle R. Rosenblatt | 40 | 414 | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | 45 | 529 | | | |
| Hon. Frederick C. Shaller | 46 | 500 | | | |
| Hon. Debre Katz Weintraub | 47 | 507 | | | |
| Hon. Elizabeth Allen White | 48 | 506 | | | |
| Hon. Deirdre Hill | 49 | 509 | | | |
| Hon. John L. Segal | 50 | 508 | | | |
| Hon. Mitchell L. Beckloff | 51 | 511 | | | |
| Hon. Susan Bryant-Deason | 52 | 510 | | | |
| Hon. Steven J. Kleifield | 53 | 513 | OTHER | | |
| Hon. Ernest M. Hiroshige | 54 | 512 | | | |

*Complex

All cases designated as complex (other than class actions) are initially assigned to Judge Elihu M. Berle in Department 323 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev09/13)
LASC Approved 05-06
For Optional Use

**NOTICE OF CASE ASSIGNMENT –**

**UNLIMITED CIVIL CASE**

Page 1 of 2

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994.  They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev09/13)
LASC Approved  05-06
For Optional Use

NOTICE OF CASE ASSIGNMENT –

UNLIMITED CIVIL CASE

Page 2 of 2
Page
137

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

Page
138

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | | Reserved for Clerk's File Stamp |
|---|---|---|---|
| | | | |

| TELEPHONE NO.: | FAX NO. (Optional): |
|---|---|
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - [ ] Request for Informal Discovery Conference
   - [ ] Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

| LACIV 094 (new) | **INFORMAL DISCOVERY CONFERENCE** |
|---|---|
| LASC Approved 04/11 | (pursuant to the Discovery Resolution Stipulation of the parties) |

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER |
|---|---|
| | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

Page
141

| SHORT TITLE: | CASE NUMBER |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____    ▶    _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)

Date:

_____    ▶    _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____    ▶    _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____    ▶    _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____    ▶    _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____ )

Date:

_____    ▶    _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____ )

Date:

_____    ▶    _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____ )

LACIV 036 (new)
LASC Approved 04/11    **STIPULATION – DISCOVERY RESOLUTION**    Page 3 of 3

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| TELEPHONE NO.:  FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| STIPULATION AND ORDER – MOTIONS IN LIMINE | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | | CASE NUMBER |
|---|---|---|
| | | |

**The following parties stipulate:**

Date:

_____          ➤          _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤          _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤          _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤          _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤          _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

Date:

_____          ➤          _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

Date:

_____          ➤          _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:   _____          _____
                                                                              JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:          FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| COURTHOUSE ADDRESS: | |
|---|---|
| PLAINTIFF: | |
| DEFENDANT: | |

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| | |
|---|---|
| SHORT TITLE: | CASE NUMBER: |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____ ▶ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date:

_____ ▶ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date:

_____ ▶ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date:

_____ ▶ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date:

_____ ▶ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date:

_____ ▶ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date:

_____ ▶ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

# —DO NOT FILE WITH THE COURT—
## —UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585—

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | | FOR COURT USE ONLY |
|---|---|---|
| Warren Binder (Bar # 257686)<br>BINDER & ASSOCIATES<br>283 South Lake Avenue, Suite 200<br>Pasadena, CA 91101 | TELEPHONE NO.: (626) 793-9124<br>FAX NO.: (626) 793-9510 | |

ATTORNEY FOR (name): Plaintiffs Carlos Madrigal, Richard Tang and Anna Tang

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF: Carlos Madrigal, Richard Tang and Anna Tang
DEFENDANT: Allstate Insurance Company, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER: BC542968 |
|---|---|

To (name of one defendant only): Teresa Varela
Plaintiff (name of one plaintiff only): Anna Tang
seeks damages in the above-entitled action, as follows:

**1. General damages**

| | | | AMOUNT |
|---|---|---|---|
| a. | [X] | Pain, suffering, and inconvenience ................................ $ | 10,000,000 |
| b. | [X] | Emotional distress ............................................ $ | 10,000,000 |
| c. | [ ] | Loss of consortium .......................................... $ | |
| d. | [ ] | Loss of society and companionship (wrongful death actions only) ......... $ | |
| e. | [ ] | Other (specify) ............................................. $ | |
| f. | [X] | Other (specify) Payment of Judgment, Costs & Interest $ | 10,680,651.80 |
| g. | [ ] | Continued on Attachment 1.g. | |

**2. Special damages**

| | | | |
|---|---|---|---|
| a. | [ ] | Medical expenses (to date) ................................... $ | |
| b. | [ ] | Future medical expenses (present value) ........................ $ | |
| c. | [X] | Loss of earnings (to date) .................................. $ | 50,000 |
| d. | [ ] | Loss of future earning capacity (present value) ................... $ | |
| e. | [ ] | Property damage ........................................... $ | |
| f. | [ ] | Funeral expenses (wrongful death actions only) ................... $ | |
| g. | [ ] | Future contributions (present value) (wrongful death actions only) ...... $ | |
| h. | [ ] | Value of personal service, advice, or training (wrongful death actions only) .. $ | |
| i. | [X] | Other (specify) Payment of Judgment, Costs & Interest ............. $ | 10,680,651.80 |
| j. | [ ] | Other (specify) ............................................ $ | |
| k. | [ ] | Continued on Attachment 2.k. | |

**3.** [X] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of (specify) .. $    100,000,000
when pursuing a judgment in the suit filed against you.

Date: April 29, 2014

Warren Binder
(TYPE OR PRINT NAME)

(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)
(Proof of service on reverse)

Form Adopted by Rule 982
Judicial Council of California
982(a)(24) [New January 1, 1997]
Mandatory Form

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

Code of Civil Procedure, §§ 425.11, 425.115
JC Forms for HotDocs ™

**—DO NOT FILE WITH THE COURT—**

**—UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585—**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| Warren Binder (Bar # 257686)<br>BINDER & ASSOCIATES<br>283 South Lake Avenue, Suite 200<br>Pasadena, CA 91101 | (626) 793-9124<br>FAX NO.:<br>(626) 793-9510 | |

ATTORNEY FOR (name): Plaintiffs Carlos Madrigal, Richard Tang and Anna Tang

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF: Carlos Madrigal, Richard Tang and Anna Tang
DEFENDANT: Allstate Insurance Company, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>BC542968 |
|---|---|

To (name of one defendant only): Allstate Insurance Company
Plaintiff (name of one plaintiff only): Anna Tang
seeks damages in the above-entitled action, as follows:

| | | | AMOUNT |
|---|---|---|---|
| **1. General damages** | | | |
| a. [X] | Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 10,000,000 |
| b. [X] | Emotional distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 10,000,000 |
| c. [ ] | Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| d. [ ] | Loss of society and companionship (wrongful death actions only) . . . . . . . . . . | $ | |
| e. [ ] | Other (specify) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| f. [X] | Other (specify) Payment of Judgment, Costs & Interest . . . . . . . . . . . . | $ | 10,680,651.80 |
| g. [ ] | Continued on Attachment 1.g. | | |
| **2. Special damages** | | | |
| a. [ ] | Medical expenses (to date) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| b. [ ] | Future medical expenses (present value) . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| c. [X] | Loss of earnings (to date) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 50,000 |
| d. [ ] | Loss of future earning capacity (present value) . . . . . . . . . . . . . . . . . . | $ | |
| e. [ ] | Property damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| f. [ ] | Funeral expenses (wrongful death actions only) . . . . . . . . . . . . . . . . . | $ | |
| g. [ ] | Future contributions (present value) (wrongful death actions only) . . . . . . . | $ | |
| h. [ ] | Value of personal service, advice, or training (wrongful death actions only) . . . . | $ | |
| i. [X] | Other (specify) Payment of Judgment, Costs & Interest . . . . . . . . . . . . | $ | 10,680,651.80 |
| j. [ ] | Other (specify) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| k. [ ] | Continued on Attachment 2.k. | | |

3. [X] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of (specify) . . $  100,000,000
when pursuing a judgment in the suit filed against you.

Date: April 29, 2014

Warren Binder
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

| Form Adopted by Rule 982<br>Judicial Council of California<br>982(a)(24) [New January 1, 1997] Mandatory Form | STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | Code of Civil Procedure, §§ 425.11, 425.115<br>JC Forms for HotDocs ™ |
|---|---|---|

**—DO NOT FILE WITH THE COURT—**
**—UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585—**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | | |
|---|---|---|
| Warren Binder (Bar # 257686)<br>BINDER & ASSOCIATES<br>283 South Lake Avenue, Suite 200<br>Pasadena, CA 91101 | TELEPHONE NO.:<br>(626) 793-9124<br>FAX NO.:<br>(626) 793-9510 | FOR COURT USE ONLY |

ATTORNEY FOR *(name):* Plaintiffs Carlos Madrigal, Richard Tang and Anna Tang

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF: Carlos Madrigal, Richard Tang and Anna Tang
DEFENDANT: Allstate Insurance Company, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>BC542968 |
|---|---|

To *(name of one defendant only):* Teresa Varela
Plaintiff *(name of one plaintiff only):* Richard Tang
seeks damages in the above-entitled action, as follows:

**1. General damages**

|   |   | | AMOUNT |
|---|---|---|---|
| a. [X] | Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . | $ | 10,000,000 |
| b. [X] | Emotional distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 10,000,000 |
| c. [ ] | Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| d. [ ] | Loss of society and companionship *(wrongful death actions only)* . . . . | $ | |
| e. [ ] | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| f. [X] | Other *(specify)* Payment of Judgment, Costs & Interest | $ | 10,680,651.80 |
| g. [ ] | Continued on Attachment 1.g. | | |

**2. Special damages**

| a. [ ] | Medical expenses *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
|---|---|---|---|
| b. [ ] | Future medical expenses *(present value)* . . . . . . . . . . . . . . . . . | $ | |
| c. [X] | Loss of earnings *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 50,000 |
| d. [ ] | Loss of future earning capacity *(present value)* . . . . . . . . . . . . . . | $ | |
| e. [ ] | Property damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| f. [ ] | Funeral expenses *(wrongful death actions only)* . . . . . . . . . . . . . | $ | |
| g. [ ] | Future contributions *(present value) (wrongful death actions only)* . . | $ | |
| h. [ ] | Value of personal service, advice, or training *(wrongful death actions only)* . . | $ | |
| i. [X] | Other *(specify)* Payment of Judgment, Costs & Interest . . . . . . . . . | $ | 10,680,651.80 |
| j. [ ] | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |
| k. [ ] | Continued on Attachment 2.k. | | |

**3.** [X]  **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* . . $    100,000,000
when pursuing a judgment in the suit filed against you.

Date: April 29, 2014

Warren Binder
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME)                                (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)
(Proof of service on reverse)

| Form Adopted by Rule 982<br>Judicial Council of California<br>982(a)(24) [New January 1, 1997]   Mandatory Form | STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | Code of Civil Procedure, §§ 425.11, 425.115<br>JC Forms for HotDocs ™ |
|---|---|---|

**Page 149**

**—DO NOT FILE WITH THE COURT—**
**—UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585—**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*<br>Warren Binder (Bar # 257686)<br>BINDER & ASSOCIATES<br>283 South Lake Avenue, Suite 200<br>Pasadena, CA 91101 <br>TELEPHONE NO.: (626) 793-9124<br>FAX NO.: (626) 793-9510 | FOR COURT USE ONLY |

ATTORNEY FOR *(name):* Plaintiffs Carlos Madrigal, Richard Tang and Anna Tang

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS: 111 North Hill Street

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles, CA 90012

BRANCH NAME: Central District

PLAINTIFF: Carlos Madrigal, Richard Tang and Anna Tang

DEFENDANT: Allstate Insurance Company, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>BC542968 |
|---|---|

To *(name of one defendant only):* Allstate Insurance Company

Plaintiff *(name of one plaintiff only):* Richard Tang
seeks damages in the above-entitled action, as follows:

**1. General damages**

AMOUNT

a. [X] Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 10,000,000

b. [X] Emotional distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 10,000,000

c. [ ] Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $

d. [ ] Loss of society and companionship *(wrongful death actions only)* . . . . . $

e. [ ] Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $

f. [X] Other *(specify)* Payment of Judgment, Costs & Interest . . . . . . . . . $ 10,680,651.80

g. [ ] Continued on Attachment 1.g.

**2. Special damages**

a. [ ] Medical expenses *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $

b. [ ] Future medical expenses *(present value)* . . . . . . . . . . . . . . . . . . . . . . . $

c. [X] Loss of earnings *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 50,000

d. [ ] Loss of future earning capacity *(present value)* . . . . . . . . . . . . . . . . . . $

e. [ ] Property damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $

f. [ ] Funeral expenses *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . $

g. [ ] Future contributions *(present value) (wrongful death actions only)* . . . . $

h. [ ] Value of personal service, advice, or training *(wrongful death actions only)* . . . $

i. [X] Other *(specify)* Payment of Judgment, Costs & Interest . . . . . . . . . $ 10,680,651.80

j. [ ] Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $

k. [ ] Continued on Attachment 2.k.

**3.** [X] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* . . $ 100,000,000
when pursuing a judgment in the suit filed against you.

Date: April 29, 2014

Warren Binder
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME)                    (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

| | | |
|---|---|---|
| Form Adopted by Rule 982<br>Judicial Council of California<br>982(a)(24) [New January 1, 1997] **Mandatory Form** | **STATEMENT OF DAMAGES**<br>(Personal Injury or Wrongful Death) | Code of Civil Procedure, §§ 425.11, 425.115<br>*JC Forms for HotDocs* ™ |